**CM/ECF**

**Query**   **Reports** ▾   **Utilities** ▾   **Help**   **What's New**   **Log Out**

ACO

# U.S. District Court
## Eastern District of New York (Brooklyn)
### CIVIL DOCKET FOR CASE #: 1:21-cv-01287-EK-RER

Lawrence et al v. Hain Celestial Group et al
Assigned to: Judge Eric R. Komitee
Referred to: Magistrate Judge Ramon E. Reyes, Jr
Cause: 28:1332 Diversity-Product Liability

Date Filed: 03/10/2021
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Erik Lawrence**

represented by **Zahra Dean**
Kohn, Swift & Graf, P.C.
1600 Market Street
Suite 2500
Philadelphia, PA 19103
215-238-1700
Fax: 215-238-1968
Email: zdean@kohnswift.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rachel M. Frantz**

represented by **Zahra Dean**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marie Mezile**

represented by **Zahra Dean**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Hain Celestial Group**

**Defendant**

**Nuture, Inc.**

**Defendant**

**Gerber Products Company**

**Defendant**

**Beech-Nut Nutrition Company**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

—————————————————————— :
ERIK LAWRENCE, RACHEL M.    :
FRANTZ, and MARIE MEZILE,    :
Individually and on behalf of all    :
others similarly situated,    :    **CLASS ACTION COMPLAINT**
    :
    Plaintiffs,    :    CIVIL ACTION NO _____
    :
    v.    :
    :    <u>**JURY TRIAL DEMANDED**</u>
HAIN CELESTIAL GROUP,    :
NUTURE, INC., GERBER PRODUCTS    :
COMPANY and BEECH-NUT    :
NUTRITION COMPANY,    :
    :
    Defendants.    :
—————————————————————— :

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, on behalf of themselves and all others similarly situated, bring this class action suit for damages and injunctive relief for purchasers of Baby Food Products (as defined herein) that the Defendants marketed and sold without disclosing that they were tainted with arsenic, lead, cadmium, and mercury ("Toxic Heavy Metals") at levels above what is considered safe for babies. Plaintiffs allege the following based upon personal information as to allegations regarding themselves, on the investigation of their counsel, and on information and belief as to all other allegations.

# BACKGROUND

1.     On February 4, 2021, the Subcommittee on Economic and Consumer Policy of the U.S. House of Representatives (the "Subcommittee") released a  Report[1] concluding  that Defendants sold Baby Food Products containing concentrations of inorganic arsenic, lead, cadmium, and mercury at levels above what is considered safe for babies.

2.     The Defendants do not disclose the Toxic Heavy Metal content of their foods on their labels or in their marketing materials, nor do they warn consumers that their Baby Food Products may contain potentially dangerous levels of Toxic Heavy Metals.

3.     Plaintiffs and the Class members purchased Baby Food Products manufactured and sold by Defendants, unaware that Defendants' products potentially contain Toxic Heavy Metals at levels well above what is considered safe for babies. Had Defendants disclosed the Toxic Heavy Metal content on their product labels, or otherwise warned that their products could contain levels of Toxic Heavy Metals considered unsafe, neither Plaintiffs nor any other reasonable consumer would have purchased Defendants' products.

4.     Plaintiffs bring this class action on their own behalf and on behalf of other purchasers of Defendants' Baby Food Products,[2] to seek refunds and all other economic losses suffered as a result of their purchases of Defendants' Baby Food Products, as well as injunctive relief.

---

[1]  Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report ("Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, U.S. House of Representatives, at 11, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[2] The term "Baby Food Products" refers to Defendants' Baby Food Products that contain Toxic Heavy Metals, including  Baby Food Products purchased by Plaintiffs. Plaintiffs reserve the right to amend this definition as their investigation continues and they have had an opportunity to conduct discovery.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §

1332(d). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest

and costs, and there are numerous Class members who are citizens of states other than each

Defendant's state of citizenship, and more than two-thirds of the Class members reside in states

other than the state in which this case is filed, and therefore any exemptions to jurisdiction under

28 U.S.C. §1332(d)(2) do not apply.

6.      This Court has personal jurisdiction over each Defendant in this matter.

Defendants Hain Celestial Group, Nurture, Inc., and Beech-Nut Nutrition Company are

headquartered in the State of New York. Moreover, each Defendant has been afforded due

process because it has, at all times relevant to this matter, individually or through its agents,

subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a

business venture in this state and/or maintained an office or agency in this state, and/or marketed,

advertised, distributed and/or sold products, and caused injuries to Plaintiffs and Class Members.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants

transact substantial business and/or have agents within this District and have intentionally

availed themselves of the laws and markets within this district.

## PARTIES

8.      Plaintiff Erik Lawrence is a resident of the State of Georgia.  Mr. Lawrence

purchased baby foods made by Nurture, Gerber, and Hain.[3]

---

[3] Mr. Lawrence purchased: Gerber formula, Gerber Cereal (rice and oatmeal), Gerber Lil'
Crunchies Puffs, Gerber Yogurt Melts, Gerber Fruit & Veggie Melts Gerber Teethers and
Teether Wheels, Gerber Baby Food tubs and pouches (various flavors), Gerber Meals and Sides
(various flavors); HappyBABY teethers and pouches; and Earth's Best plums.

