Query   Reports   Utilities   Help   Log Out

**U.S. District Court**
**District of New Jersey [LIVE] (Newark)**
**CIVIL DOCKET FOR CASE #: 2:21-cv-04791-CCC-MF**

PIERRE-LOUIS v. GERBER PRODUCTS COMPANY        Date Filed: 03/11/2021
Assigned to: Judge Claire C. Cecchi        Jury Demand: Plaintiff
Referred to: Chief Mag. Judge Mark Falk        Nature of Suit: 370 Other Fraud
Cause: 28:1332 Diversity-Fraud        Jurisdiction: Diversity

**Plaintiff**

**MUSLIN PIERRE-LOUIS**        represented by   **MATTHEW ROSS MENDELSOHN**
*individually and on behalf of all those similarly situated*        MAZIE SLATER KATZ & FREEMAN LLC
103 EISENHOWER PARKWAY
ROSELAND, NJ 07068
973-228-9898
Email: mrm@mazieslater.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**GERBER PRODUCTS COMPANY**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/11/2021 | 1 | COMPLAINT against GERBER PRODUCTS COMPANY ( Filing and Admin fee $ 402 receipt number ANJDC-12253000) with JURY DEMAND, filed by MUSLIN PIERRE-LOUIS. (Attachments: # 1 Civil Cover Sheet)(MENDELSOHN, MATTHEW) (Entered: 03/11/2021) |
| 03/12/2021 | | Judge Claire C. Cecchi and Chief Mag. Judge Mark Falk added. (ps) (Entered: 03/12/2021) |
| 03/15/2021 | 2 | SUMMONS ISSUED as to GERBER PRODUCTS COMPANY. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (bt, ) (Entered: 03/15/2021) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/19/2021 10:03:04 | | |
| **PACER Login:** | ms4928 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** 2:21-cv-04791-CCC-MF Start date: 1/1/1980 End date: 3/19/2021 |
| **Billable Pages:** | 1 | **Cost:** 0.10 |

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MUSLIN PIERRE-LOUIS, individually and on behalf of all those similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| v. | |
| GERBER PRODUCTS COMPANY, | |
| Defendant. | |

Plaintiff Muslin Pierre-Louis, individually and on behalf of all those similarly situated, files this Complaint against the Defendant Gerber Products Company ("Gerber"), hereby states:

## NATURE OF THE ACTION

1. Gerber manufactured and marketed baby food products, representing and warranting that its baby food was safe and healthy, contained only a disclosed list of ingredients, and would provide nourishment and nutrition to infants and children.  Parents and caregivers trusted Gerber's representations and warranties, purchased Gerber's baby food products, and fed Gerber's baby food products to their children.

2. The Gerber baby food products at issue include, but are not limited to: Single Grain Cereals, Multigrain Cereals, Oatmeal & Barley Cereal, Fruit & Probiotic Infant Cereal, Organic Single Grain Cereal, Organic Cereal, Hearty Bits Multigrain Cereal, Lil' Bits Cereal, DHA & Probiotic Cereal, Baby Food Puree, Incredipouch Baby Foods, 1st Foods Baby Food, Natural 1st Foods Baby Food, 2nd Foods Baby Food, 2nd Foods Cereal, Organic 2nd Foods Baby Food, Natural 2nd Foods Baby Food, 3rd Foods Baby Food, Toddler Foods, Toddler Meals, Organic Toddler Foods, Lil' Mixers, Lil' Crunchies, Organic Lil' Crunchies, Puffs, Organic Puffs, Yogurt Melts, Organic Yogurt Melts, Fruit & Veggie Melts, Arrowroot Cookies, Banana Cookies, Soft Baked Grain Bars,

1

Teethers, Organic Teethers, Teether Wheels, Lil' Biscuits, Organic Biscuits, BabyPops, Animal
Crackers, Organic Grain & Grow Soft Baked Grain Bars, Organic Fruit & Veggie Bars, Yogurt
Blends Snack, Soothe 'n' Chew, Pick-ups, Mealtime Harvest Bowls, Lil' Sticks, Graduates and
Freshful Start.

3.      On February 4, 2021 the Subcommittee on Economic and Consumer Policy
("Subcommittee") of the United States House of Representatives issued a report titled "Baby Foods
Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[1] (hereinafter
referred to as the "House Report").  The House Report detailed the findings from an extensive
inquiry focused on the safety of baby food products, and reported shockingly high levels of heavy
metals in baby food products.

