CM/ECF LIVE - U.S. District Court for the District of New Jersey

Query    Reports    Utilities    Help    Log Out

## U.S. District Court
## District of New Jersey [LIVE] (Camden)
## CIVIL DOCKET FOR CASE #: 1:21-cv-04749-NLH-KMW

BACCARI et al v. CAMPBELL SOUP COMPANY et al

Assigned to: Judge Noel L. Hillman

Referred to: Magistrate Judge Karen M. Williams

Related Cases: 1:21-cv-02417-NLH-KMW

1:21-cv-04650-NLH-KMW

Cause: 28:1332 Diversity-Fraud

Date Filed: 03/10/2021

Jury Demand: Plaintiff

Nature of Suit: 370 Other Fraud

Jurisdiction: Diversity

**Plaintiff**

**EMILY BACCARI**

represented by **INNESSA MELAMED HUOT**
FAUUQI & FARUQI LLP
685 THIRD AVENUE
26TH FLOOR
NEW YORK, NY 10017
212-983-9330
Email: ihuot@faruqilaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JILLIAN GEFFKEN**

represented by **INNESSA MELAMED HUOT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HEATHER HYDEN**

represented by **INNESSA MELAMED HUOT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MERCEDES JONES**
*on behalf of themselves and all other similarly situated*

represented by **INNESSA MELAMED HUOT**
(See above for address)

CM/ECF LIVE - U.S. District Court for the District of New Jersey

V.

**Defendant**

**CAMPBELL SOUP COMPANY**

**Defendant**

**PLUM, PBC**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/10/2021 | 1 | COMPLAINT against CAMPBELL SOUP COMPANY, PLUM, PBC ( Filing and Admin fee $ 402 receipt number ANJDC-12251745) with JURY DEMAND, filed by MERCEDES JONES, EMILY BACCARI, HEATHER HYDEN, JILLIAN GEFFKEN. (Attachments: # 1 Civil Cover Sheet)(HUOT, INNESSA) (Entered: 03/10/2021) |
| 03/10/2021 | | Judge Noel L. Hillman and Magistrate Judge Karen M. Williams added. (dd, ) (Entered: 03/10/2021) |
| 03/22/2021 | | Order in all cases in which the basis of jurisdiction is 28 U.S.C. 1332, Diversity of Citizenship: Whether or not the Court issues an Order to Show Cause or other Order directing the filing of an amended pleading or removal petition on the issue of jurisdiction, the parties in all diversity cases are required to complete and file a Joint Certification of the Citizenship of the Parties, click here, no later than the first Rule 16 conference.. Signed by Judge Noel L. Hillman on 3/22/2021. (pr, ) (Entered: 03/22/2021) |
| 03/22/2021 | 2 | SUMMONS ISSUED as to CAMPBELL SOUP COMPANY, PLUM, PBC. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (pr, ) (Entered: 03/22/2021) |
| 03/22/2021 | | CLERK'S QUALITY CONTROL MESSAGE - The case you electronically filed has been processed, however, the following deficiencies were found: Party Information. . The Clerk's Office has made the appropriate changes. Please refer to the Attorney Case Opening Guide for processing electronically filed cases. (pr, ) (Entered: 03/22/2021) |

*ATTORNEY TO BE NOTICED*

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 03/23/2021 12:31:39 | | |
| PACER Login: | SLB10SGTLAW | Client Code: | Baby Food |
| Description: | Docket Report | Search Criteria: | 1:21-cv-04749-NLH-KMW Start date: 1/1/1980 End date: |

https://ecf.njd.uscourts.gov/cgi-bin/DktRpt.pl?19334935738098&-L_1_0-1

3/23/2021

CM/ECF LIVE - U.S. District Court for the District of New Jersey

| | 3/23/2021 | | |
|---|---|---|---|
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMILY BACCARI; JILLIAN GEFFKEN; HEATHER HYDEN; and MERCEDES JONES, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>CAMPBELL SOUP COMPANY; PLUM, PBC,<br><br>*Defendants.* | Case No. 1:21-cv-04749<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Emily Baccari ("Plaintiff Baccari"), Jillian Geffken ("Plaintiff Geffken"), Heather Hyden ("Plaintiff Hyden") and Mercedes Jones ("Plaintiff Jones" and collectively with Plaintiff Baccari, Plaintiff Geffken, and Plaintiff Hyden, "Plaintiffs") on behalf of themselves and the Class and Subclasses of all others similarly situated defined below, bring this complaint against defendants Campbell Soup Company ("Campbell's" or "Defendant Campbell's") and Plum, PBC ("Plum" or "Plum Organics," and collectively with Campbell's, "Defendants") for their negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the heavy metals or other ingredients that do not conform to the labels, packaging, or advertising of, or statements concerning, Defendants' products sold throughout the United States, including in this District. Plaintiffs seek

both injunctive relief and damages on behalf of the proposed Class and Subclasses (as defined below) and allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief. Given the concealed nature of Defendants' conduct, Plaintiffs believe that an opportunity to conduct discovery will reveal further support for Plaintiffs' allegations.

## INTRODUCTION

1.     Plaintiffs bring this action on behalf of themselves and a proposed class of individuals that bought baby food sold by Plum under the brand name Plum Organics that was, unbeknownst to Plaintiffs and members of the Class and Subclasses (but known to Plum), tainted with numerous toxic heavy metals. Plaintiffs and members of the Class and Subclasses seek injunctive and monetary relief based on Plum's false, deceptive, and misleading business practices in violation of the consumer protection statutes of the home states of Plaintiffs and members of the Class and Subclasses.

2.     Parents and other caregivers, including Plaintiffs and members of the Class and Subclasses, reasonably believe that the baby food they purchase for their babies will be healthy, nutritious, and non-toxic. Alarmingly, they were wrong.

3.     On February 4, 2021, the United States House of Representatives Committee on Oversight and Reform's Subcommittee on Economic and Consumer Policy (the "House Subcommittee") released a report entitled "Baby Foods Are

2

Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[1] (the "Report"). According to the Report, several brands of baby food sold in the United States have "[i]nternal company standards [that] permit dangerously high levels of toxic heavy metals, and . . . that the manufacturers have often sold foods that exceeded these levels." Plum was one of seven baby food manufacturers named in the Report, but one of only three manufacturers named that refused to cooperate with the House Subcommittee. The House Subcommittee noted that Plum's refusal to cooperate caused "great[] concerns that [Plum's] lack of cooperation might obscure the presence of even higher levels of toxic heavy metals in their baby food products, compared to their competitors' products."[2]

4. The House Committee noted that Plum had sold baby food with dangerously high levels of lead, arsenic, and cadmium,[3] which is consistent with independent testing performed by multiple consumer groups.

5. Given the health risks associated with high levels of toxic heavy metals, the presence of these substances in baby food is a material fact to consumers. Indeed,

---

[1] *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, Feb. 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed February 24, 2021).

[2] Report, at 5.

[3] Report, at 3.

4

consumers, such as Plaintiffs and members of the Class and Subclasses (defined below), are unwilling to purchase baby food that contains unsafe levels of toxic heavy metals.

