**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTDISTRICT LITIGATION**

| |
|---|
| In re: BABY FOOD MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION |

MDL No. 2997

## <u>NOTICE OF RELATED ACTION</u>

PLEASE TAKE NOTICE that a new case was filed that Plaintiff, Amy Westin, contends

relates to actions that are currently pending in MDL No. 2997 subject to the pending Motion for

Transfer of Actions pending in the above-captioned matter. The case is Amy Westin v. Nurture,

Inc. d/b/a Happy Family Brands, Case No. 1:21-cv-2101. A schedule of actions listing this new

case is attached as Exhibit A, as well as a copy of the current docket (Exhibit B) and complaint

(Exhibit C).

Dated: March 24, 2021

Respectfully submitted,

*Melissa R. Emert*

Melissa R. Emert, Esq.
**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977
Phone No. (845) 356-2570
Facsimile No. (845) 356-4335
Email: memert@kgglaw.com

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re: Baby Food Marketing, Sales Practices and Products Liability Litigation

MDL No. 2997

CERTIFICATE OF SERVICE

In compliance with Rule 4.l(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that copies of **the Notice of Related Action, Schedule of Actions, and Docket and Complaint in** *Amy Westin v. Nurture, Inc.,* **Southern District of New York, Case No. 1:21-cv-2101** was served by ECF and Electronic Mail on March 24, 2021 to the following:

Clerk of the Panel
US Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE, Room G-255, N.
LobbyWashington, DC 20544-0005

Clerk of the Court
Southern District of New York
United District Court
500 Quarropas Street
White Plains, New York 10601

Angela Agrusa, Esq.
2000 Avenues of the Stars
400 North Tower
Los Angeles, CA 90067
Phone No: (310) 595-3000

***Counsel for Defendant Nurture, Inc. d/b/a
Happy Baby Brands***

1

Dated: March 24, 2021

Respectfully Submitted,

Gary S. Graifman, Esq.
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Phone No. (845) 356-2570
Facsimile No. (845) 356-4335
Email:ggraifman@kgglaw.com

2

# Exhibit A

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

MDL No. 2997 - In re: Baby Food Marketing, Sales Practices and Products Liability
Litigation

### SCHEDULE OF ACTIONS (RELATED CASE)

| Case Caption | ; court | Civil Action No. | Judge | JPML Dkt. # (Docket & Complaint) |
|---|---|---|---|---|
| **Plaintiff:** Amy Westin, individually, and on behalf of all others similarly situated **Defendants:** NURTURE, INC., d/b/a Happy Family Brands | Southern : District 'New l York | 1:21-cv-2101 | Hon. Judge Vernon S. Broderick | *Filed Concurrently herewith* |

# Exhibit B

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:21-cv-02101-VSB

Westin v. Nurture, Inc.                          Date Filed: 03/10/2021
Assigned to: Judge Vernon S. Broderick          Jury Demand: Plaintiff
Cause: 28:1332 Diversity Action                 Nature of Suit: 190 Contract: Other
                                                Jurisdiction: Diversity

**Plaintiff**

**Amy Westin**                    represented by   **Melissa R. Emert**
*individually and on behalf of all others*        Kantrowitz, Goldhamer & Graifman, P.C.
*similarly situated*                              NY
                                                  747 Chestnut Ridge Road
                                                  Suite 200
                                                  Chestnut Ridge, NY 10977
                                                  845-356-2570
                                                  Email: memert@kgglaw.com
                                                  *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Nurture, Inc.**
*doing business as*
Happy Family Brands

| Date Filed | # | Docket Text |
|---|---|---|
| 03/10/2021 | 1 | COMPLAINT against Nurture, Inc.. (Filing Fee $ 402.00, Receipt Number ANYSDC-24233774)Document filed by Amy Westin..(Emert, Melissa) (Entered: 03/10/2021) |
| 03/10/2021 | 2 | REQUEST FOR ISSUANCE OF SUMMONS as to Nurture, Inc., re: 1 Complaint. Document filed by Amy Westin..(Emert, Melissa) (Entered: 03/10/2021) |
| 03/10/2021 | 3 | CIVIL COVER SHEET filed..(Emert, Melissa) (Entered: 03/10/2021) |
| 03/11/2021 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Melissa R. Emert. The party information for the following party/parties has been modified: Amy Westin; Nurture, Inc.. The information for the party/parties has been modified for the following reason/reasons: party text was omitted. (dnh)** (Entered: 03/11/2021) |
| 03/11/2021 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Vernon S. Broderick. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(dnh) (Entered: 03/11/2021) |

