# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:21-cv-05846-CCC-MF

MARTIN et al v. GERBER PRODUCTS COMPANY          Date Filed: 03/19/2021
Assigned to: Judge Claire C. Cecchi                             Jury Demand: Plaintiff
Referred to: Chief Mag. Judge Mark Falk                    Nature of Suit: 370 Other Fraud
Cause: 28:1332 Diversity-Fraud                                   Jurisdiction: Diversity

**Plaintiff**

**LACY MARTIN**                           represented by   **JAMES C. SHAH**
                                                                              MILLER SHAH LLP
                                                                              2 HUDSON PLACE
                                                                              SUITE 100
                                                                              HOBOKEN, NJ 07030
                                                                              856-526-1100
                                                                              Fax: 866-300-7367
                                                                              Email: jcshah@millershah.com
                                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**HOLLY SILVERTHORN**              represented by   **JAMES C. SHAH**
*Individually and on behalf of all others*                  (See above for address)
*similarly situated*                                                   *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**GERBER PRODUCTS COMPANY**
*doing business as*
NESTLE NUTRITION
*doing business as*
NESTLE INFANT NUTRITION
*doing business as*
NESTLE NUTRITION NORTH
AMERICA

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2021 | 1 | COMPLAINT against GERBER PRODUCTS COMPANY d/b/a Nestl Nutrition, Nestl Infant Nutrition, or Nestl Nutrition North America ( Filing and Admin fee $ 402 receipt number ANJDC-12282238) with JURY DEMAND, filed by LACY MARTIN, HOLLY SILVERTHORN. (Attachments: # 1 Civil Cover Sheet, # 2 Summons)(SHAH, JAMES) (Entered: 03/19/2021) |
| 03/19/2021 | | Case Assigned to Judge Claire C. Cecchi and Chief Mag. Judge Mark Falk. (ak, ) (Entered: 03/19/2021) |

| 03/19/2021 | 2 | SUMMONS ISSUED as to GERBER PRODUCTS COMPANY. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (qa, ) (Entered: 03/19/2021) |
| 03/30/2021 | 3 | SUMMONS Returned Executed by LACY MARTIN, HOLLY SILVERTHORN. GERBER PRODUCTS COMPANY served on 3/25/2021, answer due 4/15/2021. (SHAH, JAMES) (Entered: 03/30/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/07/2021 15:07:40 | | | |
| **PACER Login:** | tzlegal1 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-05846-CCC-MF Start date: 1/1/1980 End date: 4/7/2021 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LACY MARTIN and HOLLY SILVERTHORN, individually and on behalf of all others similarly situated<br><br>     Plaintiffs,<br><br>v.<br><br>GERBER PRODUCTS COMPANY (d/b/a Nestlé Nutrition, Nestlé Infant Nutrition, Nestlé Nutrition North America),<br><br>     Defendant. | CASE NO:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Lacy Martin and Holly Silverthorn ("Plaintiffs") bring this action individually and on behalf of all others similarly situated against Defendant Gerber Products Company (d/b/a Nestlé Nutrition, Nestlé Infant Nutrition, or Nestlé Nutrition North America) ("Gerber" or "Defendant") and allege the following based upon personal knowledge, as well as the investigation of their counsel.

## **INTRODUCTION**

1.     Gerber sold purportedly "organic," "natural," and "non-GMO" baby food that, in fact, contained harmful levels of certain heavy metals, including arsenic,

mercury, cadmium, and lead. As a recent congressional report from the Subcommittee on Economic and Consumer Policy found, Gerber's baby food products contain significant levels of toxic heavy metals, which can endanger infant neurological development.

2.     Not knowing that Gerber baby food—billed as "organic", "natural," and "non-GMO"—contained these harmful ingredients, Plaintiffs Lacy Martin and Holly Silverthorn bought Gerber foods to feed to their young children. If Plaintiffs had known that the Gerber baby foods contained these dangerous ingredients, they would not have purchased Gerber baby foods for their infant children. Because Defendant misrepresented the true nature of the ingredients in its Tainted Baby Foods when it failed to disclose the presence or risk of dangerous levels of heavy metals, Plaintiffs bring this action, individually and on behalf of all others similarly situated, against Gerber for breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, unjust enrichment, and violation of consumer protection law.

3.     To stop the sale of Gerber baby foods containing dangerous heavy metals to unwitting parents buying food for their babies, Plaintiffs seek an injunction requiring that Defendant stop the sale of its products with these metals and instead test its products so that it can both (1) confirm that ingredients are at safe levels, and (2) disclose those levels to Plaintiffs and the consuming public. Plaintiff all seeks

monetary relief that restores monies paid for the products to the proposed Class and Sub-Classes.

## JURISDICTION

4.     This Court has jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. LA 1332(d)(2), because at least one member of the Class is of diverse state citizenship from Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds the value of $5,000,000, exclusive of interest and costs.

5.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District, Defendant conducts substantial business in this District and the State of New Jersey through its headquarters, sale of products, and website, and Plaintiff has suffered injury as a result of Defendant's acts in this District.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has its principal place of business in this District in this District and because a substantial part of the events, misrepresentations, and omissions giving rise to this action occurred in, were directed to, and originated in this District.

## PARTIES

7.     Plaintiff Lacy Martin, a resident of Palm Coast, Florida, purchased Defendant's baby foods to feed to her two-year-old and seven-month-old children.

