Martin Rogers
Jesse Kodadek
Jennifer Shannon
WORDEN THANE P.C.
321 W. Broadway St., Ste. 300
Missoula, MT 59802
(406) 721-3400
mrogers@wordenthane.com
jkodadek@wordenthane.com
jshannon@wordenthane.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| CAITLIN WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> *Plaintiff,* <br><br> *v.* <br><br> NURTURE, INC.; JOHN DOES 1-50; AND ABC BUSINESSES 1-20, <br><br> *Defendants.* | Cause No.: <br><br><br> **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Caitlin Williams, individually and on behalf of all others similarly situated, alleges as follows:

## INTRODUCTION

1.     This is a class action consumer protection case about Defendant Nurture, Inc. knowingly selling Montana consumers organic baby food tainted with dangerous levels of arsenic, mercury, lead, cadmium, and perchlorate.

2.     Defendant manufactures, distributes, labels, and sells baby food products in numerous varieties, including, but not limited to, jars, pouches, and "teethers" under the trademark HappyFAMILY Organics.

3.     Nowhere in the labeling, advertising, statements, warranties, and/or packaging does Defendant disclose that its products contain high levels of arsenic, mercury, lead, cadmium, and perchlorate—all of which are known to pose significant health risks to humans, particularly infants.

4.     Consumers like Williams trust manufacturers like Defendant to sell baby food that is nutritious, safe, and free of harmful toxins, contaminants, and chemicals. Consumers likewise expect the food they feed their children to be free from dangerous levels of heavy metals and other substances known to have significant and dangerous health consequences.

5.     A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform reveals

that Defendant's products contain "dangerously high levels of toxic heavy metals" (the "Report").[1]

6.      The Report was based on the submission of internally conducted test results and company documents. In other words, Defendant had knowledge that its baby foods contained dangerous levels of toxic heavy metals and chemicals, but it still marketed and sold them.

7.      Due to Defendant's intentional and reckless conduct, consumers who purchased Defendant's products have been feeding their children poison disguised as high-end organic baby food. This case seeks to hold Defendant accountable for its inexcusable conduct.

8.      As such, Williams brings this class action seeking all remedies afforded by the Montana Consumer Protection Act, the Magnuson Moss Warranty Act, related law, and common law, including injunctive and monetary relief for Defendant's unfair and deceptive acts.

**PARTIES**

9.      Plaintiff Caitlin Williams ("Williams") is an individual who resides in Clinton, Montana, and seeks to represent a class of Montana citizens.

---

[1] *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report ("House Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf

10.     Defendant is a Delaware corporation with its principal place of business in New York. Defendant owns Happy Family Brands (including Happy Family Organics) and sells baby foods under the brand name HappyBaby. At all relevant times, Defendant has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of HappyBaby within this judicial district.

11.     Defendants John Does 1–50 are individuals who may be liable under this Complaint.

12.     A.B.C. Businesses 1–20 are businesses, entities, associations, or partnerships that may be liable under this Complaint.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2) because the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, Williams is a citizen of Montana, and Defendant is a citizen of New York. Defendant is not a state, state official, or other governmental entity. The number of putative class members is greater than 100. The home state exceptions to CAFA are not applicable. The presence of Doe defendants, in this case, has no bearing jurisdiction.

14.     Personal jurisdiction in this district is proper because, among other reasons, Defendant's conduct has occurred and is continuing to occur in this state, and Defendant conducts systematic and continuous business in this state.

15.     Further, personal jurisdiction in this district is proper because, among other reasons, Defendant has certain minimum contacts with Montana such that this suit does not offend traditional notions of fair play and substantial justice. Defendant's intentional conduct has created a substantial connection with Montana. For example, Defendant's products are physically present in Montana, and Defendant has solicited and conducted business in Montana, thereby purposefully availing itself of the privilege of acting in Montana. Additionally, Defendant caused tortious injury by acts and omissions in this judicial district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS COMMON TO ALL CLAIMS

17.     Defendant manufactures a variety of baby foods, including, but not limited to, pouches and jars of pureed infant and toddler foods, as well as various infant and toddler snacks such as "teethers" and "puffs" (the "Products").

18.     In January of 2018, Williams began feeding her child the Products. Specifically, Williams fed her child Defendant's pureed infant and toddler pouches and jars, as well as Defendant's line of "teethers." Based on Defendant's advertising

and the Products' packaging, Williams reasonably believed that the foods were safe and healthy for her child's consumption, including being free from harmful toxic contaminants.

