**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

_____

IN RE:

**BABY FOOD MARKETING, SALES PRACTICES**       **MDL No. 2997**
**AND PRODUCTION LIABILITY LITIGATION**

_____

**PLAINTIFFS RICHARD CHASE, STACEY CHASE AND**
**MUSLIN PIERRE-LOUIS' RESPONSE IN OPPOSITION TO THE ALBANO**
**PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE EASTERN**
**DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(a) of the Rule of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Richard Chase and Stacey Chase in the case titled *Chase v. Campbell Soup Company and Plum PBC,* No. 1:2021-cv-04650 (D.N.J.) (the "Chase Plaintiffs") and Plaintiff Muslin Pierre-Louis in the case titled Pierre-Louis v. Gerber Products Company, No. 2:21-cv-04791 (D.N.J.) (collectively referred to as "Plaintiffs"), oppose the motion filed by the Albano Plaintiffs to transfer these cases to the Eastern District of New York for coordination of pretrial proceedings.

While Plaintiffs acknowledge that the cases filed against the various baby food manufacturer defendants have some overlapping issues, the issues unique to each individual defendant are even more significant.  Each of the defendants separately manufactured its products at its own facilities, using its own recipes and its own sources of ingredients. Each manufacturer independently advertised its own products and made its own decisions on marketing and labeling. And each manufacturer had its own internal product testing standards, if any.  None of the Related Actions allege that any of the defendants acted jointly or in concert with each other.  Due to the

lack of any common conduct, any efficiencies served by creation of a single, industry-wide MDL are outweighed by the need to fully develop the case against each of the defendants individually, including highly individualized discovery. For these reasons, and those set forth below, the Motion to Transfer and Consolidate should be denied.

If the Panel disagrees and favors a single MDL, Plaintiffs believe that the District of New Jersey is the most appropriate venue.

## **BACKGROUND**

### A.  The Plum Cases

Campbell's Soup Company, and its wholly owned subsidiary, Plum, PBC (collectively referred to as "Plum"), was one of six baby food manufacturers[1] that were the subject of an investigation and recently published report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy.[2] With respect to Plum, the Report found that limited testing revealed the presence of toxic heavy metals in its baby food.[3]  In contrast to some of the other defendants, Plum refused to produce to the Subcommittee its testing standards or any specific test results regarding the presence of toxic heavy metals. Rather, Plum provided a spreadsheet "self-declaring" that their baby food meets unspecified criteria for toxic heavy metals and declared that its baby food met the criteria for mercury, while noting with asterisks that for mercury: "[n]o specific threshold established because no high-risk ingredients are used."[4] The Subcommittee found this note disturbing, stating "[t]his misleading framing—of meeting criteria that do not

---

[1] The others are: Beech-Nut Nutrition Corporation, Hain Celestial Group, Gerber Products, North Caste Partners (d/b/a Spout Foods, Inc.), Nurture, Inc., and Walmart, Inc.

[2] U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021) (hereinafter, the "Report").

[3] *Id.*

[4] *Id.*

exist—raises questions about what [Defendants'] other thresholds actually are, and whether they exist."[5]

Concerned that their children may have been exposed to unsafe levels of heavy metals due to prolonged consumption of Plum baby foods, the Chase Plaintiffs filed suit in the United States District Court for the District of New Jersey on March 10, 2021 and the case was assigned to the Hon. Noel L. Hillman, U.S.D.J.  Three additional cases against Plum have been filed in the District of New Jersey and also assigned to Judge Hillman: *Smid v. Campbell Soup Company, et al*., No. 1:21-cv-02417 ("Smid"); *Baccari v. Campbell Soup Company, et al.*, Case No. 1:21-cv-04749 ("Baccari") and *Smith v. Campbell Soup Company, et al.*, No. 1:21-cv-08567 ("Smith").  These four complaints do not name any defendants other than Plum.

Because the Plum cases filed in New Jersey are related to each other, the Smid, Smith and Chase Plaintiffs filed a motion to consolidate all four cases.   The motion to consolidate is pending.