9.      Plaintiff Rachel M. Frantz is a resident of the State of Michigan. Ms. Frantz purchased baby foods made by Nurture and Gerber.[4]

10.     Plaintiff Marie Mezile is a resident of the State of New York. Ms. Mezzile purchased baby foods made by Nurture, Gerber, and Beechnut.[5]

11.     Defendant Nurture, Inc. ("Nurture") is a Delaware corporation with corporate headquarters in New York, New York. Nurture does business as HappyFamily Organics and sells Baby Food Products under the HappyBABY brand. Nurture's baby food products are sold and purchased throughout the United States.

12.     Defendant Hain Celestial Group ("Hain") is a Delaware corporation with corporate headquarters in Lake Success, New York. Hain sells Baby Food Products under the Earth's Best brand. Hain's baby food products are sold and purchased throughout the United States.

13.     Defendant Gerber Products Company ("Gerber") is a Delaware corporation with corporate headquarters in Arlington, Virginia. Gerber's baby food products are sold and purchased throughout the United States.

14.     Defendant Beech-Nut Nutrition Company ("Beech-Nut") is a New York corporation, with corporate headquarters in Amsterdam, New York. Beech-Nut's baby food products are sold and purchased throughout the United States.

---

[4]  Ms. Frantz purchased: Gerber Organic pouches, including Apple/Zucchini/Spinach/Strawberry, Banana/Blueberry/Blackberry/Oatmeal, and Carrot/Apple/Mango flavors; Gerber Fruit and Probiotic Banana/Apple Rice Cereal; Nurture's HappyBABY Organic Teethers Blueberry & Purple Carrot; HappyBABY Organics Pears & Prunes jars; HappyBABY puree pouches including Bananas Plums & Granola, Spinach Kale & Apples, Bananas, Beets & Blueberries, and Apples, Kale, and Avocado.
[5] Ms. Mezile purchased: Gerber rice cereal and formula; Beech Nut rice and oat cereals; and HappyBABY puffs and superfood snacks and HappyBABY sweet potatoes and carrots.

# FACTS

A.   <u>Defendants Tout the Quality and Safety of Their Baby Food Products.</u>

15.   Few things are as precious as babies are to their parents and other caretakers. Consumer research from The Nielsen Company shows that the "big three" attributes buyers look for in a baby food product are a trusted brand, good infant nutrition, and the safety of the products for consumption by children.[6]

16.   Consumers expect that baby food manufacturers will regard their children's health and safety as paramount concerns when it comes to formulating their products, sourcing their ingredients, and testing for safety, and that manufacturers will be transparent in their labelling and marketing about what goes into their Baby Food Products.[7]

17.   Unsurprisingly, Defendants tout their Baby Food Products as being tested as safe for babies, in compliance with government regulations, and as containing only safe ingredients.

18.   Nurture's website touts the "Quality & Safety of Our Products" and claims they "only sell products that have been rigorously tested and we do not have products in-market with contaminant ranges outside of the limits set by the FDA."[8]

19.   Gerber's website assures parents that, "At Gerber, we believe little ones deserve the very best. That's why we have stringent quality and food safety standards for all our foods. Not to brag, but many of our food safety and quality standards even exceed government requirements."[9]

---

[6]  OH, BABY! Trends in the Baby Food and Diaper Markets Around the World, at 17 (The Nielsen Company, August 2015) https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/Global20Baby20Care20Report20Revised20FINAL-2.pdf (accessed March 1, 2021).

[7] *Id.*

[8] https://www.happyfamilyorganics.com/quality-and-safety-of-our-products/.

[9] https://www.gerber.com/our-ingredients.

20.    Hain's website section on its "Commitment to food safety" claims that, "Nothing is more important to Earth's Best than the trust and confidence of parents that our organic products provide safe nutrition for healthy babies. Our rigorous internal standards and testing procedures ensure Earth's Best products meet or exceed the current federal guidelines."[10]

21.    According to its website, Beech-Nut promises that "Making high quality, safe, and nutritious foods for babies and toddlers will always be our #1 priority." "We're proud to offer natural and organic products that are free from artificial preservatives, colors and flavors. In fact, we conduct over 20 rigorous tests on our purees, testing for up to 255 pesticides and heavy metals (like lead, cadmium, arsenic and other nasty stuff). Just like you would, we send the produce back if it's not good enough."[11]

22.    However, each Defendant's statements and marketing are incomplete, misleading and deceptive with respect to the existence and concentrations of Toxic Heavy Metals in their respective products.

23.    Defendants know that Plaintiffs and the other Class members lack the scientific knowledge and resources necessary to test or assess whether the Baby Food Products they purchase contain levels of Toxic Heavy Metals exceeding levels that are safe for babies.

B.    Defendants Sold Baby Food Products Tainted by Toxic Heavy Metals.

24.    Scientists and child development experts have long known that childhood exposure to Toxic Heavy Metals can cause a number of adverse neurological, cognitive, and other developmental consequences. Many of these changes are irreversible, including permanent

---

[10] https://www.earthsbest.com/parents/faq/.
[11] https://www.beechnut.com/our-story/.

losses in IQ, memory and comprehension, as well as ADHD and behavioral problems that persist into adulthood and result in reduced earning capacity.