4.      The House Report confirmed that Gerber was one of four companies that cooperated
with the inquiry and "produced their internal testing policies, test results for ingredients and/or
finished products, and documentation about what the companies did with ingredients and/or
finished products that exceeded their internal testing limits."[2]

5.      The House Report confirmed that arsenic, lead and cadmium were present in Gerber
baby food products and that Gerber "rarely tests for mercury in its baby foods." The House Report
also stated that these "results are multiples higher than allowed under existing regulations for other
products." [3]

6.      Gerber never disclosed the presence of toxic heavy metals or perchlorate in its baby
food products to consumers and marketed its baby food products as "natural," "organic," "Non-

---

[1] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-
04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[2] *Id.*

[3] *Id.* at 2-3.

GMO," "wholesome," and having the "highest standards," "best nutrition" and the "highest quality ingredients."[4]

7.  Gerber's deceptive marketing and warranties resulted in tens of thousands of consumers purchasing Gerber baby food products that they thought were safe, nutritious and healthy, and instead were paying a premium for baby food products that were poisoning their children.

8.  The presence of these unsafe levels of toxic heavy metals and perchlorate rendered the Gerber baby food products unfit for their intended purpose and uses, defective, worthless, and denied consumers the benefit of their bargain.

9.  Plaintiff, individually and on behalf of all similarly situated individuals, seeks damages including recovery of the money they paid for the worthless Gerber baby food products, and an order requiring that Gerber cease manufacturing and marketing baby food products containing unsafe levels of heavy metals and perchlorate, or disclose the presence of these toxins in its baby food products and the dangers posed by such contamination.

## JURISDICTION AND VENUE

10.  This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is a citizen of a state other than that of Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

11.  Venue is proper in this Court because the acts and omissions giving rise to this lawsuit took place in this District, Plaintiff resides in this District, and Defendant maintains significant business operations within the District.

---

[4] *See generally,* https://www.gerber.com/.

## THE PARTIES

12.     Plaintiff Muslin Pierre-Louis, is a citizen of the state of New Jersey and a resident of Keyport, New Jersey.  Plaintiff is a member of the proposed Classes as defined herein.

13.     Defendant Gerber Products Company is a Michigan corporation with its headquarters located in Arlington, Virginia.  Prior to moving its headquarters to Virginia in or about 2018, Gerber maintained its headquarters in Florham Park, New Jersey.  Gerber is a subsidiary of Nestle S.A., a Swiss corporation.

14.     Gerber develops, manufactures, markets and sells foods and snacks for infants and toddlers, including the baby food products containing unsafe levels of heavy metals and perchlorate.

## FACTUAL ALLEGATIONS

### A.  Plaintiff

15.     Plaintiff purchased various Gerber baby food products for her child from 2018 to the date the House Report was released, including, but not limited to: Banana Baby, Green Bean Baby Apple Strawberry Banana, Carrot Sweet Potato Pea, Multigrain Banana Apple Strawberry Baby Cereal, Banana Orange Medley, Sweet Potato Apple Pumpkin, Apple Mango with Rice Cereal, and Multigrain Baby Cereal.

16.     These Gerber foods were purchased from a variety of supermarkets and Plaintiff has proof of purchases of the subject baby food products.  Examples of these purchase records are as follows:

4



17.     Prior to purchasing the Gerber baby food products, Plaintiff relied on the representations and warranties, including the list of ingredients and promises of safe and nutritious baby food, on the food packaging and labels. For example:




5

18.     Plaintiff was not aware at the time of the purchases that the Gerber baby food products actually contained dangerous, unsafe levels of toxic heavy metals and perchlorate.  If Plaintiff had known the true facts, she would not have purchased the Gerber baby food products, which were unsafe, dangerous to her child, and worthless.

**B.  <u>Gerber Baby Food</u>**

19.     Gerber markets, represents, warrants, and distinguishes itself from other food brands by holding itself out as being "the most trusted name in baby food, "having the "highest standards," "best nutrition" and using the "highest quality ingredients." These representations and warranties were intended to and did induce Plaintiff and those similarly situated to trust and rely on, and purchase Gerber baby food products.  These representations and warranties were explicit and intended to induce purchases, for example:



20.     Gerber's representations and warranties include statements about the benefits of Gerber baby food over other manufacturers, including that it utilizes "Nestlé's Worldwide Research & Development network [that] provides three fundamental areas of benefits for parents: safety and

quality; nutrition and health; and taste, texture, and convenience."[5]

21.    Gerber markets its baby food products with the intention of inducing consumer purchasing behavior over the course of years, for example dividing the baby food products into "milestones" that are geared toward different age children, while consistently representing and warranting that the baby food products were safe and contained only safe, natural, nutritious ingredients, and failing to disclose that they contained dangerous levels of heavy metals.[6]

22.    Regardless of the milestone of the baby food product, Gerber represents that they are committed to selling "the highest quality food" and that not only does Gerber "meet the standards of the FDA," but that it has "among the strictest standards in the world."[7]



23.    In fact, Gerber employs parents to put their trust in Gerber and to "count on [Gerber] for quality"[8]:

---

[5] https://www.gerber.com/about-us.