6.      Baby food manufacturers hold a special position of public trust; consumers believe that they would not sell products that are unsafe. Defendants knew that the presence of toxic heavy metals in their baby food was a material fact to consumers, yet omitted and concealed the unsafe level of heavy metals from consumers. To this day, Defendants' baby foods containing dangerous levels of toxic heavy metals bear no label or warning to parents.

7.      Accordingly, Plaintiffs bring this suit on behalf of themselves and a Class of similarly situated individuals for damages resulting from Defendants' sale of baby food that contained unsafe levels of toxic heavy metals.

## PARTIES

8.      Plaintiff Emily Baccari is a citizen of the Commonwealth of Massachusetts.

9.      Plaintiff Jillian Geffken is a citizen of the State of North Carolina.

10.     Plaintiff Mercedes Jones is a citizen of the State of Ohio.

11.     Plaintiff Heather Hyden is a citizen of the State of Texas.

12.     Defendant Campbell Soup Company is a Delaware corporation with its principal place of business located at 1 Campbell Place, Camden, New Jersey 08103.

5

13.     Defendant Plum, PBC is a Public Benefit Corporation incorporated in the State of Delaware with its principal place of business currently located at 1485 Park Ave, Emeryville, California, 94608. At all material times, Plum, PBC has been a wholly owned subsidiary of Defendant Campbell Soup Company.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendants.

15.     The Court has personal jurisdiction over the Defendants. Defendants have transacted business and maintained substantial contact throughout the United States, including in this District. Defendants' conduct has taken place in, been directed at, and has had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

16.     Venue is proper in this District because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over the Defendants. Specifically, Defendants' decision-making regarding the marketing of the baby foods at issue, including the decision to omit the material

information regarding the toxic heavy metals in the products, was in this District.

Furthermore, Defendants are headquartered in this District.

## FACTUAL BACKGROUND

### I.     CAMPBELL SOUP COMPANY

17.    Campbell's is an American processed food company best known for its

line of canned soups. Campbell's also owns and operates several subsidiary brands,

including Plum Organics, a baby food brand Campbell's acquired in 2013.[4]

Campbell's acquired Plum in order to gain entry into the "Rapidly-Growing

Premium Baby Food Category."[5]

18.    Since Campbell's acquisition of Plum, it has assumed a supervisory

role over Plum's operations, including, but not limited to controlling and directing

Plum's production, manufacturing, advertising, promotion, marketing, and testing

of baby foods sold under the Plum Organics brand.

19.    For example, as discussed in further details below, when the House

Subcommittee investigated the level of toxic heavy metals in Plum Organics baby

foods, the House Subcommittee sought information from Campbell's. Similarly,

---

[4] Press Release, *CAMPBELL TO ACQUIRE PLUM ORGANICS, A LEADING PREMIUM, ORGANIC KIDS NUTRITION COMPANY*, CAMPBELL SOUP CO. (May 23, 2013), https://www.campbellsoupcompany.com/newsroom/press-releases/campbell-to-acquire-plum-organics-a-leading-premium-organic-kids-nutrition-company/ (accessed Mar. 6, 2021)(hereinafter Plum Acquisition Press Release).

[5] *Id.*

when (limited) information was produced to the House Subcommittee concerning

Plum Organics baby foods, it was produced by *Campbell's*.

## II. PLUM ORGANICS, PBC

20.     Plum Organics is a baby food producer that was founded in 2007.

According to Plum's founder, Neil Grimmer, "Plum was founded by a group of

parents on a mission to give the very best food to our little ones"[6] and Plum has

adopted the "Food Philosophy" of "[l]ittle ones deserve the very best food form the

very first bite."[7]

21.     In 2013, Defendant Campbell's purchased Plum for $250 million.[8] As

part of the acquisition, Plum's management team joined Defendant Campbell's and

continued to operate Plum as a standalone business under Campbell's North

America division.[9] Weeks after the acquisition was announced, Campbell's

reincorporated Plum Organics as a Public Benefit Corporation, a corporate form

---

6 *Id*

7 *Mission*, Plum Organics, https://www.plumorganics.com/mission/ (accessed Mar. 6, 2021).

8 *Plum Organics acquired by Campbell Soup for $250 million*, JONES DAY (June 2013), https://www.jonesday.com/en/practices/experience/2013/06/plum-organics-acquired-by-campbell-soup-for-$250-million (accessed Mar. 10, 2020).

9 Plum Acquisition Press Release ("Campbell plans to operate Plum as a standalone business within its Campbell North America division. Senior members of Plum Organics' management team, including Grimmer, will join Campbell, and continue to lead Plum and its mission-driven culture from Emeryville.")

7

8

recognized in Delaware.[10] The reincorporated purportedly allowed Campbell's and

Plum to "to consider the impact of their actions on the environment, workers, and

the community in addition to their impact on shareholders [and] pursue values-

driven missions without worrying about getting sued"[11] for abandoning their

corporate purpose of maximizing shareholders value.

22.     Today, Defendant Plum remains a wholly owned subsidiary of

Campbell's that manufactures, markets, advertises, labels, represents, warrants,

distributes, and sells baby food products, at the direction of, and under the

supervision of, its parent Campbell's, throughout the United States under the Plum

Organics label.

23.     Plum claims to understand that parents "want to know everything" that

is in the food their children eat and therefore represent that its baby foods are

"absolutely" safe to eat and that "health and safety are always" its "top priorities."

---

10 Ariel Schwartz, *Inside Plum Organics, The First Benefit Corporation Owned By A Public Company*, FAST COMPANY (Jan. 22, 2014), https://www.fastcompanymake it possible for companies to consider the impact of their actions on the environment, workers, and the community in addition to their impact on shareholders. They can pursue values-driven missions without worrying about getting sued ny.com/3024991/inside-plum-organics-the-first-benefit-corporation-owned-by-a-public-co (accessed Mar. 9, 2021).

11 *Id.*

6

This is because, as Plum acknowledges on their website, "food sparks baby's growth, informs taste preferences and impacts overall [child] development."[12]

24.     Plum represents on its website that it conducts ingredient testing in order to "get . . . ahead of any potential issues before it makes its way into a product . . . just like when you make a recipe at home – you want to know everything that's going into the recipe."[13] Plum has, for example, represented that it's Stage 1 (4+ month) organic baby food contains only "non-GMO," organic ingredients."[14]

25.     Plum has additionally made the following representation regarding its testing: "Campbell's has conducted testing on every Plum Organics product on the market to ensure none exceed acceptable levels of arsenic, lead, cadmium or mercury . . . To date, no Plum Organics food has been found to be above exposure limits set by available domestic and international regulatory bodies . . ."[15]

26.     Plum produces several types of baby foods under the Plum Organics label, (the "Plum Baby Foods"), including, but not limited to:

- **Stage 1 (4+ months) Baby Food Pouch – Peaches**
- **Stage 1 (4+ months) Baby Food Pouch – Sweet Potato;**

[12] *First 1000 Days*, Plum Organics, https://www.plumorganics.com/first-1000-days/.