| 03/11/2021 | | Magistrate Judge Kevin Nathaniel Fox is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (dnh) (Entered: 03/11/2021) |
| --- | --- | --- |
| 03/11/2021 | | Case Designated ECF. (dnh) (Entered: 03/11/2021) |
| 03/11/2021 | 4 | ELECTRONIC SUMMONS ISSUED as to Nurture, Inc...(dnh) (Entered: 03/11/2021) |

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 03/24/2021 10:39:57 | | |
| **PACER Login:** | GSgraifman1853 | **Client Code:** | Baby food |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-02101-VSB |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

AMY WESTIN,
*individually and on behalf of all others*
*similarly situated,*

                       Plaintiff,

    v.

NURTURE, INC.,
*d/b/a Happy Family Brands,*

                  Defendant.

CASE NO.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Amy Westin ("Plaintiff"), on behalf of herself and all others similarly situated, by

her undersigned attorneys, against Defendant Nurture, Inc. (hereafter "Nurture" or "Defendant"),

alleges the following based upon personal knowledge as to herself and her own action, and, as to

all other matters, alleges, upon information and belief and investigation of their counsel, as

follows:

### INTRODUCTION

1.     This is a consumer class action brought individually by Plaintiff and on behalf of

all persons in the below-defined proposed Nationwide Class and California Subclass (collectively,

the "Class"), all of whom purchased one or more of certain baby foods manufactured by Nurture.[1]

---

[1] The products at issue are all baby and toddler foods/snacks sold by Defendant that all state prominently
that the Products are produced by a team of "real [parents or moms], pediatricians & nutritionists **on a
mission to bring health and happiness to our little ones and the planet**," and further that the **"[the
Nurture] team creates nutritious meals and snacks**      **"** Products with these representations include
but are not limited to: HappyBaby Organic Greek Yogis Blueberry and Purple Carrot, HappyBaby Organic
Superfood Puffs Kale & Spinach, HappyBaby Organic Superfood Puffs Strawberry & Beet, HappyBaby
Organic Superfood Puffs Apple & Broccoli, HappyBaby Organic Superfood Puffs Banana & Pumpkin, and
HappyBaby Organic Superfood Puffs Sweet Potato & Carrot, HappyBaby Organic Rice Cakes Apple,

2.      Nurture manufactures, markets, advertises, labels, distributes, and sells baby food products under Happy Family Brands throughout the United States, including in this District.

3.      Nurture states "Happy Family products are created in collaboration by our research and development (R&D) team, and with partners like registered dietitians, nutritionists, lactation consultants, and medical professionals."[2]

4.      Nurture further states "[b]ecause we're parents too, we live the reality and understand the needs of today's families. We are also driven by the long-term health and safety of children."[3]

5.      Nurture touts on its website its commitment to exceeding USDA organic standards, stating "[w]hat your little one eats in the first few years of life is crucial – it's important their diet provides the nutrients and vitamins needed for proper development."[4]

6.      Nurture, however, in no way lists heavy metals as an ingredient on the Products' labels nor does it warn of the potential presence of heavy metals in its Products.

7.      Unbeknown to Plaintiff and members of the Class, and contrary to the representations on the Products label, the Products contain heavy metals in high concentrations, including inorganic arsenic, cadmium, mercury, and lead, which, if disclosed to Plaintiff and members of the Class prior to purchase, would have caused Plaintiff and members of the Class not to purchase or consume the Products.

8.      As a result, the Products' labeling is deceptive and misleading.

---

HappyBaby Organic Rice Cakes Blueberry & Beet, HappyBaby Organic Teethers Pea & Spinach, HappyBaby Organic Teethers Sweet Potato & Banana, Happy Baby Oatmeal Baby Cereal, and HappyBaby Oats & Quinoa Cereal (the "Products"). Discovery may reveal additional products at issue.
[2] *See* https://www.happyfamilyorganics.com/faqs/ (last visited Feb. 15, 2021).
[3] *Id.*
[4] *See* https://www.happyfamilyorganics.com/our-mission/going-beyond-organic-standards/ (last visited Feb. 15, 2021).