Ms. Martin purchased Gerber 1st Foods Single Grain Cereals (rice; oatmeal), Gerber Toddler Meals (pasta stars in meat sauce with green beans; yellow rice, chicken, and vegetables with green beans and carrots), Gerber Pick-Ups (chicken and carrot ravioli), Gerber Yogurt Melts (mixed berries; peach; banana vanilla; ), Gerber Fruit & Veggie Melts (truly tropical blend; very berry blend), Gerber Puffs (strawberry apple; blueberry; vanilla; peach), Gerber 1st Foods (butternut squash), Gerber Organic 2nd Foods (pear, purple carrot, raspberry), Gerber 2nd Foods (green bean; apple blueberry; carrot, sweet potato, pea; apple cherry; pear pineapple; butternut squash), Gerber Organic 2nd Foods Pouches (apple, blueberry, spinach; mango, apple, carrot, and kale), and Gerber Toddler Pouches (apple, pear, peach; apple, mango, strawberry). Ms. Martin purchased the Products in 2020 and 2021 from Publix, Target, and Walmart stores in Palm Coast, Florida.

8.     Plaintiff Holly Silverthorn, a resident of Buffalo, New York, purchased Defendant's Products to feed to her fifteen-month-old daughter. Ms. Silverthorn purchased Gerber Crawler Snacks (arrowroot cookies), Gerber Organic BabyPops (banana raspberry), Gerber Natural 2nd Foods (strawberry and banana; banana; banana and blueberry; apple, zucchini, and peach), and Gerber Natural 1st Foods (pear). Ms. Silverthorn purchased these products in 2020 and 2021 from a Target store in North Buffalo, New York.

9.      Plaintiffs saw Defendant's nutritional and quality claims on the packaging, including the "Organics" and "Naturals" representations contained in the very name of the food as well as the stage representations, which they relied on in deciding to purchase the Tainted Baby Foods.[1] During that time, based on Defendant's omissions and false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiffs were unaware that the Tainted Baby Foods contained any level of heavy metals or toxins, and they would not have purchased the food if they had known the truth about the hazardous levels of heavy metals or toxins present in the "natural," "organic," and "non-GMO" baby foods that Defendant sold at a premium price.

---

[1] The affected baby foods ("Tainted Baby Foods") include but are not limited to: (1) Gerber Natural 1st Foods – Banana; Gerber 1st Foods – Butternut Squash; (3) Gerber Natural 1st Foods – Pear; (4) Gerber Natural 2nd Foods – Apple, Zucchini, Peach; (5) Gerber Natural 2nd Foods – Banana Blueberry; (6) Gerber Natural 2nd Foods – Apple, Strawberry, Banana; (7) Gerber Organic 2nd Foods – Apple, Blueberry, Spinach; (8) Gerber Organic 2nd Foods – Mango, Apple, Carrot, Kale; (9) Gerber 2nd Foods – Green Bean; (10) Gerber 2nd Foods – Apple Blueberry; (11) Gerber 2nd Foods – Carrot, Sweet Potato, Pea; (12) Gerber 2nd Foods – Apple Cherry; (13) Gerber 2nd Foods – Pear Pineapple; (14) Gerber 2nd Foods – Butternut Squash; (15) Gerber Organic 2nd Foods – Pear, Purple Carrot, Raspberry; (16) Gerber Organic BabyPops – Banana Raspberry; (17) Gerber Arrowroot Cookies; (18) Gerber 1st Foods – Oatmeal Single Grain Cereal; (19) Gerber 1st Foods – Rice Single Grain Cereal; (17) Gerber Fruit & Veggie Melts – Very Berry Blend; (18) Gerber Fruit & Veggie Melts – Truly Tropical Blend; (19) Gerber Yogurt Melts – Mixed Berries; (20) Gerber Yogurt Melts – Peach; (21) Gerber Yogurt Melts – Banana Vanilla; (22) Gerber Puffs – Vanilla; (23) Gerber Puffs – Strawberry Apple; (24) Gerber Puffs – Blueberry; (25) Gerber Puffs – Peach; (26) Gerber Toddler Pouch – Apple, Pear, Peach; (27) Gerber Lil' Entrees/Toddler Meals –  Pasta Stars in Meat Sauce; (28) Gerber Lil' Entrees/Toddler Meals – Yellow Rice, Chicken, & Vegetables; and (29) Gerber Pasta Pick-Ups – Chicken and Carrot Ravioli.

10.    As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid for the Tainted Baby Foods that were not as represented. Plaintiffs were injured in the amount of the purchase price of the products because the Tainted Baby Foods containing dangerous ingredients were not the natural, organic, and safe foods they and so many other parents thought they were buying. Restitution of the purchase price is appropriate because even if the Tainted Baby Foods with dangerous ingredients had some value, the Products with dangerous ingredients are different than the safe products Plaintiffs believed they were buying.

11.    Plaintiffs were further injured because the Tainted Baby Foods that they purchased have no or *de minimis* value—or a value that was at least less than what they paid for the Tainted Baby Foods—based on the presence of the alleged heavy metals and/or toxins. Plaintiffs were also injured because they paid a premium price for the "organic," "natural," and "non-GMO" products that contained high quality ingredients that they reasonably assumed were safe for babies and children to ingest. Plaintiffs would not have paid this money had they known that the Tainted Baby Foods contained dangerous levels of heavy metals and/or toxins. Damages can be calculated through expert testimony at trial. Further, should Plaintiffs encounter the Gerber's baby foods in the future, they could not rely on the truthfulness of the

packaging, absent corrective changes to the packaging and advertising of the Tainted Baby Foods.