19.  Defendant characterizes itself as "a team of real parents, pediatricians & nutritionists on a mission to bring health and happiness to our little ones and the planet."

20.  Defendant markets the Products as top of the line healthy baby food that are perfect for developing infants and toddlers, for example:

   a.  "The perfect first snack for baby's developing gums, our easily dissolving, organic teething wafers soothe and delight."

   b.  "When it comes to caring for your baby, transparency is everything."

   c.  "At Happy Baby Organics, we provide organic and delicious options for your baby's nutritional journey."

   d.  "We develop premium organic recipes perfectly matched with your child's age and stage. This is enlightened nutrition for every family."

   e.  "Mindfully Made: We develop premium organic recipes perfectly matched with your child's age and stage. Explore our snacks & meals for growing babies, toddlers & kids, from baby food pouches to freeze-dried yogurt treats, organic Cereals & Toddler Snacks."

f. "Happy Baby: For happy tummies and Happy Tots, try Happy Baby's full line of baby food pouches, organic Cereals, teething wafers & baby snacks and more"

g. "Certified USDA organic ingredients; Non-GMO Project Verified No added sugar, preservatives, colors or artificial flavor."

21. Not only do the Products not inform consumers that they contain harmful contaminants, the labels specifically state what harmful elements they do exclude—G.M.O.s, non-organic ingredients, toxic persistent pesticides and packaging made without B.P.A., B.P.S., or phthalates—encouraging consumers like Williams to trust that Defendant has removed harmful and toxic contaminants from their Products.

22. Despite Defendant's claims and advertising, in February of 2021, the Report revealed that the Products contain dangerous levels of arsenic, mercury, lead, cadmium, and perchlorate.

23. Additionally, the Report only contains testing results for some of Defendant's Products. Therefore, the full extent of toxic metal and chemical contamination is not known at this time but will be determined through discovery in this action.

24. The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most

vulnerable to their neurotoxic effects."[2] These four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as the "permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[3] Research continues to confirm that exposures to food containing arsenic, lead, mercury, and cadmium cause "troubling risks for babies, including cancer and lifelong deficits in intelligence."[4]

25.    Had Williams and the proposed class members known the truth about these harmful contaminants, they would not have bought the Products.

26.    Defendant acted with actual fraud and malice. Specifically, Defendant deliberately acted with conscious disregard of the high probability of injury to vulnerable children. Additionally, Defendant falsely represented that the Products were healthy and safe when it had knowledge that the Products contained contaminants that are known to be substantially injurious to children.

## I.    Arsenic in Defendant's Products

27.    When children are exposed to arsenic early in life, it causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[5]

---

[2] *See* Report at 2.
[3] Healthy Babies Bright Futures, *What's in My Baby's Food?*, at 6, Jan. 10, 2021, located at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf
[4] *Id.* at 13.
[5] *Id.*

28.     Although the FDA has not yet set a limit on the amount of allowable arsenic in baby food, it has set the maximum permissible arsenic levels in bottled water at 10 ppb of inorganic arsenic. It is also considering limiting the action level for arsenic in rice cereal for infants to 100 ppb (parts per billion).[6]

29.     The Report revealed that Defendant's internal standard for allowable arsenic in its infant rice cereal was 115 ppb. However, Defendant sold its Products regardless of whether its internal testing revealed levels over their internal arsenic standard.

30.     Indeed, Defendant's Products contained as much as 180 ppb inorganic arsenic, over 25% of Defendant's Products contained over 100 ppb inorganic arsenic, and a typical Product contained 60 ppb inorganic arsenic.

31.     Furthermore, Defendant set no goal limit for non-inorganic arsenic. Specifically, Defendant's Pea & Spinach, Blueberry & Purple Carrot, and Sweet Potato & Banana Teethers were contaminated with arsenic levels ranging from 58-89 ppb, 70-210 ppb, 52-76 ppb, respectively. [7]  Williams fed her child these Teethers.

---

[6] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level, Apr. 2016, located at
https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM493152.pdf
[7] Nurture, Heavy Metal Test Results for Baby Food Products, Dec. 18, 2019, located at
http://oversight.house.gov/sites/democrats.oversight.house.gov/files/1.xlsx

## II.     Lead in Defendant's Products

32.     Lead exposure can seriously harm a children's brain and nervous systems and is associated with a range of negative health outcomes, including "behavioral problems, decreased cognitive performance, delayed development, and reduced postnatal growth."[8] Young children are particularly vulnerable to lead because the physical and behavioral effects of lead occur at lower exposure levels in children than in adults.