## B.  The Gerber Cases

Gerber Products Company ("Gerber") was another one of the six baby food manufacturers that were the subject of an investigation and the recently published Report.[6] The Report confirmed that Gerber was one of four companies that cooperated with the inquiry and "produced their internal testing policies, test results for ingredients and/or finished products, and documentation about what the companies did with ingredients and/or finished products that exceeded their internal testing limits."[7] The Report confirmed that arsenic, lead and cadmium were present in Gerber baby food products and that Gerber "rarely tests for mercury in its baby foods."[8] The Report also stated

---

[5] *Id.*
[6] U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021) (hereinafter, the "Report").
[7] *Id*.
[8] *Id*.

that these "results are multiples higher than allowed under existing regulations for other products."[9]

Because Plaintiff Pierre-Louis believes that her child may have been exposed to unsafe levels of heavy metals due to prolonged consumption of Gerber baby foods, she filed suit in the United States District Court for the District of New Jersey on March 11, 2021 and the case was assigned to the Hon. Claire C. Cecchi, U.S.D.J.  Six additional cases have been filed against Gerber in the District of New Jersey and also assigned to Judge Cecchi: *Shepard v. Gerber Products Company*, No. 2:21-cv-01977 ("Shepard"); *Cantor v. Gerber Products Company*, No. 2:21-cv-03402 ("Cantor"); *Wallace v. Gerber Products Company, et al.*, No. 2:21-cv-0253 ("Wallace"); *Moore v. Gerber Products Company*, No. 2:21-cv-02516 ("Moore"); *Martin, et al v. Gerber Products Company*, No.: 2:21-cv-0586 ("Martin") and *Henry, et al v Gerber Products Company*, No. 2:21-cv-05864 ("Henry").  These seven complaints do not name any defendants other than Gerber.

Because the Gerber cases filed in New Jersey are related to each other, Plaintiff Shepard filed a motion to consolidate all cases, which Plaintiff Pierre-Louis does not oppose.  Plaintiff Moore filed a cross-motion to transfer all New Jersey Gerber cases to the Eastern District of Virginia.  Gerber has opposed this cross-motion to transfer, arguing that New Jersey is the more appropriate venue and advising that it will seek to transfer all cases to New Jersey.  *See Moore v. Gerber Products Company*, 2:21-cv-02516 (ECF No. 18).

## LEGAL ARGUMENT

The Albano Plaintiffs seek consolidation on the basis that the defendants are all in the same industry, were all named in the Report and complaints have been filed against them that make similar claims.  While Plaintiffs acknowledge that there will be some common issues amongst

---

[9] *Id.*

4

cases against all defendants -- including the issue of what levels of heavy metals, if any, are acceptable in the baby food products -- there are likely to be many more issues that will be unique to each defendant. This panel has repeatedly ruled that MDLs are not appropriate to address collections of federally filed cases against different defendants in the same industry that raise related legal questions, but individualized fact questions. *See, e.g.*, *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d 1360, 1362 (J.P.M..L. 2020) (finding "industry-wide centralization will not serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation"); *In re Fla., Puerto Rico, & U.S. Virgin Islands 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368 (J.P.M.L. 2018) (denying transfer in insurance coverage dispute where the actions possessed "only a superficial factual commonality"—that plaintiffs suffered property damage as a result of hurricanes and their insurers breached the terms of their policies by settling their claims for lower amounts than the losses sustained).

As with *Covid-19*, the MDL proposed here would raise "significant managerial and efficiency concerns." As there, the transferee court here would have to establish a structure to manage the six defendants. The court will need to identify common issues to manage the discovery that is likely to differ from manufacturer to manufacturer. "Managing the litigation would be an ambitious undertaking for any jurist, and implementing a pretrial structure that yields efficiencies will take time." *In re COVID-19*, 482 F. Supp. 3d at 1363. Moreover, the proposal involves very few common questions of fact, which are outweighed by the substantial convenience and efficiency challenges posed by managing a litigation involving an entire industry. The motion to transfer and consolidate should be denied.