25.     The FDA cautions that Toxic Heavy metals have "no established health benefit" and "even low levels of harmful metals from individual food sources, can sometimes add up to a level of concern."[12]

26.     There is no level of Toxic Heavy Metal exposure that is considered acceptable for babies. Child advocacy organizations such as Healthy Babies Bright Futures recommends a goal of "no measurable amount" of Toxic Heavy Metals in Baby Food Products.[13]

27.     In November 2019, the Subcommittee sought internal testing records and other documents from  the Defendants, to investigate concerns about heavy metals in baby foods.

28.     Based on this investigation, the Subcommittee concluded that a number of Defendants' Baby Food Products purchased by Plaintiffs, "contain dangerous levels of arsenic, lead, mercury, and cadmium."[14]

29.     The Subcommittee further found that baby food manufacturers "knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."[15]

---

[12] Report, pp. 9-10 (quoting "Food and Drug Administration, Metals and Your Food" (online at www.fda.gov/food/chemicals-metals- pesticides-food/metals-and-your-food) (accessed Jan. 26, 2021)).

[13] Report, pp. 13, 21, 29, &32) (citing Healthy Babies Bright Futures, *What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead* (Oct. 2019) (online at www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf).

[14] Report, p. 59.

[15] *Id.*

30.     The Subcommittee added that, "naturally occurring toxic heavy metal may not be the only problem causing dangerous levels of toxic heavy metals in baby foods; rather, baby food producers  like Hain" are compounding the problem by "adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix."[16]

31.     The Subcommittee also criticized the industry's testing practices, stating that Defendant Nurture was the only manufacturer that appeared to test its finished Baby Food Products with any regularity.[17]

32.     Defendants Hain, Gerber, and Beech-Nut each typically only tested ingredients, which likely underrepresents the levels of Toxic Heavy Metals in their finished Baby Food Products.[18]  According to the Subcommittee, "[o]n August 1, 2019, FDA received a secret slide presentation from Hain, the maker of Earth's Best Organic baby food, which revealed that finished Baby Food Products contain even higher levels of toxic heavy metals than estimates based on individual ingredient test results. One heavy metal in particular, inorganic arsenic, was repeatedly found to be present at 28-93% higher levels than estimated."[19]

33.     The Subcommittee observed that in many cases, Defendants released products for sale even after their test results showed concentrations of Toxic Heavy Metals in finished products or ingredients exceeding their own internal goal thresholds.[20]

34.     **Inorganic Arsenic.** Regulation of inorganic arsenic in baby food is limited. According to the Subcommittee Report, the FDA has set a maximum allowable level of 10 parts

---

[16] Report, p. 56.
[17] Report, p. 13.
[18] Report, pp. 56-57.
[19] Report, p. 59.
[20] Report, pp. 14, 34, 37, 41.

per billion (ppb) for both bottled and tap water; however, there "is no established safe level for consumption inorganic arsenic for babies."[21]

35.     The Subcommittee found that Nurture "sells products even after testing confirms that they are dangerously high in inorganic arsenic."[22] Over 25% of the end products Nurture tested and sold contained inorganic arsenic levels exceeding Nurture's own internal goal level of 100 ppb, more than half contained levels exceeding 50 ppb, and over 78% tested at 9 ppb or more.[23]

36.     The Subcommittee found that while Hain typically only tests ingredients, a secret Hain presentation to the FDA showed inorganic arsenic levels averaging 129 ppb in product samples.[24] The Subcommittee also reported that Hain used vitamin premixes and at least 24 other ingredients after testing showed they contained levels of inorganic arsenic over 100 ppb.[25]

37.     Gerber was found to have used numerous batches of rice flour exceeding 90 ppb inorganic arsenic, which is nearly 10 times more than the limit that the FDA has set for bottled water and that the EPA and WHO have set for drinking water.[26]

38.     The Subcommittee found that Beech-Nut only tested arsenic content in its ingredients, not its final product. The Subcommittee also determined that Beech-Nut used ingredients containing as much as 913.4 ppb arsenic and noted that test results showed that Beech-Nut used at least fourteen other ingredients containing over 300 ppb arsenic and used at least 45 ingredients containing over 100 ppb arsenic.[27]

---

[21] Report, p. 13.
[22] Report, p. 14.
[23] Report, p. 15.
[24] Report, p. 16.
[25] Report, p. 16.
[26] Report, pp. 13, 19-21.
[27] Report, p. 17.

39. **Lead.** While there are no Federal standard for lead in baby foods, the Subcommittee found "a growing consensus among health experts that lead levels in baby foods should not exceed 1 ppb."[28]

40. The Subcommittee found that Nurture sold Baby Food Products testing as high as 641 ppb, and that nearly 20% of the finished Baby Food Products that Nurture tested and sold contained levels of lead over 10 ppb.[29]

41. Hain reportedly "used six ingredients that tested above 200 ppb lead … 88 ingredients with lead levels at or over 20 ppb—the EU's standard for lead in infant formula … … 115 ingredients that registered at or over 15 ppb—EPA's action level for drinking water. And at least 27% of Hain ingredients tested at or over 5 ppb lead, FDA's standard for lead in bottled water.[30] Hain also "used a vitamin pre-mix in its baby food that contained as much as 352 ppb lead."[31]

42. Gerber was found to have "produced limited lead testing results," showing sweet potatoes ranging from a high of 48 ppb lead and "twelve other batches of sweet potato that tested over 20 ppb for lead, the EU's lenient upper standard" for lead.[32]

43. The Subcommittee found that Beech-Nut "routinely used ingredients with high lead content, including 483 ingredients that contained over 5 ppb lead, 89 ingredients that contained over 15 ppb lead, and 57 ingredients that contained over 20 ppb lead."[33]

---

[28] Report, p. 21.
[29] Report, pp. 21-22.
[30] Report, p. 27.
[31] Report, p. 26.
[32] Report, p. 27.
[33] Report, p. 23.