[6] *Id.*

[7] https://www.gerber.com/commitment-to-quality

[8] *Id.*



24.     Plaintiff and other similarly situated consumers, having read and relied on such representations and warranties, were induced to believe that Gerber baby food products were safe and healthy and nutritious, and purchased them as a result.  Notably, none of Gerber's packaging or marketing materials warned that its baby food products contained unsafe levels of dangerous toxic heavy metals and perchlorate that could harm the health and physiological and neurocognitive development, including brain development, of children consuming such baby food products.

25.     Gerber falsely represented and warranted the contents, ingredients, safety, and nutritional value of the baby food products because Gerber knew that Plaintiff and similarly situated consumers would never have purchased the Gerber baby food products to be fed to their children if truthful information had been provided. At all times, Gerber had a duty to provide only accurate and truthful representations, warranties, and information about its baby food products, and the aforesaid conduct breached that duty.  As a result, Plaintiff and those similarly situated were economically harmed.

### C.  The House Report

26.     The House Report concluded that baby food products contained unsafe levels of

toxic heavy metals including arsenic, lead, cadmium, and mercury."[9]

27.     The House Report describes the background and genesis of the Subcommittee's investigation.  On November 6, 2019, having been made aware of reports of high levels of toxic heavy metals in baby foods, the Subcommittee requested internal documents and test results from seven of the largest manufacturers of baby food products in the United States, including Gerber.[10]

28.     Four of the companies responded to the Subcommittee's requests, including Gerber, while three of the companies failed to cooperate.[11]

29.     The House Report stated that Gerber was one of four companies that cooperated with the inquiry and "produced their internal testing policies, test results for ingredients and/or finished products, and documentation about what the companies did with ingredients and/or finished products that exceeded their internal testing limits."

30.     Based on the information provided by Gerber, the House Report confirmed that heavy metals including arsenic, lead and cadmium were present in the baby food products marketed by all Gerber.  Additionally, the House Report established that Gerber "rarely tests for mercury in its baby foods." [12]

31.     The House Report concluded that these "results are multiples higher than allowed under existing regulations for other products."

   **D.   Happy Babies Bright Futures Report**

32.     In October 2019, Happy Babies Bright Futures released a report titled "What's in

---

[9] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[10] *Id*. at 2.

[11] *Id*.

[12] *Id*. at 3-4.

my baby's food?" ("HBBF Report")[13]

33.     The HBBF Report details a sprawling investigation in which it tested a variety of different baby foods from most of the leading baby food manufacturers, including Gerber.[14]

34.     The HBBF Report detailed its testing results of numerous Gerber baby foods and found the presence arsenic, lead, cadmium and mercury in many of them.[15]

35.     The HBBF Report also found high levels of perchlorate in several Gerber baby food products.[16]

**E.     Dangers Posed by Heavy Metals**

36.     Heavy metals are naturally existing elements that have high atomic weight and a minimum density five times the density of water.  However, the term "heavy metals" is frequently used to describe both metals and metalloids, including for example arsenic, cadmium, lead, manganese, mercury, zinc, chromium and copper.

37.     The World Health Organization has declared that arsenic, cadmium, lead and mercury are a "major public health concern."[17]

38.     The House Report stated, consistent with the scientific literature, that exposure to heavy metals in infants and children is particularly dangerous even in small amounts, and can lead to "untreatable and frequently permanent brain damage."[18]

39.     The House Report stated, consistent with the scientific literature, that the known

---

[13] https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 37.

[17] https://www.who.int/ceh/capacity/heavy_metals.pdf.

[18] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf. at 9-10.

risks of arsenic include "respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the Central nervous system and cognitive development in children."[19]

40.     The House Report referenced an independent study titled "Association of Arsenic, Cadmium and Manganese exposure with neurodevelopment and behavioral disorders in children" that concluded arsenic exposure has a "significant negative effect on neurodevelopment in children."[20]

41.     The House Report stated, consistent with the scientific literature, that cadmium is associated with decreases in IQ, and the development of Attention Deficit/Hyperactivity Disorder.[21]

42.     The House Report stated, consistent with the scientific literature, that lead exposure is associated with "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth," and the cognitive effects of early childhood lead exposure are believed to be permanent.[22]

43.     In addition, the House Report stated, consistent with the scientific literature, that there is a significant association between lead exposure and Attention Deficit/Hyperactivity Disorder.[23]

44.     The House Report stated, consistent with the scientific literature, that "higher blood mercury levels at two and three years of age were positively associated with autistic behaviors."[24] The findings in the House Report and the HBBF Report are fully consistent with the scientific

---

[19] *Id*. at 10.

[20] *Id*. at 10.

[21] *Id*. at 12.

[22] *Id*. at 11.