[13] *FAQs*, Plum Organics, https://www.plumorganics.com/faqs/.

[14] *Baby Snacks*, Plum Organics, https://www.plumorganics.com/baby-snacks/.

[15] Letter from Thomas Perrelli on behalf of Campbell to Raja Krishnamoorthi, Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform (Dec. 11, 2019).

10

- Stage 1 (4+ months) Baby Food Pouch – Mangos;
- Stage 1 (4+ months) Baby Food Pouch – Prunes;
- Stage 2 (6+ months) Baby Food Pouch – Apple, Butternut Squash & Granola;
- Stage 2 (6+ months) Baby Food Pouch – Pear, Blueberry, Avocado & Granola;
- Stage 2 (6+ months) Baby Food Pouch – Strawberry, Banana & Granola;
- Stage 2 (6+ months) Baby Food Pouch – Mango, Carrot & Coconut Cream;
- Stage 2 (6+ months) Baby Food Pouch – Apple, Raisin, & Quinoa Organic Baby Food;
- Stage 2 (6+ months) – Pumpkin, Banana, Papaya & Cardamom Baby Food
- Stage 3 (9+ months) Baby Food Pouch – Carrot, Spinach, Turkey, Corn, Apple & Potato;
- Stage 3 (9+ months) Baby Food Pouch – Carrot, Sweet Potato, Corn, Pea & Chicken;
- Stage 3 (9+ months) Baby Food Pouch – Carrot, Chickpea, Pea, Beef & Tomato;
- Super Puffs – Apple with Spinach Cereal Snack;
- Super Puffs – Strawberry with Beet Cereal Snack;
- Super Puffs –Mango with Sweet Potato Cereal Snack;
- Super Puffs – Blueberry with Purple Sweet Potato Cereal Snack;
- Little Teethers – Apple with Leafy Greens Wafers;
- Little Teethers – Banana with Pumpkin Wafers;
- Little Teethers – Blueberry Wafers;
- Mighty 4 Blends – Mango & Pineapple, White Bean, Butternut Squash, Oats Tots Pouch;
- Mighty 4 Blends – Sweet Potato, Banana & Passion Fruit, Greek Yogurt, Oat Tots;
- Mighty 4 Blends – Strawberry Banana, Greek Yogurt, Kale, Oat & Amaranth Tots;
- Mighty 4 Blends; Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Tots;
- Mighty Veggie – Sweet Potato Apple Banana Carrot;
- Mighty Veggie – Zucchini, Apple, Watermelon & Barley;
- Mighty Veggie – Spinach, Grape, Apple & Amaranth;
- Mighty Veggie – Carrot, Pear, Pomegranate & Oats;

11

- Mighty Protein & Fiber – Mango, Banana, White Bean, Sunflower Seed;
- Mighty Protein & Fiber – Banana, White Bean, Strawberry & Chia;
- Mighty Protein & Fiber – Pear, White Bean, Blueberry Date & Chia;
- Mighty Snack Bars – Pumpkin;
- Mighty Snack Bars – Strawberry;
- Mighty Snack Bars – Blueberry;
- Might Morning – Banana Blueberry, Oat Quinoa;
- Mighty Morning Bar – Apple Cinnamon;
- Might Morning Bar – Blueberry Lemon;
- Mighty Nut Butter Bar – Almond Butter;
- Mighty Nut Butter Bar – Peanut Butter;
- Teensy Snacks – Peach;
- Teensy Snacks – Berry; and
- Jammy Sammy – Peanut Butter & Strawberry.

27.     Plum used words such as "organic", "stage", "mighty" "veggie," "protein" and "stage" as well as ages such as "4+", "6+", and "9+," to emphasize the foods' nutritious value and suitability for consumption by young children and infants.

28.     Plum Baby Foods packaging labels do not list, let alone warn, potential customers that the Plum Baby Food Products contain toxic heavy metals.

29.     As discussed below, *limited* independent testing by consumer groups revealed that several of the Plum Baby Foods contained unsafe levels of toxic heavy metals, and Plaintiffs believe that discovery will reveal that several more of the Plum Baby Foods, including those Plaintiffs purchased, contained unsafe levels of toxic heavy metals.

## III.   HEAVY METAL NEUROTOXINS & THEIR EFFECT ON CHILD DEVELOPMENT

30.     Baby food producers promote their product testing and safety procedures because parents and caretakers pay attention to what ingredients are in the baby food they purchase for their children. This is because adults do not want to expose their children to substances and/or chemicals that would either harm the child or inhibit the child's development.

31.     One example of harmful substances parents want to avoid exposing their children to are the heavy metals arsenic, lead, mercury, and cadmium. These heavy metals are a type of substance known as neurotoxins, or substances that "alter[] the structure or function of the nervous system."[16] Exposure to these neurotoxins have been shown to "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[17]

32.     Research continuously shows that exposure to food containing these heavy metals causes "troubling risks for babies, including cancer and lifelong

---

[16] *Neurotoxin*, https://www.britannica.com/science/neurotoxin (accessed February 24, 2021).

[17] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (accessed Feb. 22, 2021) (hereinafter "Healthy Babies Bright Futures Report"); Healthy Babies Bright Futures Report, at 13.

12

deficits in intelligence[.]"[18] Specifically, the heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[19] These developmental conditions can be caused by exposure to even trace amounts of these substances.[20]

33. For these reasons, organizations such as the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[21] Further, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[22]

---

18 Healthy Babies Bright Futures Report, at 1.

19 Healthy Babies Bright Futures Report, at 6.

20 Healthy Babies Bright Futures Report, at 1.

21 See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed Feb. 4, 2021).

22 Report, at 3.

13

### A.   Arsenic

34.    The heavy metal arsenic has been shown to cause "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[23] The effects of arsenic exposure are irreversible and in addition to the cognitive and neurological effects it has on child development, arsenic also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[24]

35.    Arsenic's harmful effects have caused both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") to set standards limiting the allowable amount of arsenic in products meant for human consumption. For example, the FDA has set a limit of 10 parts per billion ("PPB") for apple juice, and the EPA has set the same limit for drinking water. Additionally, the FDA has set a limit of 10 parts per billion for bottled water[25] and is considering

---

[23] Healthy Babies Bright Futures Report, at 13.

[24] Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013), https://pubmed.ncbi.nlm.nih.gov/23570911/).

[25] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods, FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (accessed Feb. 22, 2021).

14

limiting the action level for arsenic in rice cereals for infants to 100 ppb.[26] The FDA has taken action against companies whose products contain arsenic levels exceeding this limit.[27]

**B.   Lead**

36.   Exposure to the heavy metal lead has been shown to cause harm to children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[28] Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[29]

37.   For example, one study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[30]

26 FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf (accessed Feb. 22, 2021).

27 See, e.g. Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/news-events/press-announcements/federal-judge-enters-consent-decree-against-juice-processor-washington-state-juice-processor (accessed Feb. 24, 2021).