## THE PARTIES

9.      Plaintiff Amy Westin is a citizen of the State of California and is a member of the Class defined herein. Plaintiff purchased the Products from Target between March 2020 and December 2020. Some of the products she purchased were Blueberry & Purple Carrot Organic Teethers; Bananas & Sweet Potatoes Baby Food; Organic Root Vegetable & Turkey with Quinoa Baby Food Pouch; Organic Vegetable & Beef Medley with Quinoa Baby Food and Organic Harvest Vegetables & Chicken with Quinoa Baby Food Pouch. Prior to purchasing the Products, Plaintiff saw Defendant's health and nutritional claims on the packaging, including, but not limited to, "on a mission to bring happiness and health to our little ones and the planet" and "[the Nurture] team creates nutritious meals and snacks[,]" which she relied on in deciding to purchase the Products.

10.     During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff was unaware that the Products contained any level of heavy metals, including inorganic arsenic, and would not have purchased the food if the heavy metal concentrations were fully disclosed, or she would not have paid as much for the Products if that information were fully disclosed. Plaintiff was injured by paying a premium for the Products that have no or de minimis value—or whose value was at least less than what she paid for the Products—based on the presence of the high concentrations of heavy metals.

11.     Defendant Nurture, Inc., is an American food company incorporated in Delaware with its headquarters located in New York, New York.

3

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because there are more than 100 Class members, the claims of the proposed Class members exceed $5,000,000, and because Defendant is a citizen of a different state than most Class members.

13.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in the district, regularly sells and markets products and conducts business in this District, and/or under the stream of commerce doctrine by allowing products to be sold in this District, including the Products.

14.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered here, conducts substantial business in this District, a substantial portion of the events complained of took place in this District, and this Court has general jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

15.     The market for baby foods is exploding. The baby foods market worldwide is projected to grow by $22.7 billion by the year 2025.[5]

16.     Along with the exploding baby food market is a surge in popularity of baby food products that are organic and otherwise 'healthy' for babies.[6]

---

[5] *See* https://www.researchandmarkets.com/reports/338658/baby_foods_and_infant_formula_global_mark et?utm_source=dynamic&utm_medium=BW&utm_code=b559sk&utm_campaign=1386712+-+Global+B aby+Foods+and+Infant+Formula+Market+Assessment+2020-2025&utm_exec=joca220bwd (last visited Feb. 15, 2017).
[6] *Id.*

17.     Defendant manufactures, markets, advertises, labels, distributes, and sells Products, both in the past and currently. Defendant has advertised and continues to advertise the Products through television commercials, print advertisements, point-of-sale displays, product packaging, Internet advertisements, and other promotional materials.

18.     On the Products, Nurture intends to assure consumers that the Products are nutritious and healthy, stating prominently that the Products are produced by a team of "real [parents or moms], pediatricians & nutritionists **on a mission to bring health and happiness to our little ones and the planet,**" and further that the "**[the Nurture] team creates nutritious meals and snacks . . . .**"




19.     Defendant's packaging of the Products, however, does not disclose the presence heavy metals.

5

20.   Rather, Nurture directs reassuring representations, as previously discussed, on its

Products' packaging to consumers, like Plaintiff and the members of the Class, and Nurture intends

that Plaintiff and members of the Class rely on its representations.

21.   Nurture makes these representations because it knows that healthy baby food is a

material factor in baby food purchasing decisions to consumers like Plaintiff and members of the

Class.

22.   However, contrary to the representations made on the label and packaging of the

Products, the Products contain heavy metals in high concentrations in a manner that is not healthy

or nutritious.