12.    Defendant Gerber Products Company is incorporated in Michigan. Its headquarters and principal place of business is in Florham Park, New Jersey.

13.    Defendant manufactures, markets, advertises, labels, distributes, and sells baby food products under the brand name Gerber throughout the United States, including in this District.

14.    Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Tainted Baby Foods under the baby food name Gerber throughout the United States, including in this District, during the Class Period (defined below). The advertising, labeling, and packaging for the Tainted Baby Foods, relied upon by Plaintiffs were prepared, reviewed, and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging, and labeling for the Tainted Baby Foods were designed to encourage customers to purchase the Tainted Baby Foods, and they and reasonably misled reasonable consumers, including Plaintiffs and the Class, into purchasing the Tainted Baby Foods. Defendant owns, manufactures, and distributes the Tainted Baby Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent,

unfair, misleading, and/or deceptive labeling and advertising for the Tainted Baby Foods. Defendant is responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing, for the ingredients and finished baby food products.

## FACTUAL ALLEGATIONS COMMON TO ALL CLASS MEMBERS

### I.     Defendant's False and Misleading Marketing of Its Baby Food

15.    None of the Tainted Baby Foods' packaging disclosed that they contained harmful levels of heavy metals and other ingredients. In other words, nowhere in the labeling, advertising, statements, warranties, or packaging does Defendant disclose that the Tainted Baby Foods contain or have a high risk of containing dangerous levels of heavy metals or other ingredients that do not conform to the labels, packaging, advertising, and statements.

16.    Instead, as shown in the examples below, Defendant's packaging and labels emphasize that Gerber baby food is natural, organic, with nothing artificial added. By making these assurances that the Tainted Baby Foods are natural and safe for infant consumption, Defendant warrants, promises, represents, misleads, labels, and advertises that the Tainted Baby Foods are free of any heavy metals or unnatural ingredients.  Also as shown in the examples below, Defendant also warrants that the Tainted Baby Foods are safe for babies and infants by making representation about which stage of infant development the foods are appropriate for. Specifically,

8

Defendant warrants that (1) "Supported Sitter" foods are appropriate for consumption by infants at "4-6 months"; (2) "Sitter" foods are appropriate for consumption by infants at "6-8 months"; (3) "Crawler" foods are appropriate for consumption by infants at "8+ months"; and (4) "Toddler" foods are appropriate for consumption by children at "12+ months."

    A.    Stage Representations Are Featured Prominently on Gerber's Website[2]



    B.    "Shop By Milestone" Feature on Gerber's Website[3]



---

[2] GERBER, https://www.gerber.com/ (last visited Mar. 3, 2021).
[3] *Id.*

C.      Gerber Natural 1st Foods – Supported Sitter



D.      Gerber 2nd Foods – Sitter



E.      Gerber Organic 2nd Foods – Sitter



F.      Gerber Fruit & Veggie Melts – Crawler



G.    Gerber Arrowroot Biscuits – Crawler



H.    Gerber Toddler Pouches



I.      Gerber Toddler Meals



17.      But contrary to Defendant's glaring omissions and misleading claims, the Tainted Baby Foods have been shown to contain worrying levels of arsenic, cadmium, lead, and/or mercury[4]—all known to pose health risks to humans and particularly infants.

## II.      Gerber Baby Foods Contain Harmful Heavy Metals

18.      Testing[5] has made clear that Gerber baby foods may contain heavy metals.

---

[4] Healthy Babies Bright Futures, *What's In My Baby's Food?* (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf (hereinafter, "Healthy Babies Bright Futures Report").

[5] *See id.*; *see also* SUBCOMMITTEE ON ECON. AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* (Feb. 4, 2021) at 2, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (hereinafter, "House Report").

A.      **Healthy Babies Bright Futures Finds Heavy Metals in Gerber Baby Foods**

19.     In April 2019, Healthy Babies Bright Futures, an alliance of nonprofit organizations, commissioned a national laboratory to test 168 containers of baby food for total recoverable arsenic, lead, cadmium, and mercury, as well as speciated arsenic for a subset of samples.

20.     Forty-eight of Gerber's baby food products were tested in this study.[6]

21.     Healthy Babies Bright Futures found that the samples contained heavy metals, including arsenic, lead, mercury, and cadmium.

22.     The researchers who published the Healthy Babies Bright Futures Report on healthybabyfood.org explained the harms these metals and can cause. They explained that arsenic, lead, mercury, and cadmium, four heavy metals found in the Baby Foods, are neurotoxins. Exposures to these four heavy metals "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[7] The four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[8] Even trace amounts of these

---

[6] Healthy Babies Bright Futures Report at 19-28.
[7] *Id.* at 13.
[8] *Id.* at 6.

heavy metals can alter the developing brain and erode a child's IQ.[9] Arsenic causes potentially irreversible damage, including "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[10] According to the Healthy Babies Bright Futures Report, research continues to confirm that exposure to food containing arsenic, lead, mercury, and cadmium poses "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[11]

### B.    A Recent Congressional Report Also Finds Harmful Heavy Metals in Gerber Baby Foods

23.    A recent congressional report from the Subcommittee on Economic and Consumer Policy of the House Oversight Committee found that Gerber baby foods "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, *which can endanger infant neurological development*."[12]

24.    The Subcommittee requested documentation from the largest baby food manufacturers in the United States, and the companies that responded (including Defendant) produced their internal testing policies, test results for ingredients/finished products (if the company tested its finished products), and

---

[9] *Id.* at 1.
[10] *Id.* at 13.
[11] *Id.*
[12] House Report at 2.

documentation about what the companies did with the ingredients and/or finished products that exceeded their internal testing limits.[13]

25.     Defendant submitted to the Subcommittee its testing policies, select test results for some of its raw ingredients,[14] and its documentation about what it did with the ingredients that exceeded internal testing limits.