33.     Additionally, lead can bioaccumulate in the body over time, leading to the development of chronic poisoning, cancer, developmental and reproductive disorders, as well as severe injuries to the nervous system and other organs and body systems.

34.     The Environmental Protection Agency (EPA) has set the maximum contaminant level goal for lead in drinking water at zero because lead is a toxic metal that can be harmful to human health even at low exposure levels.[9]

35.     Yet, Defendant's Products have tested as high as 641 ppb lead, and almost 20% of their Products contained over 10 ppb lead.

---

[8] Report at 11.
[9] See https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water

### III.    Mercury in Defendant's Products

36.    Mercury increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero.[10]

37.     Mercury has also been linked to higher risk of lower I.Q. scores and intellectual disability.[11]

38.    The EPA has set a maximum mercury level in drinking water to 2 ppb.[12]

39.     Defendant has sold Products containing as much as 10 ppb mercury.

### IV.    Cadmium in Defendant's Products

40.    Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage.[13]

41.    Health and environmental regulatory bodies have set maximum cadmium levels in drinking water to 3 and 5 ppb.[14]

42.    Sixty-five percent of Defendant's Products contained more than 5 ppb cadmium.

### V.    Delayed Discovery

43.    Williams and Montana consumers would not have been able to discover Defendant's deceptive practices and lacked the ability to discover them given that,

---

[10] Healthy Babies Bright Futures at 14.
[11] *Id.*
[12] Report at 4.
[13] Healthy Babies Bright Futures at 14.
[14] Report at 29.

like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to disclose material facts.

44.     Specifically, the high levels of harmful chemicals, metals, toxins, and other contaminants were not something Williams or another consumer could have discovered before the Report without specialized or expert testing.

45.     Furthermore, Defendant's labeling practices and nondisclosures impeded Williams' ability to discover the deceptive and unlawful labeling.

## VI.   Class Allegations

46.     The class will consist of all Montana purchasers of the Products which contain(ed) unsafe levels of toxic metals or other poisons during the applicable statutes of limitations.

47.     Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

48.     The numerosity of the class is so numerous that joinder of all members would be impossible.

49.     Williams and the entire class share questions of law and facts in common. For example:

    a.  All are consumers who purchased Defendant's Products that contain harmful amounts of toxic metals or other poisons;

    b.  All were deceived by Defendant's unfair, deceptive and intentional practices as alleged in this Complaint;

c. The claims depend on common contentions, meaning that the resolution of the legal questions will resolve all class member's disputes with Defendant;

d. The claims depend on resolving whether Defendant's representations were and are misleading;

e. The claims depend on resolving whether Defendant's actions were unfair or deceptive; and

f. The claims depend on resolving if Williams and the class members are entitled to damages.

50.    Williams' claims and basis for relief are typical to other members because all were subject to the same unfair and deceptive representations and actions.

51.    Williams is an adequate representative because her interests do not conflict with other members.

52.    No individual inquiry is necessary since the focus is only on Defendant's practices, and the class is definable and ascertainable.

53.    Individual action would risk inconsistent results, be repetitive, and is impractical to justify, as the claims are modest relative to the scope of the harm.

54.    Williams' counsel is competent regarding class action litigation and intends to protect class members' interests adequately and fairly.

55.   Williams seeks class-wide injunctive relief because the practices continue.

## COUNT ONE—VIOLATION OF MONTANA CONSUMER PROTECTION ACT: UNFAIR TRADE PRACTICES

56.   Williams incorporates by reference all preceding paragraphs.

57.   Williams is a consumer who purchased the Products from Defendant for her child starting in January of 2018.

58.   Defendant's Products are offered for sale in stores in Montana, including Target, Walmart, Albertsons, Natural Grocers, and Walgreens. The Products are also offered for sale online through various retailers, including Amazon and Defendant's own website.

59.   Each time Defendant (a) sold a Product containing an unhealthy amount of toxic metals; (b) represented that such Products were healthy and perfect for babies; or (c) failed to omit the presence of an unhealthy amount of toxic metals in such Products Defendant violated the Montana Consumer Protection Act because, each time, Defendant offended public policy and such actions were immoral, unethical, oppressive, unscrupulous, or substantially injurious to Montana consumers as set forth in this Complaint.

60.   Defendant made unfair representations about its Products by making false representations about the Products' characteristics, ingredients, and benefits. Specifically, Defendant represented, among other things, that the Products were

healthy and perfect for growing babies when in reality, the Products contained harmful contaminants that are well-known to hinder child development and growth.