**A.   Transfer will inconvenience the parties to the Plum and Gerber cases and not create any efficiencies.**

Transfer of the cases pending in New Jersey against Plum and Gerber to the Eastern District of New York will inconvenience the parties.  The Plum litigation is centered in New Jersey where its headquarters is located.  The Plum documents and fact witnesses are also located in New Jersey. Neither Plum, the Chase Plaintiffs, nor any of the other New Jersey plaintiffs have any connection to the Eastern District of New York.[10]

Likewise, transferring the seven New Jersey cases against Gerber to the Eastern District of New York is inefficient.  Prior to completing the move of its headquarters to Virginia on or about December 31, 2019, Gerber maintained its headquarters in Florham Park, New Jersey.  Gerber has advised that more than half of its employees did not relocate to Virginia and remain in the New Jersey area, including several key employees.  *See Moore v. Gerber Products Company*, 2:21-cv-2516 (D.N.J.) (ECF No. 18-1).  Gerber has also advised that for most of the class period, all marketing and regulatory decisions were made in New Jersey.  *Id*.

The discovery in the Plum and Gerber cases will be directed solely at each defendant.  The testing will be limited to each manufacturers' products. The damage model will be limited to each manufacturers' products and may differ from the models used to determine damages in other cases against other defendants. There are simply no pre-trial efficiencies to be gained by consolidating Plum and Gerber cases together, or with the other baby food manufacturers in a single MDL.

---

[10] Nor does Plum any longer have a connection to California. In fact, Plum has indicated that it will file Rule 1401 motions to transfer the cases filed against it in California and elsewhere to the District of New Jersey and it has already begun that process in certain jurisdictions. See *Gulkarov v. Plum, PBC*, 4:21-cv-00193 (N.D.Cal.) (ECF Nos. 30, 34).  This is another reason why transfer and centralization of the Plum cases is unnecessary. *See In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378 , 1380 (J.P.M.L. 2012) ("where a reasonable prospect exists that resolution of  Section 1404 motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to centralization").

On the other hand, voluntary grouping and coordination of the cases by defendant in each of their home jurisdictions, a process that is already underway, is likely to provide efficiencies and should be considered prior to a Rule 1407 transfer.  *See, e.g., In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376 , 1378 (J.P.M.L. 2011) ("centralization under Section 1407 should be the last solution after considered review of all other options").  Both Gerber and Plum have indicated that they plan to file motions to transfer all actions to the District of New Jersey for consolidation and coordination, which would create numerous efficiencies. *See Moore v. Gerber Products Company*, 2:21-cv-02516 (D.N.J.) (ECF No. 18); *Gulkarov v. Plum, PBC*, 4:21-cv-00193 (N.D.Cal.) (ECF No. 30). In fact, on April 12, 2021, Plum  filed a motion to transfer the five actions pending in the Northern District of California to the District of New Jersey.  See *Gulkarov* at ECF No. 34.  The consolidated actions, each centered around a single defendant, will each share common discovery and pretrial practice. Coordination of actions against the same manufacturer will eliminate inconsistent trial rulings related to that defendant, while also avoiding repetitive depositions and duplicative document discovery related to a single defendant. Leadership structures can be approved by the judge in each of the home courts, while cases against each defendant in foreign courts can either be transferred pursuant to a Rule 1401 motion or stayed, eliminating the risk of competing leadership structures.

The Albano Plaintiffs are unable to explain how consolidation of all the actions filed against all defendants in one forum will lead to any efficiencies, including the reduction in discovery when each of the defendants will still be subject to full discovery.  Despite the Albano Plaintiffs' bald assertions to the contrary, the defendants' misrepresentations are not common to each other; they each made their own products, and the levels of heavy metals detected in these products vary.  Further, it remains unclear how "damages can all be considered one time rather

7

then numerous times" merely because the defendants have all been transferred to one jurisdiction. The single, industry-wide MDL proposed by the Albano Plaintiffs should be rejected.

###### B. Consolidation in the District of New Jersey is the most appropriate jurisdiction for the Plum and Gerber cases.