44.     **Cadmium.** While there are no federal standards for cadmium in baby foods, the Subcommittee identified proposed and existing cadmium standards including 5 ppb for drinking water (FDA and EPA). [34]

45.     The Subcommittee found that 65% of Nurture's finished Baby Food Products contained more than 5 ppb cadmium.[35]

46.     Hain reportedly "used 14 ingredients that contained more than 100 ppb cadmium … and used 102 ingredients that registered at or above 20 ppb cadmium—the EU's lax upper limit."[36]

47.     The Subcommittee found that Gerber "accepts ingredients with high levels of cadmium," "used multiple batches of carrots containing as much as 87 ppb cadmium," and that "75% of the carrots Gerber used had more than 5 ppb cadmium—the EPA's drinking water standard."[37]

48.     The Subcommittee found that Beech-Nut had set internal guidelines of 3,000 ppb for cadmium for certain ingredients, which "far surpass[es] any existing regulatory standard in existence" and the level "for any other baby food manufacturer that responded to the Subcommittee's inquiry."[38]

49.     **Mercury.** There are also no federal standards for Mercury in baby foods. The EPA limits mercury in drinking water to 2 ppb."[39] Defendants sold baby foods with mercury levels substantially higher than 2 ppb.

---

[34] Report, p. 21.
[35] Report, p. 4.
[36] Report, p. 30.
[37] Report, p. 32.
[38] Report, p. 38.
[39] Report, p. 32.

50.     Nurture reportedly sold finished Baby Food Products containing as much as 10 ppb mercury, and as many as 56 products containing over 2 ppb mercury.[40]

51.     The Subcommittee further reported that Hain and Beechnut apparently did not test for mercury, and Gerber only tested carrots, sweet potatoes, and lemon juice concentrate.[41]

52.     The concentrations of Toxic Heavy Metals reflected in Defendants' own test results and as reported by the Subcommittee showed the Defendants are each knowingly selling finished Baby Food Products and using ingredients that contained potentially dangerous levels of Toxic Heavy Metals.

C.      <u>Plaintiffs and other Class Members Were Harmed</u>.

53.     Prior to the release of the Subcommittee Report, Plaintiffs and each member of the proposed Classes purchased one of more Baby Food Products manufactured and sold by Defendants, intending for them to be fed to children and believing that they were of high quality and safe for children to consume. Plaintiffs were unaware that Defendants would sell Baby Food Products that contained undisclosed dangerous levels of Toxic Heavy Metals.

54.     Based on Defendants' product labelling and marketing materials, Plaintiffs did not expect, and no reasonable consumer would have expected, that any of the Baby Food Products contained Toxic Heavy Metals at unsafe levels.

55.     Had Plaintiffs and the other Class members known that Defendants were selling Baby Food Products containing Toxic Heavy Metals above levels considered safe for their infants as revealed in the Subcommittee Report, they never would have purchased Defendants' Baby Food Products.

---

[40] Report, p. 32.
[41] Report, p. 33.

12

56.     Upon learning that Defendants' Baby Food Products potentially contain Toxic Heavy Metals at levels considered unsafe for children, Plaintiffs no longer believed the Defendants' Baby Food Products were quality products or safe for consumption by babies and children.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23, individually and as representatives of all those similarly situated, on behalf of a proposed nationwide class defined as: All persons in the United States who purchased Defendants' Baby Food Products (the "National Class"). Excluded from the Class are Defendants, their present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

58.     Plaintiff Lawrence also brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as representative of all those similarly situated, on behalf of a proposed Georgia class defined as: All persons who purchased Gerber's, Nurture's or Hain's Baby Food Products in the State of Georgia (the "Georgia Class"). Excluded from the Class are Defendants, their present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

59.     Plaintiff Frantz also brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as representative of all those similarly situated, on behalf of a proposed Michigan class defined as: All persons who purchased Gerber's or Nurture's Baby Food Products in the State of Michigan (the "Michigan Class"). Excluded from the Class are

Defendants, their present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

60.     Plaintiff Mezile also brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as representative of all those similarly situated, on behalf of a proposed New York class defined as: All persons who purchased Gerber's, Nurture's or Beech-Nut's Baby Food Products in the State of New York (the "New York Class"). Excluded from the Class are Defendants, their present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

61.     The members of each of the Classes are so numerous that their individual joinder is impracticable. On information and belief, members of each of the Classes number in the tens or hundreds of thousands. The precise number of members of each of the Classes and their addresses are presently unknown to Plaintiffs but may be ascertained from grocery and other records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

62.     Common questions of law and fact exist as to all members of each Class and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

     a.     Whether each Defendants' Baby Food Products contain Toxic Heavy Metals at levels higher than what is considered safe for babies;

     b.     Whether each Defendant misrepresented to Plaintiffs and the Class members that its Baby Food Products were safe for consumption by babies and did not contain potentially unsafe levels of Toxic Heavy Metals;

c.      Whether each Defendant omitted and concealed the fact that its Baby Food Products contained Toxic Heavy Metals higher than levels considered safe for babies;

d.      Whether the presence of Toxic Heavy Metals in each Defendant's Baby Food Products was a material fact to Plaintiffs and Class members;

e.      Whether Defendants' conduct violated Georgia's Fair Business Practices Act or Uniform Deceptive Trade Practices Act;

f.      Whether Defendants' conduct violated Michigan's Consumer Protection Act;

g.      Whether Defendants' conduct violated New York's Deceptive Acts and Practices Act or False Advertising Act;

h.      Whether the Defendants breached express or implied warranties to Plaintiffs and the Class members; and

i.      Whether Defendants' conduct resulted in Defendants unjustly retaining a benefit to the detriment of Plaintiffs and Class members, and violated the fundamental principles of justice, equity, and good conscience.