[23] *Id*. at 12.

[24] *Id*. at 12-13.

literature, and on information and belief, Gerber knew or should have known that these significant risks existed throughout the time that Gerber designed, manufactured and marketed its baby food products with unsafe levels of heavy metals and perchlorate.

### F. Dangers Posed by Perchlorate

45.     Perchlorate is a negatively charged molecule made of one chlorine atom and four oxygen atoms.[25]

46.     According to the FDA, "Perchlorate occurs naturally in arid states in the Southwest United States (U.S.), in nitrate fertilizer deposits in Chile, and in potash ore in the U.S. and Canada. Perchlorate also forms naturally in the atmosphere. Manufactured perchlorate is used as an industrial chemical and can be found in rocket propellant, explosives, fireworks, and road flares."[26]

47.     In addition, small amounts of perchlorate "may be used as a component in certain containers and food processing equipment for use in contact only with only certain types of dry foods."[27]

48.     The FDA has warned that "[h]uman exposure to high dosages of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting the functions of the thyroid and potentially leading to a reduction in the production of thyroid hormone….In fetuses and infants, thyroid hormones are critical for normal growth and development of the central nervous system. Pregnant women and their fetuses and newborns have the greatest potential for risk of adverse health effects following exposure to perchlorate."[28]

### G. Gerber's Knowledge of and Failure to Disclose Heavy Metal and Perchlorate Contamination in its Foods

---

[25] https://www.fda.gov/food/chemicals/perchlorate-questions-and-answers

[26] *Id.*

[27] *Id.*

[28] *Id.*

49.     Despite the known and knowable risks of exposure to these heavy metals and Perchlorate, Gerber negligently, recklessly, and/or knowingly sold its baby food products containing dangerous heavy metals and perchlorate, and without disclosing a warning to Plaintiff and those similarly situated.

50.     At all times relevant, Gerber knew or should have known the contents of its baby food products. Gerber also knew or should have known the contents of ingredients supplied by suppliers for inclusion in the baby food products, including the presence of dangerous heavy metals and perchlorate.

51.     Upon information and belief, Gerber regularly tests the component ingredients and the finished products, and knew or should have known of the presence of dangerous heavy metals and perchlorate.  Gerber recklessly and with willful and wanton disregard of the rights and health of the those who purchased and consumed its baby food products, disregarded the unreasonable risks created by the presence of heavy metals and perchlorate in its baby food, and failed to adequately inform or warn Plaintiff and those similarly situated.

52.     The October 2019, the HBBF Report notified Gerber of the presence of unacceptable, dangerous levels of heavy metals and perchlorate in their baby food products.[29]  Even after being notified in this manner, Gerber failed to take adequate measures to sell baby food products without unsafe levels of heavy metals and perchlorate, or to adequately warn consumers.

53.     Despite Gerber's knowledge of heavy metal and perchlorate contamination in its baby food products, Gerber failed to take action to change or adjust the design, manufacturing, or marketing of its baby food products, including the failure to provide adequate warnings about the

---

[29] http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

heavy metal and perchlorate contamination to Plaintiff and other similarly situated consumers.

54. Gerber's marketing of its baby food products without any warning indicating that these products contain heavy metals and perchlorate, or that these toxins can accumulate in a child over time to the point where poisoning, injury, and/or disease can occur, was reckless, and undertaken with willful and wanton disregard of Plaintiff and those similarly situated.

55. Gerber's misrepresentations and untrue warranties regarding the safety, ingredients, and nutritional value of their baby food products, as well as its omissions and failure to warn about the presence of toxic heavy metals were material, false, misleading, and intended to be and were reasonably likely to deceive the public, including Plaintiff and those similarly situated. This is true especially considering Gerber's long-standing marketing of its baby food products as "natural," "organic," "Non-GMO," "wholesome," and having the "highest standards," "best nutrition" and the "highest quality ingredients."

56. These representations and "commitments" in Gerber's marketing and labeling were deceptive, affirmatively representing an inaccurate list of ingredients and safety and nutrition information, and failing to disclose the presence of heavy metals and perchlorate in its baby food products. Reasonable consumers, including Plaintiff and those similarly situated, were unaware of the presence of unsafe levels of heavy metals and perchlorate in Gerber's baby food products, and would not have purchased Gerber's baby food products if they had known the true list of ingredients including the heavy metals and perchlorate. Gerber's above-referenced statements, representations, warranties, and omissions were false, misleading, and intended to deceive the public, including Plaintiff and those similarly situated. Plaintiff and those similarly situated were deceived by the marketing images representing and warranting that Gerber foods are healthy, safe, high-quality, contain only the listed ingredients, and not disclosing the inclusion of heavy metals such as arsenic,

cadmium, lead and mercury. Gerber also knew but disregarded the fact that Plaintiff and those similarly situated would deem the presence of heavy metals and perchlorate in its baby food products to be material in selecting baby food products for purchase and to be fed to their children.