28 Report, at 11.

29 Healthy Babies Bright Futures Report, at 13.

30 Healthy Babies Bright Futures Report, at 13.

15

Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD).[31]

38.    The proven negative effects of lead exposure have caused several health organizations—including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports—to recommend that lead in baby foods not exceed 1 ppb[32] and "[t]he European Union has set the maximum lead level in infant formula to 20 ppb."[33]

### C.    Mercury

39.    The World Health Organization warns that mercury "may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes" and considered mercury "one of the top ten chemicals or groups of chemicals of major public health concern."[34]

---

[31] Report, at 12 (citing Gabriele Donzelli et al., *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019), http://www.mdpi.com/1660-4601/16/3/382/htm).

[32] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods, FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 22, 2021).

[33] *Id.*

[34] *Id.*

16

40. It has been recognized that "[y]oung and unborn children are at greatest risk from mercury exposure because their nervous systems are still developing"[35] and that exposure to even a small amount of the heavy metal mercury can cause "serious health problems, and is a threat to the development of the child [] early in life."[36] For example, exposure to even low doses of mercury "may delay a child's walking and talking, shorten attention span and cause learning disabilities."[37]

41. Exposure to mercury has also been linked to higher risk of lower IQ scores and intellectual disability in children[38] and mercury exposure at two and three

35 Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20de velopmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20 mercury%20may,with%20fertility%20and%20blood%20pressure (accessed Feb. 22, 2021).

36 *Mercury and health*, https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Exposure%20to%20mercury%20%20E2%80%93%20even%20small, %2C%20kidneys%2C%20skin%20and%20eyes (accessed Feb. 24, 2021).

37 Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health,* https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20de velopmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20 mercury%20may,with%20fertility%20and%20blood%20pressure\ (accessed Feb. 22, 2021).

38 Healthy Babies Bright Futures Report, at 14.

17

18

years of age has been positively associated with autistic behaviors among preschool-age children.[39]

42.     The EPA has set a maximum mercury level in drinking water to 2 ppb.[40]

**D.     Cadmium**

43.     The heavy metal cadmium is considered a neurotoxin. Eating food or drinking water with very high cadmium levels severely irritates the stomach, leading to vomiting and diarrhea, and sometimes death. Eating lower levels of cadmium over a long period can lead to kidney damage and can cause bones to become fragile and break easily. Exposure to cadmium in air has caused lung cancer, and perhaps prostate cancer, in workers. The US Department of Health and Human Services ("HHS") and the EPA, both consider cadmium and cadmium compounds human carcinogens (can cause cancer).[41]

44.     Children with higher cadmium levels are three times more likely to have learning disabilities and participate in special education, according to a new study led by Harvard University researchers.[42]

---

[39] Report, at 12-3.

[40] Report, at 32.

[41] NYS Dept. of Health, Cadmium in Children's Jewelry, https://www.health.ny.gov/environmental/chemicals/cadmium/cadmium_jewelry.htm#:~:text=Children%20can%20be%20exposed%20to,to%20cadmium%20in%20children's%20jewelry (accessed Feb. 22, 2021).

[42] Marla Cone, Is Cadmium as Dangerous for Children as Lead?, SCIENTIFIC

45.    The EPA has set a maximum cadmium level in drinking water to 5 ppb,

the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a

maximum cadmium level in drinking water to 3 ppb.[43]

## SUBSTANTIVE ALLEGATIONS

46.    On November 6, 2019, in response to reports alleging high levels of

toxic heavy metals in baby foods, the United States House of Representatives

Committee on Oversight and Reform Subcommittee on Economic and Consumer

Policy (the "Subcommittee") requested internal documents and test results from

several of the United States' largest producers of baby foods, including Defendants.

47.    On February 4, 2020, the Subcommittee published a report entitled

"Baby Foods Are Tainted With Dangerous Levels of Arsenic, Lead, Cadmium, and

Mercury" (the "Report") containing the results of the Subcommittee's investigation.

## I.    PLUM KNOWINGLY SOLD BABY FOODS WITH UNSAFE LEVELS OF TOXIC HEAVY METALS TO UNITED STATES CONSUMERS

48.    Independent testing has shown that Defendants' efforts (discussed

above) to hold Plum out as a brand that cared about societal values more than

corporate profits were deceptive and misleading. Multiple consumer advocacy

groups conducted testing of Defendants' baby foods and discovered that, despite

_____

AMERICAN (Feb. 10, 2012), https://www.scientificamerican.com/article/is-cadmium-as-dangerous-for-children-lead/ (accessed Feb. 22, 2021).

[43] Report, at 29.

20

Plum's representations that their foods were "organic," "natural" and appropriate for consumption by infants and young children of certain ages, its food in fact contained dangerous levels of toxic heavy metals.

49.     Consumer groups' testing concerned a limited number of Defendants' products, and even that limited testing found several types of baby foods sold by Defendants, including several types bought by Plaintiffs, that contained unsafe levels of toxic heavy metals (the "Contaminated Baby Foods"). Testing of Defendants' full product line will likely reveal additional examples of baby foods contaminated with toxic heavy metals. To date, the known list of Contaminated Baby Foods sold by Plum include:

- Stage 1 (4+ months) Baby Food Pouch – Peaches;
- Stage 1 (4+ months) Baby Food Pouch – Sweet Potato;
- Stage 1 (4+ months) Baby Food Pouch – Prunes;
- Stage 2 (6+ months) Baby Food Pouch – Apple, Raisin, & Quinoa Organic Baby Food;
- Stage 2 (6+ months) – Pumpkin, Banana, Papaya & Cardamom Baby Food;
- Little Teethers – Banana with Pumpkin Wafers; and
- Mighty Morning Bar – Blueberry Lemon.

50.     The consumer groups' findings caused the House Subcommittee to investigate the levels of toxic heavy metals in baby foods generally. The House Subcommittee requested that Defendants, along with six additional baby food producers, produce internal documents and testing results as part of their investigation, but Defendants "refused to cooperate with the Subcommittee's

investigation."[44] Rather than produce the requested information, Defendants produced a spreadsheet which listed products that Defendants claimed met Defendants' own testing criteria for each heavy metal.[45] Defendants did not, however, articulate what "meets criteria" meant nor what Defendants' own criteria was. This caused the House Committee to express concern regarding "what [Defendants'] other thresholds actually are, and whether they exist."[46]

51.      The Report emphasized the results of consumer group testing that found that Plum knowingly sold baby foods to United States consumers that contained high levels of the toxic heavy metals arsenic, lead, mercury, and cadmium.[47] By knowingly selling baby foods with unsafe amounts of these toxic heavy metals to United States consumers, Plum knowingly exposed millions of children to substances proven to cause permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.[48]

52.      The Report also found that Plum only tested individual ingredients, and not its final product(s). According to the Subcommittee, this policy "recklessly

---

44 Report, at 5.

45 Campbell's, *Product Heavy Metal Test Results* (Dec. 11, 2019), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf.