### U.S. House of Representatives Investigation

23.   An investigation by the U.S. House of Representatives Subcommittee on Economic

and Consumer Policy (hereafter the "Subcommittee") revealed that baby foods manufactured by

Nurture are tainted with significant levels of toxic heavy metals, including arsenic, lead, mercury,

and cadmium.[7]

24.   Specifically, the Subcommittee found that:

a.   Nurture sold baby foods after tests showed they contained as much as 180

parts per billion (ppb) inorganic arsenic. Over 25% of the products Nurture

tested before sale contained over 100 ppb inorganic arsenic. Nurture's

testing shows that the typical baby food product it sold contained 60 ppb

inorganic arsenic.[8]

---

[7] U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021).
[8] Id.

25.     The Food and Drug Administration (FDA), however, has set the maximum allowable levels in bottled water at 10 ppb inorganic arsenic.[9]

26.     The Subcommittee also found that:

    a.     Nurture sold finished baby food products that tested as high as 641 ppb lead—over six times higher than its internal limit of 100 ppb lead. Almost 20% of the finished baby food products that Nurture tested contained over 10 ppb lead. Nurture also sold five other products after they tested over 50 ppb lead.

27.     The FDA has set the maximum allowable levels in bottled water at 5 ppb lead.[10]

28.     The Subcommittee also found that:

    a.     Sixty-five percent of Nurture finished baby food products contained more than 5 ppb cadmium; and

    b.     Nurture sold multi-grain cereal with 49 ppb cadmium. Nurture sold another 125 products that tested over 5 ppb, which is the EPA's limit for drinking water.

29.     Finally, the Subcommittee determined that Nurture sold finished baby food products containing as much as 10 ppb mercury whereas the Environmental Protection Agency (EPA) has capped the allowable level of mercury in drinking water at 2 ppb.

30.     Nurture sold its products for a profit, irrespective of potential health implications. In fact, Nurture sold all products tested, regardless of how much toxic heavy metal the baby food contained.[11]

---

[9] *Id.* at 4.
[10] Subcommittee Report, *supra* note 7.
[11] *Id.*

31.     By company policy, Nurture's toxic heavy metal testing is not intended for consumer safety. The FDA has only finalized one standard—100 ppb inorganic arsenic in infant rice cereal—and Nurture set its internal standard for that product 15% higher than the FDA limit, at 115 ppb.[12]

32.     Defendant's conduct regarding selling its products regardless of the testing results is especially deceptive and egregious because Defendant specifically touts its health benefits to consumers.

### *Plaintiff, As a Reasonable Consumer, Relied Upon the Products' Label to Purchase the Products*

33.     Plaintiff was herself a victim of Defendant's mislabeling of the Products.

34.     Prior to each purchase, Plaintiff viewed the labels on Defendant's Products, including the representations that they are: "on a mission to bring happiness and health to our little ones and the planet" and "[the Nurture] team creates nutritious meals and snacks." Each time, Plaintiff reasonably relied upon the labels on Defendant's Products before purchasing them.

35.     Defendant's labeling claims were a material factor in the decision of Plaintiff, as a reasonable consumer acting reasonably, to purchase Defendant's Products.

36.     At the point of sale, Plaintiff did not know, and had no reason to know, that Defendant's Products were mislabeled as set forth herein.

37.     Plaintiff later learned that the Products contain unhealthy and non-nutritious levels of heavy metals and inorganic arsenic.

38.     Accordingly, Plaintiff was deceived as a result of Defendant's false and misleading marketing practices.

---

[12] Subcommittee Report, *supra* note 7, at 4.

Plaintiff would not have purchased or paid a price premium for the Products had

she known they contained the levels of heavy metals and inorganic arsenic in the manner that they

Plaintiff is in the same Class as all other consumers who purchased Defendant's

Products during the relevant time period. Plaintiff and the Class members were in fact misled by

Defendant's misrepresentations with respect to the Products. Plaintiff and Class members would

have purchased other foods for their children if they had not been deceived by the misleading and

deceptive labeling of the Products by Defendant.

## CLASS ACTION ALLEGATIONS

Plaintiff brings this action individually and on behalf of all other persons similarly

situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the

information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this

action and seek certification of the following Class:

> All persons within the United States who purchased and consumed the Products
> from the beginning of any applicable limitations period through the date of class
> certification (the "National Class" or the "Class").

Plaintiff also seeks certification of the following Subclass (the "California

Subclass"):

> All persons in the State of California who purchased and consumed the Products
> from the beginning of any applicable limitations period through the date of class
> certification.