26.     The Subcommittee concluded that Defendant used ingredients in its baby food that contained arsenic, lead, and cadmium.[15] The House Report also stated that "Gerber rarely tests for mercury in its baby foods." [16]

**C.     The Dangers of the Heavy Metals in Gerber Baby Foods Are Well-documented**

27.     The findings by the Congressional Subcommittee and Happy Babies Bright Futures are particularly alarming because the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[17]

---

[13] *Id.*
[14] Gerber, *Raw Material Heavy Metal Testing* (Dec. 9, 2019), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/5_0.pdf.
[15] House Report at 3.
[16] *Id.*
[17] *Id.* at 2.

### i.    *Arsenic*

28.    The Congressional Subcommittee found that Gerber Baby Foods may contain arsenic. The U.S Environmental Protection Agency and the FDA have documented the risks associated with exposure to arsenic and regulated its amount in water, juice, and in rice cereals for infants. Specifically, based on the risks associated with exposure to arsenic, the EPA and the FDA have set standards for the allowable limit of arsenic at 10 parts per billion ("ppb") in drinking water,[18] bottled water,[19] and apple juice[20] intended for human consumption. Defendant uses ingredients that far exceed these amounts.

29.    Gerber did not provide inorganic arsenic results for all of its ingredients, but the Congressional Subcommittee was troubled by the results produced. Test results demonstrated that Gerber used grape juice concentrate containing 39 ppb inorganic arsenic—far above the 10 ppb limit for apple juice.[21] Further, the Subcommittee concluded that Gerber routinely used flour with over 90 ppb inorganic arsenic.[22] Gerber used five batches of rice flour that contained 98 ppb inorganic arsenic and 67 batches that contained more than 90 ppb.[23]

---

[18] 40 C.F.R. § 141.62.
[19] 21 C.F.R. § 165.110(b)(4)(iii)(A).
[20] U.S. FOOD & DRUG ADMIN., *Draft Guidance for Industry, Arsenic in Apple Juice: Action Level* (July 2013), https://www.fda.gov/media/86110/download.
[21] House Report at 52.
[22] House Report at 19.
[23] *Id.*

ii.    *Lead*

28.    The Subcommittee also found that the Tainted Baby Foods may contain lead—a known neurotoxin and human carcinogen.

29.    Lead exposure can seriously harm children's nervous systems and developing brains and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[24]

30.    Because lead can accumulate in the body, even very low levels of exposure can become hazardous over time.[25] Indeed, "[n]o safe level of exposure has been identified."[26] Studies have demonstrated that childhood exposure to lead is strongly linked to an adverse effect on academic achievement.[27] One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food." A correlation has also been established between lead exposure and Attention Deficit Hyperactivity Disorder.[28] Troublingly, the cognitive effects caused by early childhood exposure to lead appear to be permanent.[29]

---

[24] *Id.* at 11 (citing U.S. FOOD & DRUG ADMIN., *Lead in Food, Foodwares, and Dietary Supplements*, https://www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements (last visited Feb. 17, 2021)).
[25] *Id.*
[26] Healthy Babies Bright Futures Report at 13.
[27] House Report at 11.
[28] *Id.* at 12 (citing Gabriele Donzelli et al., *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review*, INT'L J. ENVTL. RES. & PUB. HEALTH (Jan. 29, 2019), www.mdpi.com/1660-4601/16/3/382/htm).
[29] *Id.* at 11.

31.    Although there is no federal standard for lead in baby food, experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports, agree that lead in baby foods should not exceed 1 ppb.[30] The FDA has set the maximum lead level in bottled water to 5 ppb.[31]

32.    The Subcommittee found that Gerber's test results for sweet potatoes and juices "demonstrated [Defendant's] willingness to use ingredients that contained dangerous lead levels." One of Gerber's ingredients, conventional sweet potatoes, contained 48 ppb lead. Gerber also used twelve other batches of sweet potato that tested over 20 ppb for lead.[32]

33.    The Subcommittee also concluded that the average amount of lead in Gerber's tested juice concentrates was 11.2 ppb—greater than the FDA's limit of 5 ppb lead in bottled water. Further, the Subcommittee found that "[o]ver 83% of the juice concentrates tested showed greater than 1 ppb lead, which is Consumer Reports' recommended limit for fruit juices."[33]

34.    Defendant only tested its component ingredients for lead, instead of also testing its finished products. As a result, Defendant sold baby food products containing significant amounts of lead.[34] As a result, Defendant sold baby food

---

[30] House Report at 27.
[31] Healthy Babies Bright Futures Report at 16.
[32] House Report at 27.
[33] *Id.* at 28.
[34] *Id.* at 22.

products containing significant amounts of lead.[35] The Healthy Babies Bright Futures report indicated that three of the Baby Foods contained more than 20 ppb lead.[36]