61.    Additionally, Defendant did not disclose the presence of those contaminants anywhere on its labeling or in its advertising. That omission, combined with the false representations regarding the health qualities of the Products, was likely to mislead Williams and the other class members and is therefore unfair.

62.    Additionally, the sale of Products containing unhealthy levels of toxic metals itself was unfair.

63.    As a direct and proximate result of Defendant's conduct alleged in this Complaint, Williams and the rest of the class have been harmed and are entitled to damages in an amount to be proven at trial.

64.    As a direct and proximate result of Defendant's conduct alleged in this Complaint, Williams and the rest of the class have sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. As such, Williams and the class are entitled to permanent injunctive relief restraining and enjoining Defendant's present and ongoing conduct.

## COUNT TWO—VIOLATION OF MONTANA CONSUMER PROTECTION ACT: DECEPTIVE TRADE PRACTICES

65.    Williams incorporates by reference all preceding paragraphs.

66.    Williams is a consumer who purchased the Products from Defendant for her child starting in January of 2018.

67.    Defendant's Products are offered for sale in stores in Montana, including Target, Walmart, Albertsons, Natural Grocers, and Walgreens. The Products are also offered for sale online through various retailers, including Amazon and Defendant's own website.

68.    Defendant made deceptive representations about its Products by making false representations about the Products' characteristics, ingredients, and benefits. Specifically, Defendant represented, among other things, that the Products were healthy and perfect for growing babies when in reality, the Products contained harmful contaminants that are well-known to hinder child development and growth.

69.    Additionally, Defendant did not disclose the presence of those contaminants anywhere on its labeling or in its advertising. That omission, combined with the false representations regarding the health qualities of the Products, was likely to mislead Williams and the other class members and is therefore deceptive.

70.    Defendant's representations, omissions, and practices were and are likely to mislead consumers. Indeed, Defendant's representations, omissions, and practices were intentionally designed to mislead consumers.

71.    A reasonable consumer, such as Williams, would not expect food labeled as "healthy," "enlightened," or made for growing babies to be contaminated with harmful toxins that hinder a child's development and growth and can cause significant health problems later in life.

72.     Defendant's false representations are material to consumers because consumers necessarily wish to feed their children healthy food that will aid in their development and will not cause illness. Defendant's deceptive representations, omissions, and practices impacted consumer's decisions about the Products.

73.     Additionally, Defendant knew or should have known that an ordinary consumer would value the omitted information regarding contaminants because it specifically marketed and sold its Products to health-conscious parents.

74.     As a direct and proximate result of Defendant's conduct alleged in this Complaint, Williams and the rest of the class have been harmed and are entitled to damages in an amount to be proven at trial.

75.     As a direct and proximate result of Defendant's conduct alleged in this Complaint, Williams and the rest of the class have sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. As such, Williams and the class are entitled to permanent injunctive relief restraining and enjoining Defendant's present and ongoing conduct.

## COUNT THREE—BREACH OF MAGNUSON MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, et. seq.

76.     Williams incorporates by reference all preceding paragraphs.

77.     Defendant's Products are consumer products under 15 U.S.C.  2301(1) because they are used for personal, family, and/or household purposes.

78.     Williams is a "consumer" under 15 U.S.C. §§ 2301(3) because she bought Defendant's baby food and snacks.

79.     Defendant is a "warrantor" under 15 U.S.C. §§ 2301(5) because it offers express and implied warranties for its Products.

80.     The class is entitled to more than $25 for each individual claim and damages exceed $5 million. There are at least 100 class members.

81.     Defendant warranted, affirmed, and promised that its Products possessed substantive, functional, nutritional, qualitative, compositional, sensory, physical, and health-related attributes which they did not.

82.     The absence of toxic heavy metals in Defendant's food was impliedly warranted because of the numerous health-related statements on Defendant's packaging and other advertising, among other things.

83.     Defendant has failed to comply with the express and implied warranties as to their Products and thus have breached the provisions of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et. seq.

84.     Defendant's warranties are deceptive because they contain affirmations, promises, descriptions, and representations that are false; and because they omit information that is necessary to make the warranty not misleading to a reasonable individual exercising due care.

85.     Williams and class members would not have purchased the Products or paid as much for them if the true facts had been known, suffering damages.

86.     Williams provided notice to Defendant.

87.     Defendant received the notice and should have been aware of the misrepresentations.

88.     Defendant is therefore liable to Williams and the class members for their actual damages, her costs and expenses incurred in bringing this suit, as well as her attorneys' fees and punitive damages under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d).