The proper jurisdiction for the Plum and Gerber cases is the District of New Jersey. The four cases filed solely against Plum have been filed the District of New Jersey while none have been filed in the Eastern District of New York. Plum is located in the District of New Jersey and the documents and witnesses are located in the District of New Jersey. All four cases are presently pending before Judge Noel Hillman and a motion to consolidate is pending, which Plum has indicated it will not oppose. Plum has also indicated that it will seek to transfer all actions filed against it to the District of New Jersey and has already filed such a motion seeking to transfer the five actions pending in the Northern District of California. Judge Hillman is well-suited to manage the Plum litigation, especially if the Panel ultimately grants a motion to transfer all Plum cases to the District of New Jersey. Judge Hillman has 15 years of experience on the federal bench and has handled a substantially similar MDL: *In re Pet Foods Products Liability Litigation*, MDL No. 1850. Judge Hillman was able to guide this significant consumer class action to resolution by settlement.

Similarly, seven cases against Gerber have been filed in the District of New Jersey. For most of the class period Gerber was located in New Jersey, more than half of its relevant employees still reside in New Jersey, and it made its marketing and labeling decisions in New Jersey. All seven cases are currently pending before Judge Claire Cecchi and a motion to consolidate is pending. Moreover, Gerber supports consolidation of all cases against it in New Jersey. Judge Cecchi has approximately 15 years of experience on the federal bench, first as a magistrate judge beginning in 2006 and later as an Article III judge beginning in 2011. Notably, Judge Cecchi has

presided over numerous complex cases, including two MDLs: *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, No. 2:04-cv-5184 (D.N.J.) and *In re: Proton-Pump Inhibitor Products Liability Litigation*, MDL No. 2789, No. 1:17-MD-2789 (D.N.J.).

### C. If the Panel decides that a single MDL is warranted, the District of New Jersey is the most appropriate jurisdiction.

For the reasons discussed above, Plaintiffs do not believe a single, industry-wide MDL is appropriate. Nevertheless, if the Panel disagrees, the District of New Jersey should be selected.

The selection of a site for an MDL Court is generally guided by multiple factors and balancing of various interests "based on the nuances of a particular litigation." *See* Robert A. Cahn, A Look At The Judicial Panel On Multidistrict Litigation, 72 F.R.D. 211, 214 (1977). Factors that have been considered include (1) the location of relevant documents and witnesses, (2) the backlog of a court's civil docket and the extent to which it is overtaxed with other MDL cases, (3) a centrally located forum for national litigation, (4) the potential for state-federal coordination, and (5) the preference of the parties.[11]

The District of New Jersey is better suited to meet the goals of "efficiency" and "economy" in an MDL proceeding than the venue recommended by the Albano Plaintiffs. This Panel has previously held that the District of New Jersey is a convenient location that has sufficient resources to handle an MDL proceeding. *See, e.g., In re: Nickelodeon Consumer Privacy Litig.*, 949 F. Supp. 2d 1377 (J.P.M.L. 2013) (finding that the District of New Jersey is "a convenient and accessible forum, relatively close to potential witnesses and evidence located in New Jersey and New York City."). The District of New Jersey also has been considered a strong candidate for transfer when

---

[11] *See id.* at §§ 6:1-6:23; *In re Inter-Op Hip Prosthesis Prods. Liab. Litig.*, 149 F. Supp. 2d 931, 933-934 (J.P.M.L. 2001); *In re: Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 368 F. Supp. 2d at 357*; In re Thaxton Group, Inc. Sec. Litig.*, 323 F. Supp. 2d 1374, 1375 (J.P.M.L. 2004); *In re Cuisinart, 506 F. Supp. 2d 651, 653* (J.P.M.L. 1981).

many witnesses and documents relevant to the case are located there. *Id.*; *see also In re: Benicar (Olmesartan) Prod. Liab. Litig.*, 96 F. Supp. 3d 1381, 1383 (J.P.M.L. 2015) (holding the District of New Jersey was the appropriate transferee court because defendants "are headquartered in that district, and thus many witnesses and relevant documents are likely to be found there"); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1382 (U.S. Jud. Pan. Mult. Lit. 2019) ("Many of the defendants have their U.S. headquarters in New Jersey…. Thus, common documents and witnesses likely will be located in this district"); *In re: Merck & Co., Inc., Securities, Derivative & ERISA Litig.*, 360 F. Supp. 2d 1375, 1377 (J.P.M.L. 2013) (documents and witnesses likely located at Merck's New Jersey headquarters).