63.      Plaintiffs' claims are typical of the claims of the other members of the Classes, because, among other things, Plaintiffs and all Class members suffered the same type of injury, namely, paying for a product that they otherwise would not have purchased had Defendants disclosed the presence of Toxic Heavy Metals in their Baby Food Products. Further, there are no defenses available to the Defendants that are unique to Plaintiffs.

64.      Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the other Class members they seek to represent, they have retained counsel competent and experienced in class action litigation, and they and their counsel will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

65.      A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the

management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes individually are relatively small compared to the burden and expense that would be required to separately litigate their claims against Defendants, so it would be uneconomical and impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the Class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
### BREACH OF EXPRESS WARRANTY
#### (On Behalf of the National Class and Each State Class)

66.     Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

67.     This cause of action is brought on behalf of the each of the Classes against all Defendants.

68.     In connection with their sale of Baby Food Products, by and through statements in labels, publications, package inserts, and other written materials intended for consumers and the general public, Defendants made certain express affirmations of fact and/or promises relating to their Baby Food Products to Plaintiffs and the Classes, as alleged herein, including that such Baby Food Products were safe for consumption by infants and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and

instructions that purport, but fail, to include the risks associated with use of Baby Food Products containing Toxic Heavy Metals.

69.     Defendants advertised, labeled, marketed, and promoted Baby Food Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiffs and the Classes, thereby making an express warranty that Baby Food Products would conform to the representations.

70.     Defendants' affirmations of fact and/or promises about Baby Food Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain.

71.     Despite the express warranties Defendants created with respect to Baby Food Products, Defendants delivered Baby Food Products to Plaintiffs and the Classes that did not conform to Defendants' express warranties in that such Baby Food Products were defective, dangerous, and unfit for use, did not contain labels adequately representing the nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, Defendants breached the express warranties by representing through their labeling, advertising, and marketing materials that their Baby Food Products were safe, and intentionally withheld information about the contents and risks associated with use of the Baby Food Products.

72.     Defendants had sole access to material facts concerning the nature of the risks associated with their Baby Food Products, as expressly stated on their labels, and knew that consumers and purchasers such as Plaintiffs could not have reasonably discovered that the risks expressly included in Baby Food Products' labels or other statements about their Baby Food Products were inadequate and inaccurate. Plaintiffs and each member of the Classes have had

sufficient direct dealings with either Defendants or their agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and each member of the Classes, on the other hand.

73.     As a direct and proximate result of Defendants' breaches of express warranties, as alleged herein, Plaintiffs and the Classes sustained an economic loss in an amount to be proven at trial.

74.     As a result of Defendants' breaches of express warranties, as alleged herein, Plaintiffs and the Classes seek an order awarding compensatory damages and any other just and proper relief available under the law.

**COUNT II**
**BREACH OF IMPLIED WARRANTY**
**(On Behalf of the National Class and Each State Class)**

75.     Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

76.     This cause of action is brought on behalf of the each of the Classes against all Defendants.

77.     At all relevant times, Defendants were merchants with respect to Baby Food Products that were sold to Plaintiffs and members of the Classes and were in the business of selling such products.

78.     Each Baby Food Product sold by Defendants comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used.

79.     Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold.

80. Defendants' Baby Food Products are not fit for the ordinary purpose for which they were sold because they contain Toxic Heavy Metals.

81. Plaintiffs and members of the Classes were injured as a direct and proximate result of Defendants' breaches of implied warranties of merchantability. Plaintiffs and members of the Classes were damaged as a result of Defendants' breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Baby Food Products, they would not have purchased such products.

82. As a result of Defendants' breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Classes seek an order awarding compensatory damages and any other just and proper relief available under the law.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of the National Class and Each State Class)**

83. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

84. This cause of action is brought on behalf of the each of the Classes against all Defendants.

85. Defendants intended and expected that, as a result of their knowing wrongful acts as alleged above, Defendants would profit and benefit from sales of Baby Food Products that would otherwise have not occurred.

86. Defendants voluntarily accepted and retained these profits and benefits, knowing full well that Plaintiffs and the other Class members received Baby Food Products that were not of a quality level that reasonable purchasers expect of foods intended for babies.

87.     Defendants have been unjustly enriched by their wrongful and deceptive withholding of benefits to their customers at the expense of Plaintiffs and the Class members.

88.     Principles of equity and good conscience preclude Defendants from retaining these profits and benefits.

89.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class members suffered injury and seek an order compelling Defendants to disgorge and return to the Plaintiffs and the Class members the amounts that each Class member paid to the Defendants.