57.     Gerber also knew or should have known that Plaintiff and similarly situated consumers would be feeding the Gerber baby food products to their children regularly, including multiple times each day, and that this repeated ingestion would cause and exacerbate the build-up of the heavy metals and perchlorate in their children.

58.     As a result of the aforesaid wrongdoing, Gerber has generated substantial sales and profits from the sale of its baby food products to Plaintiff and those similarly situated. These sales would not have occurred if Gerber had provided accurate information.

## **RULE 9(B) ALLEGATIONS**

59.     To the extent necessary, as detailed in the paragraphs above and below, Plaintiff have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

a. WHO:  Gerber Products Company, acting through their employees and agents, made material misrepresentations and omissions of fact in the sale, marketing, advertising, and promotion of its Gerber baby food products.

b. WHAT:  Gerber Products Company made material misrepresentations and omissions by marketing, advertising, promoting, and selling its baby food products as containing listed ingredients and nutritional benefits, and using materially misleading and false terminology to describe the contents, including but not limited to: "natural," "organic," "Non-GMO," "wholesome," and having the "highest standards," "best nutrition" and the "highest quality ingredients."  Such representations and warranties were deceptive and misleading because

Gerber baby food products contained toxic heavy metals and perchlorate that pose a danger to the health and safety of babies and children when ingested. Gerber failed to inform consumers that its baby food products contained or had a risk of containing unsafe levels of heavy metals, including cadmium, arsenic, lead, and mercury, as well as perchlorate. Plaintiff and similarly situated reasonable consumers expected that baby food products, and in particular those marketed as "highest standards," "best nutrition" and the "highest quality ingredients" would only contain objectively safe ingredients and components, and would not contain dangerous levels of undisclosed heavy metals and perchlorate, and this was known to Gerber. Gerber failed to inform Plaintiff and similarly situated consumers that Gerber baby food products contained heavy metals and perchlorate because Gerber intended for them to believe that its baby food products were safe and healthy and posed no unreasonable safety risks to children. Indeed, Gerber knew that its representations and warranties and omissions rendered the contents of the packages, labels, and marketing, advertising, and promotions false, because the baby food products contained unsafe levels of heavy metals and perchlorate.

c.  WHERE: The misrepresentations and material omissions were on Gerber baby food product packages, labels and marketing, advertising, and promotions. These misrepresentations and material omissions were included on the products themselves, which failed to disclose the presence of heavy metals and/or perchlorate.

d.  WHEN: Gerber made the material misrepresentations and omissions every time its baby food products were sold, marketed, advertised, and promoted.

e.  WHY: Knowing that consumers would not purchase baby food products containing unsafe levels of heavy metals, or the disclosed risk of containing unsafe levels of heavy metals and

perchlorate, Gerber intentionally failed to inform consumers that Gerber baby food products contained, or risked containing unsafe levels of heavy metals and perchlorate. Gerber took these actions in order to profit from the sale of its baby food products despite the health risks they posed, placing profits ahead of safety.

f. HOW: Gerber made material misrepresentations and failed to disclose material facts concerning the presence of unsafe levels of heavy metals in its baby food products by representing false and incomplete lists of ingredients and nutritional information, and descriptions of the baby food products as safe and healthy both directly and through the terminology utilized as aforesaid, and failing to inform consumers that they contained unsafe levels of heavy metals.

**CLASS ACTION ALLEGATIONS**

60. Plaintiff brings this action individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons who purchased Gerber baby food products for personal use (and not for resale) from March 10, 2015 to the present (the "Nationwide Class").

61. Plaintiff also brings this action individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a sub-class of all persons who are citizens of New Jersey and who purchased Gerber baby food products from March 10, 2015 to the present (the "New Jersey Sub-Class").

62. Collectively, the Nationwide Class and the New Jersey Sub-Class are referred to as "Classes."

63. Excluded from the Classes are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant have or had a controlling interest, or which Defendant

otherwise control or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant; and any judges presiding over this case.