46 Report, at 45.

47 Report, at 5.

48 Report, at 2.

21

endangers babies and children and prevents [Plum] from ever knowing the full extent of the danger presented by [Plum's] products."[49]

53. The Report made the following additional specific findings as to Defendants:

- "Campbell refused to produce its testing standards and specific testing results to the [House] Subcommittee";[50]
- "Campbell has hidden its policies and the actual level of toxic heavy metals in its products";[51]
- Campbell "refused to cooperate with the [House] Subcommittee's investigation";[52] and
- "The [House] Subcommittee is greatly concerned that [Campbell's] lack of cooperation might obscure the presence of even higher levels of toxic heavy metals in their baby food products, compared to their competitors' products."[53]

54. In response to the Report, Defendants made the following statement to the publication *Food Navigator*: "Campbell has conducted testing on every Plum

---

[49] Report, at 56-7.

[50] Report, at 44;

[51] *Id.*

[52] Report, at 2.

[53] Report, at 5.

22

23

Organics products on the market to ensure none exceed acceptable levels of arsenic, lead, cadmium, or mercury."[54] Notably, this response provided no guidance as to what Campbell believes are "acceptable levels"[55] of toxic heavy metals in their Plum Baby Foods.

## II.  DEFENDANTS FALSELY, MISLEADINGLY, AND/OR DECEPTIVELY CLAIMED ITS FOOD WAS FIT FOR CHILD CONSUMPTION

55. Baby food manufacturers hold a special position of public trust. Consumers believe that they would not sell unsafe products. Consumers also believe that the federal government would not knowingly permit the sale of unsafe baby food. Defendants took advantage of their position.

56. Defendants advertised their products as safe, healthy, nutritious, natural, organic, and safe for consumption. By doing so, Defendants had a duty to ensure that its statements regarding its products were true and not false, misleading, or deceptive, yet continued to make false, misleading, and deceptive statements regarding the safety of its baby foods despite knowledge that its baby foods contained unsafe levels of heavy metals.

---

54 Elaine Watson, *Baby food brands defend protocols as congressional report alleges 'highly dangerous' levels of heavy metals in infant foods; expects lawsuits, says attorney*, FOOD NAVIGATOR-USA (Feb. 5, 2021), https://www.foodnavigator-usa.com/Article/2021/02/05/Baby-food-brands-defend-protocols-as-congressional-report-alleges-highly-dangerous-levels-of-heavy-metals (accessed Mar. 4, 2021).

55 *Id.*

57.     Defendants violated this duty by marketing and advertising their baby foods through statements regarding the safety of their baby foods despite knowing that their baby foods contained dangerous levels of heavy metals.

58.     As a result of Defendants' false, misleading, and deceptive statements, Plaintiffs and members of the Class and Subclasses bought Plum Baby Foods they would not have otherwise bought, and paid more for Plum Baby Foods than they would have paid had it been fully disclosed that Plum Baby Foods contained dangerous levels of heavy metals.

## III.   DEFENDANTS FAILED TO WARN UNITED STATES CONSUMERS THAT THEIR BABY FOODS CONTAINED DANGEROUS LEVELS OF HEAVY METALS

59.     Plum knew or should have been aware that a consumer would be feeding its products to children, often making its products the primary source of food for a child. This leads to repeated exposure of the heavy metals to the child.

60.     Plum thus wrongfully and misleadingly advertised and sold the Plum Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury, and/or disease can occur. Plum intentionally omitted these facts from its marketing, advertising and labeling in order to induce and mislead reasonable consumers into purchasing Plum Baby Foods.

25

## IV.   PLAINTIFF EMILY BACCARI

61.   Plaintiff Baccari is a resident of Massachusetts.

62.   Plaintiff Baccari has purchased several types of the Plum Baby Foods which, according to the Report, were tainted with unsafe levels of heavy metals during the Class Period. Plaintiff Baccari made these purchase at Target in Wareham, Massachusetts, Shaw's in Wareham, Massachusetts and Medway Wareham, Massachusetts, as well as online through Amazon.com.

63.   Plaintiff Baccari would not have made these purchases or would not have paid as much for these products had he known that the Plum Baby Foods contained dangerous levels of heavy metal toxins.

## V.   PLAINTIFF JILLIAN GEFFKEN

64.   Plaintiff Geffken is a resident of North Carolina.

65.   Plaintiff Geffken has purchased several types of the Plum Baby Foods which, according to the Report, were tainted with unsafe levels of heavy metals during the Class Period. Plaintiff Geffken made these purchases in the Food Lion of Carolina Shores, North Carolina and the Walmart of North Myrtle, North Carolina.

66.   Plaintiff Geffken would not have made these purchases or would not have paid as much for these products had he known that the Plum Baby Foods contained dangerous levels of heavy metal toxins.

## VI.   PLAINTIFF HEATHER HYDEN

67.   Plaintiff Hyden is a resident of Texas.

68.   Plaintiff Hyden purchased several types of Plum Baby Foods from September 2020 through the present. Plaintiff Hyden made these purchases at the Walmart store in Marble Falls, Texas, and the H-E-B in Burnet, Texas.

69.   Plaintiff Hyden would not have made these purchases or would not have paid as much for these products had he known that the Plum Baby Foods contained dangerous levels of heavy metal toxins.

## VII.   PLAINTIFF MERCEDES JONES

70.   Plaintiff Jones is a resident of Ohio.

71.   Plaintiff Jones purchased several types of Plum Baby Foods from 2020 through present. Plaintiff Jones made these purchase at the Walmart store in East Liverpool, Ohio.

72.   Plaintiff Jones would not have made these purchases or would not have paid as much for these products had he known that the Plum Baby Foods contained dangerous levels of heavy metal toxins.

## TOLLING AND ESTOPPEL

## I.   DISCOVERY RULE TOLLING

73.   Plaintiffs and the Classes and Subclasses had no way of knowing about Defendants' conduct with respect to the presence of toxic heavy metals.

26

74.    Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable diligence, could have discovered the conduct alleged herein. Further, Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Plum was engaged in the conduct alleged herein.

75.    For these reasons all applicable statutes of limitation have been tolled by discovery rule with respect to claims asserted by Plaintiffs, the Classes, and the Subclasses.

## II.    FRAUDULENT CONCEALMENT TOLLING

76.    By failing to provide notice of the presence of toxic heavy metals in Plum Baby Foods, Defendants concealed their conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

77.    Upon information and belief, Defendants intended their acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses. Plaintiffs and the members of the Classes and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

27

## CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

79.     Plaintiffs seek class certification on behalf of a class defined as follows:

**NATIONWIDE CLASS:** all persons in the United States who, from the beginning of any applicable limitations period through the present, purchased the Plum Baby Foods for household or business use, and not for resale (the "Class").

80.     Plaintiff Baccari seeks certification on behalf of a Massachusetts Subclass:

**THE MASSACHUSETTS SUBCLASS:** all persons who are or were citizens of the Commonwealth of Massachusetts who, from the beginning of any applicable limitations period through the present, purchased the Plum Baby Foods for household or business use, and not for resale (the "Massachusetts Subclass").

81.     Plaintiff Geffken seeks certification on behalf of a North Carolina Subclass:

**THE NORTH CAROLINA SUBCLASS:** all persons who are or were citizens of the State of North Carolina who, from the beginning of any applicable limitations period through the present, purchased the Plum Baby Foods for household or business use, and not for resale (the "North Carolina Subclass").