Excluded from the Class are the Defendant, and any entities in which the Defendant

has a controlling interest, the Defendant's agent s, employees and their legal representatives, any

Judge to whom this action is assigned and any member of such Judge's staff and immediate family,

and Plaintifrs counsel, their staff members, and their immediate family.

9

44. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

45. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands to tens of thousands. Members of the Class may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

46. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members of the Class. Such common questions of law or fact include, but are not limited to, the following:

> a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;
>
> b. Whether Defendant's actions violate the state consumer fraud statutes invoked below;
>
> c. Whether Plaintiffs and members of the Class were damaged by Defendant's conduct;
>
> d. Whether Defendant was unjustly enriched at the expense of Plaintiffs and Class members; and
>
> e. Whether Plaintiffs and Class members are entitled to injunctive relief.

47. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the named Plaintiff are typical of the claims of other members of the Class. All members of the Class were

comparably injured by Defendant' s conduct described above, and there are no defenses available to Defendant that are unique to Plaintiffs or any particular Class members.

**Adequacy of Representation - Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class Representative because her interests do not conflict with the interests of other Class members; she has retained Class Counsel competent to prosecute class actions and financially able to represent the Class.

**Declaratory and Injunctive Relief - Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products until such time that Defendant can demonstrate to the Court's satisfaction that the Products are accurately labeled.

**Superiority- Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiff and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments, delay, and expenses to the comt system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

11

## CAUSES OF ACTION

### COUNT 1

### FRAUDULENT MISREPRESENTATION
(On Behalf of the Nationwide Class and, alternatively,
the California Subclass (collectively, the "Class"))

51.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

52.     Defendant falsely represented to Plaintiff and the Class that the Products are natural and appropriate for consumption.  In fact, Defendant states that the Products are produced by a team of "real [parents or moms], pediatricians & nutritionists **on a mission to bring health and happiness to our little ones and the planet,**" and further that the **"[the Nurture] team creates nutritious meals and snacks . . . .."**

53.     Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Products.

54.     Defendant knew that its representations about the Products were false in that the Products contained or were at risk of containing levels of heavy metals or other unnatural ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

55.     Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

56.     Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Products to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Products, Plaintiff's and the Class's reliance on Defendant's misrepresentations was justifiable.

57.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

58.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT 2

### FRAUD BY OMISSION
**(On Behalf of the Nationwide Class and, alternatively,
the California Subclass (collectively, the "Class"))**

59.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60.     Defendant concealed from and failed to disclose to Plaintiff and the Class that their Products contained or were at risk of containing heavy metals or other unnatural ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

61.     Defendant had a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, suitability, and risks of the Products because: (1) Defendant was in a superior position to know the true state of facts about its Products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could have reasonably been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

13

62.     The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

63.     Plaintiff and the Class justifiably relied on Defendant's omissions to their detriment.

64.     The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior in comparison to Defendant's advertisements and representations of the Products.

65.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of elevated levels of heavy metals and toxins.

66.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT 3

### NEGLIGENT MISREPRESENTATION
**(On Behalf of the Nationwide Class and, alternatively, the California Subclass (collectively, the "Class"))**

67.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

68.     Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution, and sale of the Products.

69.     Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling Products to Plaintiff and the Class

that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Products from the marketplace or to take other appropriate remedial action.

Defendant knew or should have known that the ingredients, qualities, and characteristics of the Products were not as advertised or suitable for their intended use (consumption by babies) and were otherwise not as warranted and represented by Defendant.

Specifically, Defendant knew or should have known that: (1) the Products were not natural; (2) the Products were not nutritious, superior quality, pure, natural, healthy, and safe for consumption because they contained or had a risk of containing levels of heavy metals and/or other unnatural ingredients or contaminants that do not conforming to the packaging; (3) the Products were adulterated or at risk of being adulterated by heavy metals; and (4) the Products were otherwise not as warranted and represented by Defendant.

As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the Products' labels , packaging, advertising, and statements.

Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

### COUNT 4
### VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code§§ 17200, et. seg. ("UCL")
### (On behalf of the California Class)

The California Plaintiff identified above, individually and on behalf of the California Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal.
Bus. & Prof. Code§ 17200.