### iii.   *Mercury*

35.    The Tainted Baby Foods also may contain mercury,[37] which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability.[38]

36.    Recognizing the harm caused by ingestion of mercury, EPA has set the maximum mercury level in drinking water to 2 ppb.[39]

37.    The Subcommittee found that Gerber only tests certain ingredients for mercury and noted that the only test results for mercury that Gerber submitted were for carrots, sweet potatoes, and lemon juice concentrate.[40]

---

[35] *Id.*
[36] Healthy Babies Bright Futures Report at 19-28.
[37] *See* House Report at 35 (noting that "Gerber barely tests" its ingredients or finished products for mercury); *see also* Healthy Babies Bright Futures Report at 19-28 (independent test results showing that Gerber products contain mercury).
[38] Healthy Babies Bright Futures Report at 14.
[39] 40 C.F.R. § 141.62(b).
[40] House Report at 33.

### iv.   *Cadmium*

38.    The Tainted Baby Foods may also contain cadmium,[41] which has been observed to cause anemia, liver disease, and nerve or brain damage in animals that consume it.

39.    Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage.[42] Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]"[43] Cadmium also "displays a troubling ability to cause harm at low levels of exposure."[44] The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[45]

---

[41] *Id.* at 32.
[42] Healthy Babies Bright Futures Report at 14.
[43] *Id.*
[44] *Id.*
[45] ATSDR, DEP'T OF HEALTH AND HUMAN SERV., *Public Health Statement: Cadmium* (Sept. 2012), https://www.atsdr.cdc.gov/toxprofiles/tp5-c1-b.pdf.

40.    The EPA and FDA have set the standards for the allowable limit of cadmium in drinking water[46] and bottled water[47] at 5 ppb. The WHO has established a maximum amount of cadmium in drinking water at 3 ppb.[48]

41.    The Subcommittee concluded that Gerber "accepts ingredients with high levels of cadmium[,]" finding that Gerber used multiple batches of carrots containing as much as 87 ppb cadmium, and that 75% of the carrots Gerber used had more than 5 ppb cadmium.[49]

42.    Despite the known risks of exposure to these heavy metals, Gerber has negligently, recklessly, and/or knowingly sold the Tainted Baby Foods without disclosing that they may contain arsenic, mercury, cadmium, and lead to consumers like Plaintiffs.

43.    Given the well documented dangers of the heavy metals that may be in the Tainted Baby Foods, reasonable consumers, like Plaintiffs, would consider the mere presence or risk of heavy metals as a material fact in considering what baby food products to purchase.

44.    Defendant claims on its website that it "meet[s] the standards of the FDA, but we don't stop there. We go further. We have among the strictest standards

---

[46] 40 C.F.R. § 141.62(b).
[47] 21 C.F.R. § 165.110(b)(4)(iii)(A).
[48] WORLD HEALTH ORGANIZATION, *Cadmium in Drinking Water* (2011),
https://www.who.int/water_sanitation_health/water-
quality/guidelines/chemicals/cadmium.pdf?ua=1.
[49] House Report at 32.

in the world. From farm to highchair, we go through over 100 quality checks for every jar."[50] As such, Defendant knew or should have known that the Baby Foods contained or had a risk of containing dangerous levels of heavy metals. Additionally, Defendant knew or should have known that its ingredients, and the final products, could contain materials such as toxins and heavy metals. Yet, Defendant did not test all ingredients and products, including the Tainted Baby Foods, for such materials.[51]

45.     Additionally, Defendant knew or should have known that Plaintiffs and other consumers would feed the Tainted Baby Food multiple times each day to their children, making these contaminated products the primary sources of food for their children. This necessarily leads to repeated exposure of heavy metals to children.

46.     Defendant knew or should have expected that the presence or risk of heavy metals in its baby food products is a fact that an average consider would consider when purchasing baby food.

47.     As a result of these false or misleading statements and omissions, Defendant has generated substantial sales of the Tainted Baby Foods.

48.     Plaintiffs bring this action individually and on behalf of all other similarly situated consumers who purchased the Tainted Baby Foods, in order to

---

[50] *Commitment to Quality*, https://www.gerber.com/commitment-to-quality (last visited Mar. 3, 2021).
[51] *Letter from the Chief Executive Officer of Gerber Products Company to Chairman Raja Krishnamoorthi*, SUBCOMMITTEE ON ECON. AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM (Dec. 19, 2019), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/7_Redacted.pdf (Gerber's policy is to "regularly test our ingredients, and periodically test . . . finished goods").

cause the disclosure of the presence or risk of heavy metals that pose a known risk to infants in the Tainted Baby Foods, to correct the false and misleading perception Defendant has created in the minds of consumers that the Tainted Baby Foods are high quality, safe, and healthy, and to obtain redress for those who have purchased the Tainted Baby Foods.

## **CLASS ACTION ALLEGATIONS**

49.     Plaintiffs bring this action individually and on behalf of the following Classes pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons in the United States who, from January 1, 2017, to the present, purchased the Tainted Baby Foods for household or personal use (the "Nationwide Class").

50.     Plaintiff Martin also brings this action individually and on behalf of the following Florida Sub-Class:

> All persons who, from January 1, 2017, to the present, purchased the Tainted Baby Foods for household or business use in the State of Florida (the "Florida Sub-Class").

51.     Plaintiff Silverthorn also brings this action individually and on behalf of the following New York Sub-Class:

> All persons who, from January 1, 2017, to the present, purchased the Tainted Baby Foods for household or business use in the State of New York (the "New York Sub-Class").