## COUNT FOUR—STRICT PRODUCTS LIABILITY: FAILURE TO WARN

89.     Williams incorporates by reference all preceding paragraphs.

90.     At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, and sold its Products and aimed selling its Products at a consumer market.

91.     At all relevant times, Defendant's Products were defective and unreasonably dangerous to consumers including Williams for their intended use, because they did not contain adequate warnings or instructions concerning the dangerous characteristics of the toxic heavy metals and other contaminants they contained.

92.     Defendant had ultimate control and supervision over the business of researching, testing, developing, designing, manufacturing, labeling, marketing, selling, inspecting, distributing, and promoting its baby food products, meaning the defect is traceable to them.

93.     Defendant researched, tested, developed, designed, manufactured, labeled, marketed, sold, inspected, distributed, promoted, and otherwise released into the stream of commerce its Products, and in the course of foregoing, directly advertised or marketed the Products to consumers, including Williams, and therefore had a duty to warn of the risks associated with the consumption of the Products.

94.     Defendant failed to provide proper warnings, and take such steps as necessary to ensure its Products did not cause consumers to suffer from unreasonable and dangerous risks. Defendant failed to provide warnings or instructions regarding the full and complete risks of the Products.

95.     If Defendant would have provided a proper warning of the presence of toxic contaminants in its Products, Williams would have read, understood, and heeded that warning and not purchased the Product or fed it to her child.

96.     As a direct and proximate result of Defendant's conduct alleged in this Complaint, Williams and the rest of the class have been harmed and are entitled to damages in an amount to be proven at trial.

97.     As a direct and proximate result of Defendant's conduct alleged in this Complaint, Williams and the rest of the class have sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. As such, Williams and the class are entitled to permanent injunctive relief restraining and enjoining Defendant's present and ongoing conduct.

## COUNT FIVE—PUNITIVE DAMAGES

98. Williams incorporates by reference all preceding paragraphs.

99. As found by the Subcommittee in the Report, Defendant has willfully sold—and continues to sell—contaminated Products notwithstanding its full awareness of the unacceptably high levels of toxic heavy metals in its Products.

100. Defendant acted with reckless disregard for human life, oppression, and malice. Defendant's conduct is particularly reprehensible given that their toxic foods were directed at vulnerable babies—a population group far more susceptible than adults to the neurotoxic dangers of heavy metals.

101. Defendant was fully aware of the safety risks associated with its conduct as alleged in this Complaint. Nonetheless, Defendant deliberately crafted its labels, marketing, and promotion to mislead consumers.

102. Defendant's conduct was not negligent or by accident. Defendant knew it could profit by convincing consumers that its Products were harmless to humans, and that full disclosure of the true risks of the toxic heavy metals present in the Products would limit the amount of money Defendant would make selling the Products. So, Defendant persuaded Montana consumers to purchase its dangerous Products through a comprehensive scheme involving selective advertising, false advertising, omissions, and deceptive omissions.

103. As a result, parents were denied the right to make an informed decision about whether to purchase the Products.

104.   Defendant risked the lives of babies and children, including Williams' child, with knowledge of the safety problems associated with their Products, and suppressed this knowledge from the general public. Defendant made conscious decisions not to redesign, warn, or inform the unsuspecting public. Defendant's reckless conduct warrants an award of punitive damages.

105.   As such, Williams and the class are entitled to punitive damages.

## JURY DEMAND AND PRAYER FOR RELIEF

Williams and the class she represents demand a jury trial on all issues.

Williams and the class she represents seek the following relief:

1.   For an order certifying the class under Federal Rule of Civil Procedure 23, appointing Williams as class representative and lead plaintiff, and the undersigned as counsel for the class;

2.   For a judgment against Defendant on all counts;

3.   For a money judgment for Williams and the class and against Defendant for:

   a.   Actual, compensatory, incidental, exemplary, punitive and consequential damages consistent with the claims alleged in this Complaint;

   b.   Costs, expenses, and attorneys' fees; and

   c.   Pre and post-judgment interest;

4.   For an order directing that class attorneys' fees, costs, and associated expenses be paid out of the common fund resulting from any successful recovery, consistent with the fee agreement between the Williams and the class attorneys;

5.     For an order directing that Williams, as the class representative, be awarded a reasonable incentive award from the common fund;

6.     For an order granting permanent injunctive relief ordering Defendant to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

7.     Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

8.     Other further relief as the Court deems just and proper.


WORDEN THANE P.C.
*Attorneys for Plaintiff*


/s/ Martin Rogers
Martin Rogers