The District of New Jersey is the most logical jurisdiction for a single MDL.  Two of the six defendants -- Plum and Sprout -- maintain their headquarters in New Jersey.  Additionally, Gerber maintained its headquarters in New Jersey until December 31, 2019 before completing its relocation to Virginia.  Nevertheless, more than half of Gerber's former New Jersey workforce remains in New Jersey.  In recognition of Gerber's extensive New Jersey ties, seven filed cases against Gerber are pending in New Jersey.  Accordingly, most of the relevant witnesses for <u>half of the defendants</u> are going to be located in the New Jersey region.

The District of New Jersey also is in a major metropolitan area that can accommodate counsel and its courthouses are well equipped to handle an MDL proceeding.[12] Assigning an MDL to the District of New Jersey also will facilitate coordination with any State court proceedings that are ultimately filed in New Jersey. Any individual actions filed by New Jersey citizens against Plum or Sprout would have to be filed in New Jersey state courts.  *See, e.g., In re Internal Revenue*

---

[12] *See, e.g., In re Educational Testing Service PLT 7-12 Test Scoring Litigation*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004); *In re Inter-Op Hip Prosthesis Products Liability Litigation*, 149 F. Supp. 2d 931, 933 (J.P.M.L. 2001).

*Service § 1031 Tax Deferred Exchange Litigation*, 528 F. Supp. 2d 1343, 1344 (J.P.M.L. 2007) (transfer appropriate where defendant is located in venue and state court proceedings would "enhance potential for coordination between state and federal courts regarding this matter."). Having both state and federal judges in close proximity in the same state as documents and witnesses will promote the just and efficient conduct of the litigation.

The District of New Jersey also has the resources available and the relative congestion of their dockets that weigh in their favor. *See, e.g., In re GMAC Insurance Management Corp. Overtime Pay Litigation*, 342 F. Supp. 2d 1357 (J.P.M.L. 2004) (the M.D. Fla. had "the resources available to manage this litigation"); *In re Baycol Products Liability Litigation*, 2001 WL 34134820 at *2 (J.P.M.L. 2001) (Minnesota courts are "not currently overtaxed …"). While the District of New Jersey has a caseload per judgeship higher than the national average at 2,742 pending actions per judge[13], that number is skewed due to the eight pending MDLs in the District.[14] Additionally, the Biden administration has announced its intention to nominate two individuals to serve in the District of New Jersey, which when confirmed will further reduce the current judicial caseload.[15]  Moreover, as discussed above, both Judge Cecchi and Judge Hillman are highly competent and respected jurists, and either will steer this litigation on a prudent course.

Finally, in addition to many of the plaintiffs, defendants Plum and Gerber have also expressed a preference for the District of New Jersey.  *See Moore v. Gerber Products Company*, 2:21-cv-02516 (D.N.J.) (ECF No. 18); *Gulkarov v. Plum, PBC*, 4:21-cv-00193 (N.D.Cal.) (ECF Nos. 30, 34).

The location of documents and witnesses, experience of these judges, the caseload in the

---

[13] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf.
[14] https://www.njd.uscourts.gov/mdl-cases.
[15] https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/30/president-biden-announces-intent-to-nominate-11-judicial-candidates/.

district, the convenience to major airports and abundance of hotels, and preference of the parties all weigh decidedly in favor of the District of New Jersey.

## <u>CONCLUSION</u>

For the forgoing reasons, the Albano Plaintiffs' motion to transfer the Plum and Gerber cases pending in the District of New Jersey to the Eastern District of New York should be denied. In the alternative, if the panel does favor a single MDL, the District of New Jersey is most appropriate.

Dated:  April 13, 2021

<div style="margin-left: 40%;">

*/s/ Matthew R. Mendelsohn*

Matthew R. Mendelsohn
Adam M. Slater
Julia S. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-0391
*Attorneys for Plaintiffs Richard Chase, Stacey Chase and Muslin Pierre-Louis*

</div>