## <u>COUNT IV</u>
## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
## (GA. CODE ANN. §10-1-390, ET SEQ.)
## (On Behalf of the Georgia Class Against Defendants Gerber, Nurture, and Hain)

90.     Plaintiff Lawrence incorporates the allegations in the preceding paragraphs as though fully set forth herein.

91.     This cause of action is brought on behalf of the Georgia Class against Defendants Gerber, Nurture, and Hain.

92.     Defendants, Plaintiff, and the Georgia Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

93.     Plaintiff and the Georgia Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

94.     Defendants were and are engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

95.     The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code Ann. §10-1-393(a).

96.     The Georgia FBPA makes unlawful specific acts, including:

    a.     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

    b.     "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

    c.     "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

97.     In the course of their business Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts that their Baby Food Products contained Toxic Heavy Metals at unsafe levels that rendered them unfit to be used for their intended purpose, as detailed above.

98.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above, Defendants engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

    a.     representing that the Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

    b.     representing that the Baby Food Products are of a particular standard, quality, and grade when they are not;

    c.     advertising the Baby Food Products with the intent not to sell them as advertised; and

    d.     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

99.     Defendants' misrepresentations and omissions regarding their Baby Food Products were disseminated to Plaintiff and the Georgia Class members in a uniform manner.

100.    Specifically, Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Georgia Class members, that the Baby Food Products are considered safe for consumption by babies.

101.    The facts regarding Baby Food Products that Defendants knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Georgia Class members, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

102.    Plaintiff and the Georgia Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and the Georgia Class members did not, and could not, overcome Defendants' deception on their own.

103.    Defendants had an ongoing duty to Plaintiff and the Georgia Class members to refrain from unfair or deceptive practices under the Georgia FBPA in the course of their business. Specifically, Defendants owed Plaintiff and Georgia Class members a duty to disclose all the material facts concerning Toxic Heavy Metals in Baby Food Products because they possessed exclusive knowledge, they intentionally failed to disclose the Toxic Heavy Metal content of Baby Food Products to Plaintiff and the Georgia Class members, and/or they made representations that were rendered misleading because they were contradicted by known but withheld facts.

104.    Plaintiff and the Georgia Class members were aggrieved by Defendants'
violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a
direct and proximate result of Defendants' knowing and intentional misrepresentations,
omissions, concealments, and failures to disclose material facts regarding Baby Food Products,
including that such Baby Food Products contained Toxic Heavy Metals at levels above those
considered safe for consumption by babies and not fit to be used for their intended purpose.
Specifically, Plaintiff and the Georgia Class members purchased Baby Food Products in reliance
on Defendants' misrepresentations, omissions, concealments, and failures to disclose material
facts regarding Baby Food Products. Had Defendants not engaged in the deceptive acts and
practices alleged herein, Plaintiff and other Georgia Class members would not have purchased
the Baby Food Products, and, thus, they did not receive the benefit of the bargain and/or suffered
out-of-pocket loss.

105.    Defendants' violations present a continuing risk to Plaintiff and the Georgia Class
members, as well as to the general public. Defendants' unlawful acts and practices complained of
herein affect the public interest.

106.    Defendants were provided notice of the issues raised in this count and this
Complaint by the Subcommittee Report and other lawsuits filed against them.

107.    Because Defendants failed to adequately remedy their unlawful conduct within
the requisite time period, Plaintiff seek all damages and relief to which Plaintiff and the Georgia
Class members are entitled.

108.    As a result of Defendants' violations of the Georgia FBPA, as alleged herein,
Plaintiff and the Georgia Class members seek an order enjoining Defendants' unfair or deceptive

acts or practices and awarding actual damages and any other just and proper relief available

under the Georgia FBPA.

## COUNT V
## VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (GA. CODE ANN. §10-1-370, *ET SEQ.*)
### (On Behalf of the Georgia Class Against Defendants Gerber, Nurture, and Hain)

109. Plaintiff Lawrence incorporates the allegations in the preceding paragraphs as

though fully set forth herein.

110. This cause of action is brought on behalf of the Georgia Class against Defendants

Gerber, Nurture, and Hain.

111. Defendants, Plaintiff, and the Georgia Class members are "[p]erson[s]" within the

meaning of Ga. Code Ann. §10-1-371(5).

112. The Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA")

prohibits "deceptive trade practices . . . in the course of [a] business, vocation, or occupation."

Ga. Code Ann. §10-1-372(a).

113. The Georgia UDTPA makes unlawful specific acts, including:

    a. "[r]epresent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-372(a)(5));

    b. "[r]epresent[ing] that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-372(a)(7));

    c. "[a]dvertis[ing] goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-372(a)(9)); and

    d. "[e]ngag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (Ga. Code Ann. §10-1-372(a)(12)).

114. In the course of their business Defendants, through their agents, employees,

and/or subsidiaries, violated the Georgia UDTPA by knowingly and intentionally

24

misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above.

115.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above, Defendants engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia UDTPA, including:

a.    representing that the Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

b.    representing that the Baby Food Products are of a particular standard, quality, and grade when they are not;

c.    advertising the Baby Food Products with the intent not to sell them as advertised; and

d.    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

116.    Defendants' misrepresentations and omissions regarding Baby Food Products were disseminated to Plaintiff and the Georgia Class members in a uniform manner.

117.    Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Georgia Class members, about the true nature of Baby Food Products.

118.    The facts regarding Baby Food Products that Defendants knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Georgia

Class members, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

119.    Plaintiff and the Georgia Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and the Georgia Class did not, and could not, learn of Defendants' deception on their own.