64.     This action is brought as a class action for the following reasons:

a.     The Classes consist of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.     There are questions of law or fact common to the Classes that predominate over any questions affecting only individual members, including:

i.     whether Defendant breached its express and/or implied warranties with consumers by selling baby food products containing unsafe levels of heavy metals and perchlorate;

ii.     whether Defendant violated state consumer protection laws;

iii.     whether Plaintiff and the Classes have sustained damages and, if so, the proper measure thereof; and

iv.     whether Defendant should be enjoined from continuing to sell foods absent sufficient controls and procedures, including accurate lists of ingredients and contents, to ensure that they do not contain dangerous levels of heavy metals and perchlorate and/or that consumers will know the true ingredients, contents, and risks, before purchase;

c.     The claims asserted by Plaintiff are typical of the claims of the members of the Classes;

d.     Plaintiff will fairly and adequately protect the interests of the Classes, and Plaintiff has retained attorneys experienced in class actions and complex litigation, including class litigation involving consumer protection and deceptive labelling;

e. Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant;

f. Defendant has acted on grounds that apply generally to the Classes, namely representing that its baby food products are healthy and nutritious and omitting that they contain unsafe levels of heavy metals and perchlorate, so that final injunctive relief prohibiting Defendant from continuing its deceptive practices is appropriate with respect to the Classes as a whole;

g. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i. Absent a class action, Class members as a practical matter will be unable to obtain redress, as the cost of litigation would be prohibitive as compared to the potential recovery for an individual plaintiff; in that event damaged class members will obtain no relief, Defendant's violations of its legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendant will continue to retain its ill-gotten gains;

ii. It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions;

iii. When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Classes;

iv. A class action will permit an orderly and expeditious administration of the Classes' claims, foster economies of time, effort, and expense, and ensure uniformity of decisions;

v. This lawsuit presents no logistical or other practical difficulties that would impede its management by the Court as a class action; and

vi.       Defendant has acted on grounds generally applicable to Classes, making class-wide monetary and injunctive relief appropriate and feasible.

h.       Class members are ascertainable through the use of purchase records, reward and/or membership programs, and the possession of the products themselves.

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Express Warranty)

65.       Plaintiff repeats and restates the foregoing allegations as if set forth at length herein.

66.       Plaintiff brings this claim individually and on behalf of the Classes.

67.       Gerber falsely represented and warranted that Gerber baby food products were safe, healthy, contained specific ingredients, and were nutritious products to feed to babies and children, utilizing terminology including, but not limited to "natural," "organic," "Non-GMO," "wholesome," and having the "highest standards," "best nutrition" and the "highest quality ingredients," and with lists of ingredients listed on their packages and labels.  Each of these statements constitutes an affirmation of fact.

68.       However, Gerber foods are not in fact safe and healthy and do not contain only the ingredients listed on their labels because they contain unsafe levels of heavy metals and perchlorate.

69.       The inclusion of unsafe levels of heavy metals and perchlorate is material because unsafe levels of these toxins rendered Gerber baby food products dangerous, presenting a significant, unreasonable risk of physical and cognitive harm, and thus rendering the baby food products worthless.  Plaintiff and those similarly situated would not have purchased the Gerber baby food products in the absence of these false and misleading representations and warranties,

and/or if the true facts had been disclosed.

70.     Defendant's representations regarding the ingredients in Gerber baby food products related to the goods and became part of the basis of the bargain between Defendant and Plaintiff and similarly situated purchasers of Gerber baby food products.

71.     Plaintiff and members of the Classes purchased Gerber baby food products because they relied on and believed that they conformed to the express warranties.

72.     As set forth herein, Defendant's statements concerning the safety, health benefits, and ingredients in Gerber baby food products were false and materially misleading.

73.     All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiff and the other members of the Classes.

74.     As a result of Defendant's breaches of its express warranties, Plaintiff and the other members of the Classes were damaged in the amount of the purchase price they paid for Gerber baby food products, which they would not have otherwise paid, in amounts to be proven at trial.

75.     Defendant was on notice that Gerber baby food products contained unsafe levels of heavy metals and perchlorate, that the presence of these toxins was contrary to and breached Defendant's express warranties, and that Plaintiff and similarly situated class members would be and actually were damaged as a result.

76.     As a proximate result of the breach of warranties by Defendant, Plaintiff and the other members of the Classes did not receive goods as warranted.  Among other things, Plaintiff and the other members of the Classes did not receive the benefit of the bargain and have suffered other injuries and damages as detailed herein.  Had Plaintiff and the members of the Classes known the true facts, they would not have purchased the subject Gerber baby food products.

## COUNT II
### (Breach of Implied Warranty of Merchantability
### And Fitness For a Particular Purpose)

77.     Plaintiff repeats and restates the foregoing allegations as if set forth at length herein.

78.     Plaintiff brings this claim individually and on behalf of the Classes.

79.     Defendant knew that the purpose for which consumers purchased its baby food products was to provide safe, healthy and nutritious foods to their children, containing only the ingredients represented on the packages, labels, marketing, advertising, and promotions.

80.     Gerber knew that Plaintiff and similarly situated consumers trusted and relied on the accuracy of the marketing and labeling for the Gerber baby food products, and that Gerber was supplying baby food that was safe and suitable for consumption by their children.