82.     Plaintiff Jones seeks certification on behalf of an Ohio Subclass:

**THE OHIO SUBCLASS:** all persons who are or were citizens of the State of Ohio who, from the beginning of any applicable limitations period through the present, purchased the Plum Baby Foods for household or business use, and not for resale (the "Ohio Subclass").

83.     Plaintiff Hyden seeks certification on behalf of a Texas Subclass:

**THE TEXAS SUBCLASS**: all persons who are or were citizens of the State of Texas who, from the beginning of any applicable limitations period through the present, purchased the Plum Baby Foods for household or business use, and not for resale (the "Texas Subclass").

84.     Plaintiffs reserve the right to modify or refine the definitions of the Class or Subclasses based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

85.     Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendants; current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

86.     **Ascertainability.** The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria to allow class members to determine if they are part of a Class or Subclass. Further, the Classes and Subclasses can be readily identified through records maintained by Defendants.

29

87.     **Numerosity (Rule 23(a)(1)).** The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased the Plum Baby Foods.

88.     **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendants owed a duty of care to Plaintiffs and the Classes;

- whether Defendants knew or should have known that the Plum Baby Foods contained, or may contain, heavy metals;

- whether Defendants wrongfully represented and continues to represent that the Plum Baby Foods are natural and safe for human infant consumption;

- whether Defendants wrongfully represented and continues to represent that the Plum Baby Foods are healthy, superior quality, nutritious and safe for consumption;

- whether Defendants wrongfully represented and continues to represent that the Plum Baby Foods are natural;

- whether Defendants wrongfully represented and continues to represent that the Plum Baby Foods appropriate for consumption by various "Stage[s]," of babies;

- whether Defendants wrongfully represented and continues to represent that the manufacturing of the Plum Baby Foods is

subjected to rigorous standards, including testing for heavy metals;

- Whether Defendants wrongfully failed to disclose that the Plum Baby Foods contained, or may contain, heavy metals;

- Whether Defendants' representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

- Whether those representations are likely to deceive a reasonable consumer;

- Whether a reasonable consumer would consider the presence, or risk of, heavy metals as a material fact in purchasing baby food;

- Whether Defendants had knowledge that those representations were false, deceptive, and misleading;

- Whether Defendants continue to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

- Whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, and lead is material to a reasonable consumer;

- Whether Defendants' representations and descriptions on the labeling of the Plum Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

- Whether Defendants violated the laws of the Commonwealth of Massachusetts;

- Whether Defendants violated the laws of the State of North Carolina;

- Whether Defendants violated the laws of the State of Ohio;

31

32

- whether Defendants violated the laws of the State of Texas;

- whether Defendants breached its express warranties;

- whether Defendants breached its implied warranties;

- whether Defendants engaged in unfair trade practices;

- whether Defendants engaged in false advertising;

- whether Defendants' conduct was negligent per se;

- whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

- whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

89.   **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and Subclasses (as applicable) suffered injuries as a result of Defendants' wrongful conduct that is uniform across the Class and Subclasses.

90.   **Adequacy (Rule 23(a)(4)).** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and

their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

91.     **Substantial Benefits.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

92.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any

33

questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

93.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole.

94.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## BREACH OF EXPRESS WARRANTY

**(Brought on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

95.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

96.     Defendants marketed and sold the Plum Baby Foods into the stream of commerce with the intent that the Plum Baby Foods would be purchased by Plaintiffs and the Class.

34

35

97.     Defendants expressly warranted, advertised, and represented to Plaintiffs and the Class that its Plum Baby Foods were and are safe, healthy, and appropriate for infant and child consumption.

98.     Defendants made these express warranties regarding the Plum Baby Foods' quality, ingredients, and fitness for consumption in writing through their websites, advertisements, and marketing materials and on the Plum Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Plum Baby Foods.

99.     Defendants' advertisements, warranties, and representations were made in connection with the sale of the Plum Baby Foods to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendants' advertisements, warranties, and representations regarding the Plum Baby Foods in deciding whether to purchase Defendants' products.

100.    Defendants' Plum Baby Foods do not conform to Defendants' advertisements, warranties and representations in that they are not safe, healthy, and appropriate for infant and child consumption; and contain, or may contain, levels of various heavy metals.

101.    Defendants therefore breach the express warranties by placing Plum Baby Food into the stream of commerce and selling them to consumers, when they

36

have dangerous and/or toxic levels of heavy metals, and can cause toxicity and adverse health implication, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendants. These high levels of heavy metals substantially impair the use, value, safety of Plum Baby Foods.

102. Defendants were at all times aware, or should have been aware, of the toxic or dangerous levels of heavy metals in Plum Baby Foods. Defendants were on notice of these concerns with their products, but nowhere on the package labeling or on Defendants' website or other marketing materials did Defendants warn Plaintiffs and members of the Class and Subclasses that they were at risk of feeding their children food and/or beverages with toxic or dangerous levels of heavy metals.

103. Instead, Defendants concealed the high levels of heavy metals contained in the Plum Baby Foods and deceptively represented that these products were safe, healthy, and appropriate for infant or child consumption. Defendants thus utterly failed to ensure that the material representations it was making to consumers were true.

104. The toxic and/or dangerous levels of heavy metals at issue in the Plum Baby Foods existed when they left Defendants' possession or control and were sold to Plaintiffs and members of the putative classes. The levels of heavy metals

contained in the Plum Baby Foods were undiscoverable by Plaintiffs and members of the putative classes at the time of purchase of the Plum Baby Foods.

105.  As manufacturers, marketers, advertisers, distributors and sellers of the Plum Baby Foods, Defendants had exclusive knowledge and notice of the fact that the Plum Baby Foods did not conform to the affirmations of fact and promises.

106.  In addition, or in the alternative, to the formation of an express contract, Defendants made each of the above-described representations to induce Plaintiffs and members of the Class and Subclasses to rely on such representations.

107.  Defendants' affirmations of fact and promises were material, and Plaintiffs and members of the putative classes reasonably relied upon such representations in purchasing the Plum Baby Foods.

108.  All conditions precedent to Defendants' liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or Subclasses.

109.  Affording Defendants an opportunity to cure their breaches of written warranties would be unnecessary and futile here. Defendants were placed on reasonable notice of the levels of heavy metals in the Plum Baby Foods and breach of the warranties based their scientific research and expertise in the food production industry. Defendants have had ample opportunity to cure the high level of heavy metal in their Plum Baby Foods to make them safe and healthy for consumption by

37

38

Plaintiffs and members of the putative classes and their children, but have failed to do so.

110.   Defendants have also had notice of their breach as set forth herein by virtue of the publication of the Report the prior 2019 report issued by Healthy Baby Bright Future.

111.   As a direct and proximate result of Defendants' breaches of express warranty, Plaintiffs and members of the putative classes have been damaged because they did not receive the products as specifically warranted by Defendants. Plaintiffs and members of the putative classes did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of the Plum Baby Foods.