The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant
as alleged herein constitute business acts and practices.

Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate
at least the following laws:

The False Advertising Law, Cal. Bus. & Prof. Code§§ 17500, et seq.;

The Consumers Legal Remedies Act, Cal. Civ. Code§§ 1750, et seq.;

Unfair: Defendant' s conduct with respect to the labeling, advertising, and sale of
the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or
substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the
gravity of the harm to their victims.

Defendant's conduct with respect to the labeling, advertising, and sale of the
Products was and is also unfair because it violates public policy as declared by specific
constitutional, statutory or regulatory provisions, including but not limited to the applicable
sections of the Consumers Legal Remedies Act and the False Advertising Law.

Defendant's conduct with respect to the labeling, advertising, and sale of the
Products was and is unfair because the consumer injury was substantial, not outweighed by
benefits to consumers or competition, and not one consumer themselves could reasonably have
avoided.

Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to
mislead or deceive the public, applying an objective reasonable consumer test.

As set forth herein, Defendant's claims relating the ingredients stated on the

Products' labeling and moreover Defendant's representations about quality, ingredient supply, and product manufacturing and oversight, as stated above, are false likely to mislead or deceive the public.

83.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

84.     California Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

85.     Defendant's conduct caused and continues to cause substantial injury to California Plaintiff and Class members. California Plaintiff and Class members have suffered an injury in fact as a result of Defendant's unlawful conduct.

86.     In accordance with Bus. & Prof. Code § 17203, California Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

87.     California Plaintiff and Class members also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts in violation of the UCL.

## COUNT 5

### VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW,
### Cal. Bus. Prof. Code § 17500 ("FAL")
### (On behalf of the California Class)

88.     The California Plaintiff identified above, individually and on behalf of the California Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Products misled consumers acting reasonably as to Defendant's representations about quality, ingredient supply, and product manufacturing and oversight, as stated above.

California Plaintiff and the California Class suffered an injury in fact as a result of Defendant's actions as set forth herein because they purchased the Products in reliance on Defendant's false and misleading labeling claims concerning the Products, among other things, quality, ingredient supply, and product manufacturing and oversight, as stated above.

Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from their advertising.

Defendant profited from the sale of the falsely and deceptively advertised Products to unwary consumers.

As a result, California Plaintiff, California Class members, and the general public

are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

96.    Pursuant to Cal. Bus. & Prof. Code § 17535, California Plaintiff, on behalf of members of the California class, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT 6

### VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT,
### Cal. Civ. Code §1750, *et seq.* ("CLRA")
### (On behalf of the California Class)

97.    The California Plaintiff identified above, individually and on behalf of the California Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

98.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

99.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for family, or household purposes by California Plaintiff and Class members, and violated and continue to violate the following sections of the CLRA:

      a.  § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

      b.  § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

      c.  § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d.  § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

100.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

101.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

102.    On March 10, 2021, pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff provided a letter to Defendant with notice of their alleged violations of the CLRA, demanding that Defendant correct such violations, and providing them with the opportunity to correct their business practices. If Defendant does not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

103.    Pursuant to California Civil Code § 1780, California Plaintiff seeks injunctive relief, their reasonable attorney fees and costs, and any other equitable relief that the Court deems proper.

## COUNT 7

### UNJUST ENRICHMENT
### (On Behalf of the National Class)

104.    Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

105.    As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase of its Products by Plaintiff and the Class.

106.    Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of its misconduct, Plaintiff and the Class did not receive

a product of the quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

107.    Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiff and the Class at the expense of these parties.

108.    Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

109.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class suffered injury and seek an order directing Defendant's disgorgement and the return to Plaintiff and the Class of the amount each Class member improperly paid to Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as a Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

B.    Ordering Defendant to pay restitution to Plaintiff and the other members of the Class;

C.    Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other members of the Class, as allowable by law; and

D.    Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: March 10, 2021

Respectfully submitted,

*Melissa R. Emert*

Melissa R. Emert
KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977
T: 845-356-2570
F: 845-356-4335
memert@kgglaw.com

Gary S. Graifman
KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645
T: 845-356-2570
F: 845-356-4335
ggraifman@kgglaw.com

*Attorneys for the Plaintiff and the Putative Class*