52.     Excluded from the Nationwide Class and Sub-Classes (collectively, the "Class") are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all government entities, and any judge, justice, or judicial officer presiding over this matter.

53.     This action is brought and may be properly maintained as a class action.

54.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the proposed Class in a single action will provide substantial benefits to the parties and Court.

55.     Questions of law and fact common to Plaintiff and members of the Classes include, but are not limited to, the following:

A.     Whether Defendant wrongfully represented and continues to represent that the Tainted Baby Foods are healthy, nutritious, and safe for human consumption;

B.     Whether Defendant wrongfully represented and continues to represent that the Tainted Baby Foods are natural;

C.     Whether Defendant wrongfully represented and continues to represent that the Tainted Baby Foods are organic;

D.    Whether Defendant wrongfully represented and continues to represent that the Tainted Baby Foods appropriate are appropriate for consumption by various "stages" of babies;

E.    Whether Defendant wrongfully failed to disclose that the Tainted Baby Foods contained or may contain heavy metals;

F.    Whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

G.    Whether those representations are likely to deceive a reasonable consumer;

H.    Whether a reasonable consumer would consider the presence or risk of heavy metals as a material fact in purchasing baby food;

I.    Whether Defendant had knowledge that those representations were false, deceptive, and misleading;

J.    Whether Defendant knew or should have known that the Tainted Baby Foods contained or may contain heavy metals;

K.    Whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

L.    Whether a representation that a product is healthy, superior quality, nutritious, and safe for consumption and does not contain arsenic,

26

mercury, cadmium, and/or lead is material to a reasonable consumer;

M.   Whether Defendant's representations and descriptions on the labeling of the Tainted Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

N.   Whether Defendant violated the laws of the State of Florida;

O.   Whether Defendant violated the laws of the State of New York;

P.   Whether Defendant violated the laws of the State of New Jersey;

Q.   Whether Defendant breached its implied warranties;

R.   Whether Defendant engaged in unfair trade practices;

S.   Whether Defendant engaged in false advertising;

T.   Whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

U.   Whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

V.   Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

56.   Common issues predominate here where Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical

statutory violations, business practices, and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

57.    Plaintiff's claim is typical of those of the members of the Classes, since all of the claims are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

58.    Plaintiff will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

59.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is sufficiently small such that, absent representative litigation, it would be impractical for members of the Classes to redress the wrongs done to them.

60.    As a result of the foregoing, class treatment is appropriate.

## **CLAIMS FOR RELIEF**

### **COUNT I**
**Breach of Express Warranty Against Defendant on Behalf of Plaintiff and the Nationwide Class, Or, in the Alternative, on Behalf of Plaintiffs and the Florida and New York Sub-Classes**

61.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.    Defendant marketed and sold the Baby Foods into the stream of commerce with the intend that the Tainted Baby Foods would be purchased by Plaintiff and the Class.

63.    Defendant expressly warranted, advertised, and represented to Plaintiff and the Class that its baby foods are:

    A.    Natural;

    B.    Organic;

    C.    Non-GMO; and

    D.    Appropriate for consumption by certain stages of babies.

64.    Defendant made these express warranties regarding the Tainted Baby Foods' quality, ingredients, and fitness for consumption in writing on the Tainted Baby Foods' packaging and labels through its website, advertisements, and marketing materials. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Tainted Baby Foods.

29

65.     Defendant's advertisements, warranties, and representations were made in connection with the sale of the Tainted Baby Food to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendant's advertisements, warranties, and representations regarding the Tainted Baby Foods in deciding whether to purchase Defendant's products.

66.     Defendant's baby foods do not conform to Defendant's advertisements, warranties, and representations in that they:

      A.     Are not natural or suitable for consumption by human babies; and

      B.     Contain or may contain levels of various heavy metals.

67.     Defendant was on notice of this breach as they were aware of the included heavy metals in the Tainted Baby Foods and based on the public investigation by the Healthy Babies Bright Futures report that showed its baby food products as unhealthy and containing dangerous levels of heavy metals.

68.     Privity exists because Defendant expressly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Tainted Baby Foods were healthy, natural, and suitable for consumption and by failing to make any mention of heavy metals or other unnatural ingredients.

69.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Tainted Baby Foods that were not only worth less than the price they paid, but they would not have

purchased at all had, they known of the risk and/or presence of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

70.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II
### Breach of Implied Warranty of Merchantability Against Defendant on Behalf of Plaintiffs and the Nationwide Class, Or, in the Alternative, on Behalf of Plaintiffs and the Florida and New York Sub-Classes

71.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

73.     There was a sale of goods from Defendant from Plaintiffs and the Class.

74.     At all times mentioned herein, Defendant manufactured or supplied the Tainted Baby Foods, and prior to the time the Tainted Baby Foods were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Tainted Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Tainted Baby Foods' containers and labels, including that the food was natural, safe, and

31

appropriate for consumption by human infants. Plaintiffs and the Class relied on Defendant's promises and affirmations of fact when they purchased the Tainted Baby Foods.

75.     The Tainted Baby Foods were not fit for their ordinary use (consumption by babies) and did not conform to Defendant's affirmations of fact and promises as they contained or were at risk of containing heavy metals and/or other ingredients or contaminants that do not conform to the packaging.