120.    Defendants had an ongoing duty to Plaintiff and the Georgia Class to refrain from unfair or deceptive practices under the Georgia UDTPA in the course of their business. Specifically, Defendants owed Plaintiff and the Georgia Class a duty to disclose all the material facts concerning Toxic Heavy Metals in  Baby Food Products because they possessed exclusive knowledge, they intentionally concealed or failed to disclose the facts regarding their Baby Food Products from Plaintiff and the Georgia Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

121.    Plaintiff and the Georgia Class were aggrieved by Defendants' violations of the Georgia UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, omissions, concealments, or failures to disclose material facts regarding Baby Food Products, including that such Baby Food Products contained unsafe levels of Toxic Heavy Metals. Specifically, Plaintiff and the Georgia Class purchased Baby Food Products in reliance on Defendants' misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Georgia Class would not have purchased the Baby Food Products, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

122.     Defendants' violations present a continuing risk to Plaintiff and the Georgia Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

123.     Defendants were provided notice of the issues raised in this count and this Complaint by the Subcommittee Report and other lawsuits filed against them.

124.     As a result of Defendants' violations of the Georgia UDTPA, as alleged herein, Plaintiff and the Georgia Class seek an order enjoining Defendants' unfair or deceptive acts or practices, awarding damages, and awarding any other just and proper relief available under the Georgia UDTPA.

## COUNT VI
### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS ANN. §445.901, *ET SEQ.*)
### (On Behalf of the Michigan Class Against Defendants Gerber and Nurture)

125.     Plaintiff Frantz incorporates the allegations in the preceding paragraphs as though fully set forth herein.

126.     Defendants Gerber and Nurture, Plaintiff Frantz, and the Michigan Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

127.     This cause of action is brought on behalf of the Michigan Class against Defendants Nurture and Gerber.

128.     Defendants were and are engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

129.     The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

130.     The Michigan CPA makes unlawful specific acts, including:

a. "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

b. "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

c. "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

131. In the course of their business Defendants, through their agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Toxic Heavy Metals in Baby Food Products.

132. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Toxic Heavy Metals in Baby Food Products, Defendants engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

a. representing that the Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

b. representing that the Baby Food Products are of a particular standard, quality, and grade when they are not;

c. advertising the Baby Food Products with the intent not to sell them as advertised; and

d. engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

133. Defendants' misrepresentations and omissions regarding the levels of Toxic Heavy Metals in their Baby Food Products were disseminated to Plaintiff Frantz and the Michigan Class in a uniform manner.

28

134.    Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff Frantz and the Michigan Class, about the contents of the Baby Food Products.

135.    The facts regarding Toxic Heavy Metals in Baby Food Products that Defendants knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff Frantz and the Michigan Class, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

136.    Plaintiff Frantz and Michigan Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff Frantz and Michigan Class did not, and could not, discover Defendants' deception and concealment on their own.

137.    Defendants had an ongoing duty to Plaintiff Frantz and the Michigan Class to refrain from unfair or deceptive practices under the Michigan CPA in the course of their business. Specifically, Defendants owed Plaintiff Frantz and Michigan Class a duty to disclose all the material facts concerning the presence of Toxic Heavy Metals in Baby Food Products because they possessed exclusive knowledge, they intentionally concealed the presence of the Toxic Heavy Metals from Plaintiff Frantz and the Michigan Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

138. Plaintiff Frantz and the Michigan Class were aggrieved by Defendants' violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, omissions, concealments, or failures to disclose material facts regarding Toxic Heavy Metals in Baby Food Products.

139. Specifically, Plaintiff Frantz and the Michigan Class purchased Baby Food Products in reliance on Defendants' misrepresentations, omissions, concealments, or failures to disclose material facts regarding Toxic Heavy Metals in Baby Food Products. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiff Frantz and Michigan Class would not have purchased the Baby Food Products, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

140. Defendants' violations present a continuing risk to Plaintiff Frantz and the Michigan Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

141. As a result of Defendants' violations of the Michigan CPA, as alleged herein, Plaintiff Frantz and the Michigan Class seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the Michigan CPA.

<u>COUNT VII</u>
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. GEN. BUS. LAW §349)**
**(On Behalf of the New York Class Against Defendants Gerber, Nurture and Beech-Nut)**

142. Plaintiff Mezile incorporates the allegations in the preceding paragraphs as though fully set forth herein.

143. This cause of action is brought on behalf of the New York Class against Defendants Nurture, Gerber, and Beechnut.

144. Plaintiff and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h). Defendants are each a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

145. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349(a).

146. In the course of their business, Defendants, directly or through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclosure material facts regarding Toxic Heavy Metals in their Baby Food Products, as detailed above.

147. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclosure material facts regarding Toxic Heavy Metals in their Baby Food Products, as detailed above, Defendants engaged in one or more of deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

148. Defendants' misrepresentations and omissions regarding the unsafe nature of Baby Food Products were disseminated to Plaintiff and the Class members in a uniform manner.

149. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members about the nature of Baby Food Products.

150. The facts regarding Baby Food Products that Defendants knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

151. Plaintiff and Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Class members did not, and could not, discover Defendants' deception on their own.