81.     Plaintiff and members of the Classes relied on Gerber to not include unsafe ingredients such as unsafe levels of heavy metals and perchlorate in its baby food products; had they known, or even suspected, that Defendant's foods were contaminated with unsafe levels of heavy metals and perchlorate, they would not have purchased the subject foods.

82.     Plaintiff and members of the Classes were injured because Gerber baby food products were not fit for the particular purpose for which they were purchased, namely to provide safe, healthy and nutritious food to be fed to their children.

83.     As a proximate result of the breach of implied warranties by Defendant, Plaintiff and the other members of the Classes did not receive merchantable goods that were fit for their intended purpose.  Among other things, Plaintiff and members of the Classes did not receive the benefit of the bargain and have suffered other injuries and damages as detailed above.  Had Plaintiff and the members of the Classes known the true facts, they would not have purchased the subject

22

Gerber baby food products.

## COUNT III
### (Negligent Misrepresentation)

84.     Plaintiff repeats and restates the foregoing allegations as if set forth at length herein.

85.     Plaintiff brings this claim individually and on behalf of the Classes.

86.     Gerber owed a duty to Plaintiff and the Classes to exercise reasonable and ordinary care in the formulation, design, testing, manufacture, packaging, labeling, marketing, advertising, promotion, distribution, and sale of its baby food products.

87.     Gerber breached its duty to Plaintiff and the Classes by designing, testing, formulating, manufacturing, packaging, labeling, marketing, advertising, promoting, distribution, and sale of its baby food products to Plaintiff and the Classes, because the baby food products contained unsafe levels of heavy metals and perchlorate, Gerber provided inaccurate and materially misleading information as to the ingredients, qualities, characteristics, and suitability for consumption of the baby food products, and Gerber failed to remove the subject baby food products from the marketplace or to take other appropriate remedial action to protect the safety and health of the babies and children that Gerber knew would eat the baby food products containing unsafe levels of heavy metals and perchlorate.

88.     Gerber knew or should have known that the ingredients, qualities, and characteristics of the foods were not as represented, marketed, advertised, or promoted, that the baby food products were not suitable for their intended use of consumption by children, and were otherwise not as warranted and represented by Gerber. Gerber knew or should have known that (1) the baby food products were not nutritious, superior quality, clean, healthy and safe for consumption because they contained, or had a risk of containing, unsafe levels of heavy metals and perchlorate that did not

23

conform to the packaging, labeling, or other representations and statements of the ingredients and quality, safety, and nutritional value of the baby food products; and (2) the baby food products were otherwise not as represented and warranted by Gerber.

89. As a direct and proximate result of Gerber's aforesaid conduct, Plaintiff and the Classes have suffered actual damages in that they purchased Gerber baby food products that presented an unreasonable risk of harm and that were thus worthless. Plaintiff and the similarly situated members of the Classes would not have purchased the baby food products at all in the absence of the misrepresentations catalogued herein, and if they had been provided accurate information, including that the baby food products contained, or were at risk of containing, unsafe levels of heavy metals and perchlorate.

## COUNT IV
### (Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1 *et seq.*)

90. Plaintiff repeats and restates the foregoing allegations as if set forth at length herein.

91. Plaintiff brings this claim individually and on behalf of the Classes.

92. The New Jersey Consumer Fraud Act prohibits, *inter alia*:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J.S.A. § 56:8-2.

93. Defendant's misrepresentations and false, deceptive, and misleading statements and omissions with respect to the inclusion of unsafe levels of heavy metals and perchlorate in Gerber baby food products, as described herein, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion, and sale of baby food products in violation

of the New Jersey Consumer Fraud Act.

94.     Defendant's false, deceptive, and misleading statements and omissions were and would have been material to any potential consumer's decision to purchase Gerber baby food products.

95.     Defendant failed to inform consumers that Gerber baby food products contained unsafe levels of heavy metals and perchlorate.  That information would have been material to any consumer deciding whether to purchase Gerber baby food products.

96.     Defendant made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements, and Plaintiff and similarly situated class members did rely on such statements and omissions.

97.     Upon information and belief, Defendant's misrepresentations and omissions were created, approved, and implemented from its New Jersey headquarters prior to moving to it to Virginia.

98.     Plaintiff and the other members of the Classes suffered an ascertainable loss as a direct and proximate result of Defendant's actions in violation of the New Jersey Consumer Fraud Act.

99.     As a consequence of Defendant's wrongful actions, Plaintiff and the other members of the Class suffered an ascertainable monetary loss based on and measured by the price they paid for Gerber baby food products, which they would not have paid in the absence of the aforesaid wrongdoing.

100.     Plaintiff and other members of the Class suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have purchased Gerber foods if the true facts concerning unsafe levels of heavy metals and perchlorate had been known.