112.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Brought on behalf of the Nationwide Class or, alternatively, the State

### Subclasses)

113.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

114.   Defendants are merchants engaging in the sale of goods to Plaintiffs and the Class.

115.   There was a sale of goods from Defendants to Plaintiffs and the Class.

116.   At all times mentioned herein, Defendants manufactured or supplied Plum Baby Foods, and prior to the time the Plum Baby Foods were purchased by Plaintiffs and the Class, Defendants impliedly warranted to them that the Plum Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Plum Baby Foods' containers and labels, including that the food was natural and safe and appropriate for human infant consumption. Plaintiffs and the Class relied on Defendants' promises and affirmations of fact when they purchased the Plum Baby Foods.

117.   Contrary to these representations and warranties, the Plum Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to

39

Defendants' affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

118.   Defendants breached its implied warranties by selling Plum Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

119.   Defendants were on notice of this breach, as it was aware of the heavy metals included, or at risk, in the Plum Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendants' baby food products as unhealthy and contaminated.

120.   Privity exists because Defendants impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Plum Baby Foods were natural, and suitable for consumption by babies, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

121.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Plum Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals and/or unnatural or other ingredients.

41

122. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their implied warranties and resulting breach.

## THIRD CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION

**(Brought on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

123. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

124. Defendants falsely represented to Plaintiffs and the Class that the Plum Baby Foods are natural, "organic" and safe for consumption by infants and young children.

125. Defendants intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase Plum Baby Foods.

126. Defendants knew that their representations about Plum Baby Foods were false in that Plum Baby Foods contained, or were at risk of containing, levels of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendants allowed its

packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

127.  Plaintiffs and the Class did in fact rely on these misrepresentations and purchased Plum Baby Foods to their detriment. Given the deceptive manner in which Defendants advertised, represented, and otherwise promoted Plum Baby Foods, Plaintiffs' and the Class's reliance on Defendants' misrepresentations was justifiable.

128.  As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Plum Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

129.  Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION

**(Brought on behalf of Nationwide Class or, alternatively, the State Subclasses)**

130.  Plaintiffs incorporate the foregoing allegations as if fully set forth

42

43

herein.

131.   Defendants concealed from and failed to disclose to Plaintiffs and the Class that Plum Baby Foods contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

132.   Defendants were under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Plum Baby Foods because: (1) Defendants were in a superior position to know the true state of facts about its products; (2) Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of Plum Baby Foods for consumption by babies; and (3) Defendants knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that Plum Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Plum Baby Foods.

133.   The facts concealed or not disclosed by Defendants to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase Plum Baby Foods.

134.   Plaintiffs and the Class justifiably relied on the Defendants' omissions to their detriment. The detriment is evident from the true quality, characteristics, and

ingredients of Plum Baby Foods, which is inferior when compared to how Plum Baby Foods are advertised and represented by Defendant.

135.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Plum Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

136.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

**(Brought on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

137.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

138.   Defendants had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of Plum Baby Foods.

44

45

139.   Defendants breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendants and by failing to promptly remove Plum Baby Foods from the marketplace or to take other appropriate remedial action.

140.   Defendants knew or should have known that the ingredients, qualities, and characteristics of the Plum Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Defendant. Specifically, Defendants knew or should have known that: (1) the Plum Baby Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (3) the Plum Baby Foods were adulterated, or at risk of being adulterated, by heavy metals; and (4) the Plum Baby Foods were otherwise not as warranted and represented by Defendants.

141.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Plum Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals and/or

unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

142. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT

**(Brought on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

143. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

144. Substantial benefits have been conferred on Defendants by Plaintiffs and the Class through the purchase of Plum Baby Foods. Defendants knowingly and willingly accepted and enjoyed these benefits.

145. Defendants either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Plum Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

46

146. Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiffs and the Class.

147. Plaintiffs and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

148. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## SEVENTH CLAIM FOR RELIEF

## MASSACHUSETTES CONSUMER PROTECTION ACT

## Mass. Gen. Laws Ann. ch. 93, § 1 (West)

**(Brought on Behalf of Plaintiff Baccari and the Massachusetts Subclass)**

149. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

150. Plaintiff Baccari intends to assert and prosecute claims under the under the Massachusetts Consumer Protection Law, M.G.L.A. ch. 93A § 1 *et seq.* ("MCPL") against Defendants. Upon information and belief, Defendants do not maintain a place of business in Massachusetts, nor do Defendants maintain property or assets in Massachusetts. Plaintiff Baccari is thus is not required to provide

47

Defendants with pre-suit written demand for relief pursuant to M.G.L.A. § 93A §

9(3). Notwithstanding, to the extent that such statutory notice is deemed required by

the Court, Plaintiff Baccari has provided notice in accordance with M.G.L. ch 93A

§ 9(3) to Defendant Campbell's. This Count provides notice that this Complaint shall

be amended accordingly to demand all appropriate relief, subject to any response by

Defendants.

151.    Defendants are "person[s]" as defined by M.G.L.A. 93A § 1(a)

152.    Plaintiff Baccari is an actual or potential consumer of Plum Baby

Foods.

153.    Defendants engaged in deceptive or unfair acts or practices

in the in the conduct of any trade or commerce, in violation of M.G.L.A. 93A § 2(a),

including but not limited to the following:

(a)    Knowingly or recklessly made a false representation as to the

characteristics and use of Plum Baby Foods, in violation of 93A

§ 2(a);

(b)    Represented that Plum Baby Foods are healthy, natural, and safe

for consumption, in violation of 93A § 2(a);

(c)    Advertised Plum Baby Foods with an intent not to sell it as

advertised, in violation of 93A § 2(a); and

48

49

(d)     Failed to disclose the material information that Plum Baby Foods contained unsafe levels of toxic heavy metals, in violation of 93A § 2(a).

154.    As detailed, *infra*, Defendants' deceptive trade practices significantly impacted the public, because there are millions of consumers of Plum Baby Foods, including Plaintiff Baccari, and Massachusetts Subclass Members.

155.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Plum Baby Foods without being aware that Plum Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiffs and members of the Class suffered damages by purchasing Plum Baby Foods because they would not have purchased Plum Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

156.    Defendants' deceptive trade practices caused injury in fact and actual damages Plaintiff Baccari and Massachusetts Subclass Members in the form of the loss or diminishment of value of Plum Baby Foods Plaintiff Baccari and Massachusetts Subclass Members purchased, which allowed Defendants to profit at the expense of Plaintiff Baccari and Massachusetts Subclass Members. The injuries of Plaintiff Baccari and Massachusetts Subclass Members were to legally protected

50

interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

157.   Plaintiff Baccari and Massachusetts Class Members seek relief under 93A § 9 including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

## EIGHTH CLAIM FOR RELIEF

## NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

## N.C.G.S. §§ 75-1.1, *et seq.*

**(Brought on Behalf of Plaintiff Geffken on Behalf of the North Carolina Subclass)**

158.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

159.   Plaintiff Geffken and North Carolina Subclass Members are residents of the State of North Carolina.

160.   Defendants engaged in "commerce" within North Carolina as defined by N.C.G.S. § 75-1.1(b) when they sold Plum Baby Foods to individuals such as Plaintiff Geffken and North Carolina Subclass Members.