76.     Defendant breached its implied warranties by selling Tainted Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

77.     Defendant was on notice of this breach, as it was aware of the heavy metals included or at risk of being included in the Tainted Baby Foods and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby foods were unhealthy, contaminated, and potentially dangerous, as well as the extensive press coverage of the investigation.

78.     Privity exists because Defendant impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Tainted Baby Foods were natural and suitable for consumption by babies, and by failing to make any mention of heavy metals or other unnatural ingredients.

79.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased baby food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients.

80.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

## COUNT III
### Fraudulent Misrepresentation Against Defendant on Behalf of Plaintiffs and the Nationwide Class, Or, in the Alternative, on Behalf of Plaintiffs and the Florida and New York Sub-Classes

81.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

82.     Defendant falsely represented to Plaintiffs and the Class that the Tainted Baby Foods are:

A.     Natural;

B.     Organic;

C.     Non-GMO; and

D.     Appropriate for consumption by certain stages of babies.

83.    Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase its baby foods.

84.    Defendant knew that its representations about the Tainted Baby Foods were false in that the Tainted Baby Foods contained or were at risk of containing levels of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, including Plaintiffs and the Class.

85.    Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Tainted Baby Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Tainted Baby Foods, Plaintiffs' and the Class's reliance on Defendant's misrepresentations was justifiable.

86.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Tainted Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

87.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT IV**
**Fraudulent Concealment on Behalf of Plaintiffs and the Nationwide Class, Or, in the Alternative, on Behalf of Plaintiffs and the Florida and New York Sub-Classes**

88.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

89.     Defendant concealed from and failed to disclose to Plaintiffs and the Class that the Tainted Baby Foods contained or were at risk of containing heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

90.     Defendant had a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients, suitability, and risks of the Tainted Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Tainted Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiffs and the Class could not have reasonably have been expected to learn or discover that the Tainted Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Tainted Baby Foods.

91.     The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Tainted Baby Foods.

92.     Plaintiffs and the Class justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Tainted Baby Foods, which is inferior in comparison to Defendant's advertisements and representations of the Tainted Baby Foods.

93.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Tainted Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of dangerous levels of heavy metals and toxins.

94.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT V**
**Negligent Misrepresentation on Behalf of Plaintiffs and the Nationwide Class, Or, in the Alternative, on Behalf of Plaintiffs and the Florida and New York Sub-Classes**

95.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.     Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution, and sale of the Tainted Baby Foods.

97.     Defendant breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Tainted Baby Foods from the marketplace or to take other appropriate remedial action.

98.     Defendant knew or should have known that the ingredients, qualities, and characteristics of the Tainted Baby Foods were not as advertised or suitable for their intended use (consumption by babies) and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) the Tainted Baby Foods were not natural, organic, nutritious, healthy, or safe for consumption because they contained or had a risk of containing levels of heavy metals and/or other unnatural ingredients or contaminants that do not conforming to the packaging; (2) the Tainted Baby Foods were adulterated or at risk of being adulterated by heavy metals; and (3) the Tainted Baby Foods were otherwise not as warranted and represented by Defendant.

99.     Plaintiffs and the Class justifiably and reasonably relied on Defendant's representations as to the ingredients, qualities, and characteristics of the Tainted Baby Foods.

100.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Tainted Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

101.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT VI**
**Unjust Enrichment on Behalf of Plaintiffs and the Nationwide Class, Or, in the Alternative, on Behalf of Plaintiffs and the Florida and New York Sub-Classes**

102.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

103.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through their purchase of the Tainted Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

104.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and made with the expectation that

the Tainted Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under the circumstances.

105. Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits and not return the value of payments made by Plaintiffs and the Class.

106. Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

107. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT VII
**Violation of New Jersey's Consumer Fraud Act for Fraud in Connection with Sale or Advertisement of Merchandise, N.J. Stat. Ann. § 56:8-1, , *et seq.*, on Behalf of Plaintiffs and the Nationwide Class, Or, in the Alternative, on Behalf of Plaintiffs and the Florida and New York Sub-Classes**

108. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

109. New Jersey's Consumer Fraud Act prohibits the "act, use or employment by any person of unconscionable commercial practice, deceptive, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment,

suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[.]" N.J. Stat. Ann. § 56:8-2.

110.    Defendant's representations related to the Baby Foods, as described herein, are advertisements as defined by N.J. Stat. Ann. § 56:8-1(a).

111.    The Baby Foods sold by Defendant are merchandise as defined by N.J. Stat. Ann. § 56:8-1(c).

112.    Defendant is a person as defined by N.J. Stat. Ann. § 56:8-1(d).

113.    As set forth herein, Defendant's claims that the Tainted Baby Foods are nutritious, natural, organic, healthy, and safe for consumption by babies are literally false and likely to deceive the public, as is Defendant's failing to make any mention of the presence or risk of heavy metals in the Tainted Baby Foods.

114.    Defendant's claims that the Tainted Baby Foods are nutritious, natural, organic, healthy, and safe for consumption by babies are untrue and misleading, as is failing to disclose the presence or risk of heavy metals in the Tainted Baby Foods.

115.    Defendant knew, or reasonably should have known, that all of these claims were untrue or misleading.

116.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these products in the future if they can be assured that the

Tainted Baby Foods are, as advertised, natural, nutritious, superior, quality, pure, healthy, and safe for consumption and that they do not contain heavy metals or any other ingredients or contaminants that do not conform to the packaging claims. Plaintiffs and members of the Class would not have purchased the Tainted Baby Foods and have suffered ascertainable loss as a result of Defendant's conduct.