152. Defendants had an ongoing duty to Plaintiff and the Class members to refrain from unfair and deceptive practices under the New York DAPA in the course of their business. Specifically, Defendants owed Plaintiff and Class members a duty to disclose all the material facts regarding Baby Food Products, including that such products contained unsafe levels of Toxic Heavy Metals because they possessed exclusive knowledge, they intentionally concealed the facts regarding Baby Food Products, including that such products contained unsafe levels of Toxic heavy metals and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

153. Plaintiff and the Class members were aggrieved by Defendants' violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, omissions, concealments, or failures to disclose material facts regarding Baby Food Products, including that such products contained unsafe levels of Toxic Heavy Metals and thus were not fit to be used for their intended purpose. Specifically, Plaintiff and the Class members purchased Baby Food

Products in reliance on Defendants' misrepresentations, omissions, concealments, or failures to disclose material facts regarding Baby Food Products. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased Defendants' Baby Food Products, and, thus, they did not receive the benefit of the bargains and/or suffered out-of-pocket loss.

154.    Defendants' violations present a containing risk to Plaintiff and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

155.    As a result of Defendants' violations of the New York DAPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the New York DAPA.

## COUNT VIII
### Violation of the New York False Advertising Act
### (N.Y. GEN. BUS. LAW §350)
### (Against Defendants Gerber, Nurture and Beech-Nut)

156.    Plaintiff Mezile incorporates the allegations in the preceding paragraphs as though fully set forth herein.

157.    This cause of action is brought on behalf of the New York Class against Defendants Nurture, Gerber, and Beechnut.

158.    Defendants were and are engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law. §350.

159.    The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade, or commerce."  N.Y. Gen. Bus Law §350. False advertising includes "advertising, including labeling, of a commodity…if such advertising

33

is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of …representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

160.     Defendants caused to be made or disseminated through New York and the United States, through labels, advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendants, to be untrue misleading to consumers, including Plaintiff and the Class members.

161.     In the course of their business, Defendants, directly or through their agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Toxic Heavy Metals Baby Food Products, as detailed above.

162.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclosure material facts regarding unsafe levels of Toxic Heavy Metals in their Baby Food Products, as detailed above, Defendants engaged in false advertising in violation of the New York FAA.

163.     Defendants' misrepresentations and omissions regarding Toxic Heavy Metals in their Baby Food Products were disseminated to Plaintiff and the Class members in a uniform manner.

164.     Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and

were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the unsafe nature of Baby Food Products.

165.    The facts regarding Baby Food Products that Defendants knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

166.    Plaintiff and Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Class members did not, and could not, discover Defendants' deception on their own.

167.    Defendants had an ongoing duty to Plaintiff and the Class members to refrain from false advertising under the New York FAA in the course of their business. Specifically, Defendants owed Plaintiff and Class members a duty to disclose all the material facts regarding Baby Food Products, as described above, because they possessed exclusive knowledge, and they intentionally concealed or failed to disclose the facts regarding unsafe levels of Toxic Heavy Metals in their Baby Food Products and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

168.    Plaintiff and the Class members were aggrieved by Defendants' violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, omissions, concealments, or failures to disclose material facts regarding Toxic Heavy Metals in their Baby Food Products. Specifically, Plaintiff and the Class members purchased Baby Food Products in

reliance on Defendants' misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased Defendants' Baby Food Products, and thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

169.    Defendants' violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

170.    As a result of Defendants' violations of the New York FAA, as alleged herein. Plaintiff and the other New York Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the New York FAA.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendants, as follows:

a.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes as set forth above and appointing Plaintiffs' attorneys as Class Counsel;

b.    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

c.    For an order enjoining Defendants from selling Baby Food Products until the    higher and/or unsafe levels of Toxic Heavy Metals are removed or full disclosure of the presence of Toxic Heavy Metals appears on all labels, packaging, and advertising;

d.    For an order enjoining Defendants from selling Baby Food Products while in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

e.      For an order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

f.      For damages in amounts to be determined by the Court and/or jury;

g.      For prejudgment interest on all amounts awarded;

h.      For an order of restitution and all other forms of equitable monetary relief; and

i.      For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

Dated: March 10, 2021                    Respectfully submitted,

                                         /s/ *Zahra R. Dean*
                                         Zahra R. Dean (5554191)
                                         Douglas A. Abrahams*
                                         William E. Hoese*
                                         Craig W. Hillwig*
                                         Barbara Gibson
                                         Aaarthi Manohar*
                                         **KOHN, SWIFT & GRAF, P.C.**
                                         1600 Market Street, Suite 2500
                                         Philadelphia, PA 19103
                                         Telephone: (215) 238-1700
                                         zdean@kohnswift.com
                                         dabrahams@kohnswift.com
                                         whoese@kohnswift.com
                                         chillwig@kohnswift.com
                                         bgibson@kohnswift.com
                                         amanohar@kohnswift.com
                                         *(*pro hac vice* motions forthcoming)

                                         David H. Fink*
                                         Nathan J. Fink*
                                         **FINK BRESSACK**
                                         38500 Woodward Ave; Suite 350
                                         Bloomfield Hills, MI 48304
                                         Telephone: (248) 971-2500
                                         dfink@finkbressack.com
                                         nfink@finkbressack.com
                                         *(*pro hac vice* motions forthcoming)

Michael L. Roberts*
Karen Halbert*
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, Arkansas 72223
Telephone: (501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us
*(*pro hac vice* motions forthcoming)

*Attorneys for Plaintiffs*