101.     Defendant's sale of baby food products containing unsafe levels of heavy metals and perchlorate for consumption by children was unconscionable, and the misrepresentations and omissions it made with regard to Gerber baby food products were made for the sole purpose of inducing consumers to purchase Gerber baby food products to feed to their children irrespective of any health consequences.  Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of children eating the baby food products.  Defendant is therefore liable for treble damages and punitive damages, in an amount to be determined at trial.

102.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit.  N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

### COUNT V
### (Fraud)

103.     Plaintiff repeats and restates the foregoing allegations as if set forth at length herein.

104.     Plaintiff brings this claim individually and on behalf of the Classes.

105.     Gerber made material misrepresentations and omissions concerning a presently existing or past fact.  Gerber intentionally failed to fully and truthfully disclose to Plaintiff and similarly situated consumers the true list of ingredients in its baby food products, and the true safety, nutritional value, and risks of eating the baby food products, which was not readily discoverable until this information was recently made public on a widescale basis through the House Report.  As a result, Plaintiff and the other members of the Classes relied on the false and misleading information provided by Gerber, and were thus fraudulently induced to purchase the Gerber baby food products containing unsafe levels of heavy metals and perchlorate.

26

106. Gerber's affirmative misrepresentations and omissions were made by Gerber with knowledge of their falsity, and with the intent that Plaintiff and other members of the Classes would rely on them.

107. Plaintiff and other members of the Classes reasonably relied on these statements and omissions, and suffered damages as a result.

## COUNT VI
### (Unjust Enrichment)

108. Plaintiff repeats and restates the foregoing allegations as if set forth at length herein.

109. Plaintiff brings this claim individually and on behalf of the Classes.

110. This cause of action is pled in the alternative to the other claims.

111. Plaintiff and those similarly situated conferred a tangible economic benefit upon Defendant by purchasing the Gerber baby food products. Plaintiff and those similarly situated would not have purchased the Gerber baby food products had they known that they contained unsafe levels of heavy metals and/or perchlorate.

112. By engaging in the conduct described above, Defendant were unjustly enriched and received a benefit beyond what was contemplated by the parties, at the expense of Plaintiff and those similarly situated.

113. It would be unjust and inequitable for Defendant to retain the payments Plaintiff and those similarly situated made for the Gerber foods.

114. By reason of the foregoing, Defendant are liable to Plaintiff and members of the Classes for the damages that they have suffered as a result of Defendant's actions, the amount of which shall be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against

Defendant as to each and every count, including:

a)  An Order certifying this action as a class action, with classes as defined above;

b)  An Order appointing Plaintiff as class representative and her counsel as class counsel, to represent the Classes, and requiring Gerber to bear the costs of class notice;

c)  An order requiring Gerber to pay all actual, compensatory, and statutory damages permitted or required for the conduct set forth herein;

d)  An order requiring Gerber to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice set forth or encompassed herein;

e)  An order requiring Gerber to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading packaging, labeling, advertising, marketing, or promotion, or a violation of law;

f)  An order enjoining Gerber from selling the Gerber baby food products until the unsafe levels of heavy metals and perchlorate are removed, and/or until full disclosure of the presence of the unsafe levels of heavy metals and perchlorate are truthfully disclosed on all packaging, labels, advertising, marketing, and promotions;

g)  An order enjoining Gerber from selling Gerber baby food products in any manner suggesting or implying that they are healthy, organic, clean and/or safe for consumption, as long as they contain unsafe levels of heavy metals and perchlorate;

h)  An order requiring Gerber to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing baby food products;

i)  An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Gerber from continuing the unlawful practices alleged herein, and injunctive relief to remedy Gerber's past conduct;

j)  An Order requiring Gerber to pay pre- and post-judgment interest;

k)  An Order requiring Gerber to pay treble damages;

l)  An Order requiring Gerber to pay punitive damages;

m) An order awarding attorney's fees and costs, including the costs of pre-suit investigation; and

n) An order providing for such further relief as the Court deems just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all counts and claims.

/s/ Matthew R. Mendelsohn
Matthew R. Mendelsohn
Adam M. Slater
Julia S. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-0391
*Attorneys for Plaintiff*

## **LOCAL CIVIL RULE 11.2 CERTIFICATION**

I hereby further certify that to the best of my knowledge the matter in controversy is the subject of another action, pending arbitration or administrative proceeding in this District, including *Shepard v. Gerber Products Company*, No. 2:21-cv-01977-CCC; *Cantor v. Gerber Products Company*, No. 2:21-cv-03402-CCC;  *Wallace v. Gerber Products Company, et al.*, No. 2:21-cv-02531-CCC; and *Moore v. Gerber Products Company*, No. 2:21-cv-02516-CCC.

Dated: March 11, 2021

/s/ Matthew R. Mendelsohn
Matthew R. Mendelsohn
Adam M. Slater
Julia S. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-0391
*Attorneys for Plaintiff*