161.   The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C.G.S. § 75-1.1(a) states that "[u]nfair methods of competition

51

in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

162.   For the reasons discussed herein, Defendants violated and continue to violate the NCUDTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by N.C.G.S. § 75-1.1 *et seq.* Defendants' acts and practices, including their material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

163.   Defendants repeatedly advertised, both on the labels for Plum Baby Foods Products, on their websites, and through a national advertising campaigns, amongst other items, that Plum Baby Foods were and are safe and healthy for infant and child consumption. Defendants failed to disclose the material information that Plum Baby Foods contained unsafe levels of toxic heavy metals.

164.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Plum Baby Foods without being aware that Plum Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff Jones and Ohio Subclass Members suffered damages by purchasing Plum Baby Foods because they would not have purchased Plum Baby

Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

165. Defendants' deceptive trade practices caused injury in fact and actual damages Plaintiff Geffken and North Carolina Subclass Members in the form of the loss or diminishment of value of Plum Baby Foods Plaintiff Geffken and North Carolina Subclass Members purchased, which allowed Defendants to profit at the expense of Plaintiff Geffken and North Carolina Subclass Members. The injuries Plaintiff Geffken and North Carolina Subclass Members were to legally protected interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

166. Plaintiff Geffken and North Carolina Subclass Members seek relief for the injuries they have suffered as a result of Defendants' unfair and deceptive acts and practices, as provided by N.C.G.S. § 75 *et seq.* and applicable law.

## NINTH CLAIM FOR RELIEF

## OHIO CONSUMER SALES PRACTICES ACT

### Ohio Rev. Code Ann. §§ 1345.01 *et seq.*

### (Brought on Behalf of Plaintiff Jones on Behalf of the Ohio Subclass)

167. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

52

168.    Plaintiff Jones and Ohio Subclass Members are residents of the State of Ohio.

169.    Plaintiff Jones and Ohio Subclass Members are "consumers" within the meaning of Ohio Rev. Code Ann. § 1345.01(D) that engaged in "consumer transactions" as defined by Ohio Rev. Code Ann. § 1345.01(A) with Defendants when they purchased Plum Baby Foods.

170.    At all times mentioned herein, Defendants were "supplier[s]" as defined by Ohio Rev. Code Ann. § 1345.01(C), in that they were "seller[s]" that were "engaged in the business of effecting or soliciting consumer transactions" in Ohio.

171.    The Ohio Consumer Sales Practices Act ("OSCPA"), Ohio Rev. Code Ann. §§ 1345.02, provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction" and that "[s]uch an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

172.    For the reasons discussed herein, Defendants violated and continue to violate the OSCPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Ohio Rev. Code Ann. § 1345.02 et seq. Defendants' acts and practices, including their material omissions, described herein,

53

54

were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

173. Defendants repeatedly advertised, both on the labels for Plum Baby Foods Products, on their websites, and through a national advertising campaigns, amongst other items, that Plum Baby Foods were and are safe and healthy for infant and child consumption. Defendants failed to disclose the material information that Plum Baby Foods contained unsafe levels of toxic heavy metals.

174. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Plum Baby Foods without being aware that Plum Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff Jones and Ohio Subclass Members suffered damages by purchasing Plum Baby Foods because they would not have purchased Plum Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

175. Defendants' deceptive trade practices caused injury in fact and actual damages Plaintiff Jones and Ohio Subclass Members in the form of the loss or diminishment of value of Plum Baby Foods Plaintiff Jones and Ohio Subclass Members purchased, which allowed Defendants to profit at the expense of Plaintiff Members. The injuries Plaintiff Jones and Ohio Subclass Members. The injuries Plaintiff Jones and Ohio Subclass

Members were to legally protected interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

176.   Plaintiff Jones and Ohio Subclass Members seek relief for the injuries they have suffered as a result of Defendants' unfair and deceptive acts and practices, as provided by Ohio Rev. Code Ann § 1345.09 and applicable law.

## TENTH CLAIM FOR RELIEF

## TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT

**Tex. Bus. & Com. Code §§ 17.41 *et seq.***

**(Brought on Behalf of Plaintiff Hyden on Behalf of the Texas Subclass)**

177.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

178.   Plaintiffs, the Class, and Subclasses intend to assert a claim under the Texas Deceptive Trade Practices Act ("TDTPA") against Defendant. Plaintiffs intend to provide Defendants written notice of the specific complaint and damages to Defendants in accordance with Tex. Bus. & Com. Code § 17.505. Subject to the response, if any, by Defendants within 60 days of the notice, Plaintiffs, on behalf of themselves and the Classes, shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under the TDTPA.

55

56

179.   Plaintiff Hyden and Texas Subclass Members are residents of the State of Texas.

180.   At all material times herein, Defendants engaged in "trade" or "commerce" in as defined by the Texas Deceptive Trade Practices and Consumer Protection Act ("TDTPA").

181.   The Texas Deceptive Trade Practices and Consumer Protection Act, ("TDTPA"), Tex. Bus. & Com. Code § 17.46, makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

182.   For the reasons discussed herein, Defendants violated and continues to violate the TDTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by TDTPA §§ 17.41 et seq. Defendants' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

183.   Defendants repeatedly advertised, both on the labels for Plum Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Plum Baby Foods were and are safe and healthy for infant and child consumption. Defendants failed to disclose the material information that Plum Baby Foods contained unsafe levels of toxic heavy metals.

57

184.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Plum Baby Foods without being aware that Plum Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff Hyden and Texas Subclass Members suffered damages by purchasing Plum Baby Foods because they would not have purchased Plum Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

185.   Defendants' deceptive trade practices caused injury in fact and actual damages Plaintiff Hyden and Texas Subclass Members in the form of the loss or diminishment of value of Plum Baby Foods Plaintiff Hyden and Texas Subclass Members purchased, which allowed Defendants to profit at the expense of Plaintiff Hyden and Texas Subclass Members. The injuries to Plaintiff Hyden and Texas Subclass Members were to legally protected interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

186.   Plaintiff Hyden and Texas Subclass Members seek relief for the injuries they have suffered as a result of Defendants' unfair and deceptive acts and practices, as provided by TDTPA and applicable law.

58

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment against the Defendants as to each and every count, including:

A.      An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class and Subclasses, and requiring Defendants to bear the costs of class notice;

B.      An order enjoining Defendants from selling the Plum Baby Foods until the levels of heavy metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.      An order enjoining Defendants from selling the Plum Baby Foods in any manner suggesting or implying that they are healthy, natural, and safe for consumption;

D.      An order requiring Defendants to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order requiring Defendants to engage in testing of its finished products to measure the levels of heavy metals; and

F.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining

59

Defendants from continuing the unlawful practices alleged herein, and injunctive

relief to remedy Defendants' past conduct.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated: March 10, 2021                    Respectfully submitted,

**FARUQI & FARUQI, LLP**

/s/ Innessa M. Huot
Innessa M. Huot (#03997201I)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
ihuot@faruqilaw.com

Steven L. Bloch
Ian W. Sloss
Zachary Rynar
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

*Attorneys for Plaintiffs*