117. Plaintiffs and members of the Class are entitled to and seek:

A. Injunctive and equitable relief, pursuant to N.J. Stat. Ann. § 56:8-159(a);

B. Actual damages, pursuant to N.J. Stat. Ann. § 56:8-159(b); and

C. Treble damages, costs, and attorneys' fees, pursuant to N.J. Stat. Ann. § 56:8-19.

## COUNT VIII
### Violation of New York's Consumer Protection Laws, N.Y. Gen. Bus. Law § 349 on Behalf of Plaintiff Silverthorn and the New York Sub-Class

118. Plaintiff Silverthorn incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

119. New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

120. In its sale of goods throughout New York, Defendant conducts business and trade as defined by N.Y. Gen. Bus. Law § 349.

121.   Defendant violated N.Y. Gen. Bus. Law § 349 by representing that the Tainted Baby Foods were:

   A.   Natural;

   B.   Organic;

   C.   Non-GMO; and

   D.   Appropriate for consumption by certain stages of babies.

122.   This conduct was deceptive because the Tainted Baby Foods contained or had a material risk of containing heavy metals.

123.   Defendant intentionally represented that the Tainted Baby Foods were of a particular standard, grade, or quality when they were in fact not fit for consumption by human babies.

124.   The facts that Defendant concealed or misrepresented were material in that Plaintiff Silverthorn, as well as any reasonable consumer, would have considered them when deciding whether to purchase Defendant's baby foods.

125.   Defendant's conduct and omissions repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

126.   Defendant's misrepresentations and deceptive acts and practices resulted in Plaintiff Silverthorn and members of the New York Sub-Class suffering actual damages when they purchased Tainted Baby Foods that were worth less than

the price paid and that they would not have purchased at all had they known of the presence or risk of heavy metals.

127.   Defendant intended for Plaintiff Silverthorn and the members of the New York Sub-Class to rely on its deceptive misrepresentations and conduct when purchasing the Tainted Baby Foods.

128.   As a direct and proximate result of these violations, Plaintiff Silverthorn and the New York Sub-Class have been harmed, and that harm will continue unless Defendant is enjoined from misrepresenting the quality and ingredients of its baby foods as described herein.

129.   Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff Silverthorn and the New York Sub-Class seek injunctive and declaratory relief, full refund, actual and punitive damages, and attorneys' fees.

## COUNT IX
**Violation of New York's False Advertising Law, N.Y. Gen. Bus. Law § 350 on Behalf of Plaintiff Silverthorn and the New York Sub-Class**

130.   Plaintiff Silverthorn incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

131.   New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

132.   N.Y. Gen. Bus. Law § 350 defines false advertising as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

133.   Defendant's claims that its Tainted Baby Foods were "natural," "organic," "non-GMO," appropriate for certain "stages" of babies, and nutritious were literally false and likely to deceive the public.

134.   Defendant's claims were untrue or misleading because such claims failed to disclose that the Tainted Baby Foods contained, or were at risk of containing, dangerous levels of heavy metals that do not conform to the packaging.

135.   Defendant knew or should have known that such claims were false or misleading.

136.   Such false and misleading claims and representations made by Defendant were material in that Plaintiff Silverthorn and any reasonable consumer would have considered them when deciding whether to purchase Defendant's baby foods.

137.   Defendant, including its agents and distributors, made untrue, deceptive, and misleading assertions and representations about the alleged quality, characteristics, and nature of the Tainted Baby Foods.

138.   Defendant's conduct caused Plaintiff Silverthorn and the New York Sub-Class to suffer actual damages when they purchase the Tainted Baby Foods that

were worth less than the price paid and that they would not have purchased at all had they known of the presence or risk of dangerous levels of heavy metals that do not conform to the packaging.

139.   As a direct and proximate result of Defendant's conduct, described herein, Plaintiff Silverthorn and the members of the New York Sub-Class have been injured, and that harm will continue unless Defendant is enjoined from misrepresenting the Tainted Baby Foods' quality, ingredients, standards, and suitability for consumption by babies.

140.   Pursuant to N.Y. Gen. Bus. Law § 350, Plaintiff Silverthorn and the members of the New York Sub-Class seek injunctive and declaratory relief, full refund, actual and punitive damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.   An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.   An order enjoining Defendant from selling the Tainted Baby Foods until the levels of heavy metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.      An order enjoining Defendant from selling the Tainted Baby Foods in any manner or suggestion implying that they are healthy, natural, and safe for consumption;

D.      An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from containing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay all actual damages permitted under the counts alleged herein;

I.      An order requiring Defendant to pay punitive damages on any count so allowable;

J.      An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiffs and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  March 19, 2021                    MILLER SHAH LLP

By: *s/James C. Shah*
James C. Shah
Natalie Finkelman Bennett
2 Hudson Place, Suite 100
Hoboken, NJ  07030
Telephone (856) 526-1100
Facsimile: (866) 300-7367
jcshah@millershah.com
nfinkelman@millershah.com

Hassan A. Zavareei (*pro hac vice* to be filed)
Allison W. Parr (*pro hac vice* to be filed)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
jtycko@tzlegal.com
hzavareei@tzlegal.com
aparr@tzlegal.com

Annick M. Persinger (*pro hac vice* to be filed)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808

Facsimile: (202) 973-0950
apersinger@tzlegal.com

*Counsel for Plaintiffs and the Putative Class*