**BEFORE THE UNITED STATES**

**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:** Baby Food Marketing, Sales Practices and Products Liability Litigation | MDL No. 2997 |

**PLAINTIFF ALYSE GOTHOT'S RESPONSE**
**TO THE MOTION FOR TRANSFER OF ALL ACTIONS TO THE**
**EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1407**

Plaintiff Alyse Gothot, on behalf of herself and all others similarly situated, respectfully submits her response to the Albano Plaintiffs' motion to transfer all actions involving similar facts to the Eastern District of New York in the case titled *Albano, et al. v. Hain Celestial Group, Inc., et al.*, Case No. 21-cv-01118 (E.D.N.Y.) (MDL No. 2997, ECF No. 1, hereinafter the "Motion"). Plaintiff Gothot, a citizen of Ohio, filed her class action complaint against Nurture, Inc. on April 6, 2021 in the United States District Court for the Northern District of Ohio. *See Gothot v. Nurture, Inc.*, No. 1:21-cv-00742 (N.D. Ohio) (ECF. No. 1).

Plaintiff Gothot agrees that consolidation of the matters against each Defendant in the appropriate venue could serve efficiencies. However, Plaintiff Gothot opposes the Motion to the extent that it advocates for consolidation of the dozens of cases filed against seven unique Defendants before a single court for pretrial proceedings. With respect to the actions pending against Nurture, Inc.,[1] Plaintiff Gothot respectfully requests that the cases be consolidated in a single forum in either the Southern District of New York (where Nurture, Inc. is headquartered) or the Eastern District of New York (where the Albano Plaintiffs seek to transfer and consolidate).

---

[1] Plaintiff Gothot does not take a position on the consolidation of the actions against the other 6 defendants. Only that they should not be consolidated with each other, including but not limited to with Nurture, Inc.

## I.    INTRODUCTION

Pending before the Panel is the Motion filed by the Albano Plaintiffs pursuant to 28 U.S.C. § 1407 seeking to transfer and consolidate numerous lawsuits against seven different Defendants pending in federal courts across the Country. All of these lawsuits relate to Defendants' marketing and sale of baby food products allegedly contaminated with heavy metals. Although the lawsuits share similar legal issues and allegations, they do not present a common core of facts among Defendants, and should not be consolidated for at least the following reasons: (i) product ingredients, formulation and manufacturing specifications are Defendant-specific; (ii) representations, labeling, and marketing are Defendant-specific; (iii) fact and corporate witnesses are Defendant-specific; (iv) each Defendant likely sources their ingredients from different suppliers, and uses different facilities to test their products, making third party discovery vastly different among the Defendants; and (v) each Defendant sells their products to different retailers (*e.g.*, Walmart only sells its products at Walmart), further contributing to the vast differences in third-party discovery. In addition, many of the Defendants are competitors, which will make discovery, including any issues with confidential documents and/or trade secrets, unnecessarily complex. Moreover, each Defendant may have different priorities and strategies for litigation, which would further inject unnecessary complexities into the litigation, and could inhibit the productivity of litigation for all parties.

Since the lawsuits against the seven different Defendants involve different questions of fact and require Defendant-specific discovery, the dozens of lawsuits are not appropriate for consolidation under Section 1407 before a single court. Plaintiff Gothot opposes centralization of all of the lawsuits in a single, multi-Defendant MDL, and files this Response in support of centralization of cases against each Defendant in the appropriate forum, which will serve both the parties and court.

## II.     ARGUMENT

### A.     The Lawsuits Should Not be Consolidated into a Single, Multi-Defendant MDL

The Panel frequently declines to form multi-defendant MDLs like what the Albano Plaintiffs seek in their Motion. "Broad similarities" among defendants, underlying allegations and claims are not sufficient to warrant consolidation under Section 1407. *See In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp 3d 1353, 1355 (U.S. Jud. Pan. Mult. Lit. 2020).

Though all Defendants are alleged to have misrepresented to consumers the concentrations of heavy metals in their baby food, this does not represent a sufficient common core of facts applicable to all Defendants, which is necessary for consolidation under Section 1407. *See In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d at 1356 ("[c]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions."); *In re: Mortg. Indus. Home Affordable Modification Program (HAMP) Cont. Litig.*, 867 F. Supp. 2d 1338 (U.S. Jud. Pan. Mult. Lit. 2012) (denying centralization finding similar allegations but no common question of fact among defendants); *In re CP4 Fuel Pump Mktg., Sales Practices, & Prod. Liab. Litig.*, 412 F. Supp. 3d 1365, 1366-67 (U.S. Jud. Pan. Mult. Lit. 2019) (declining centralization due to individualized, defendant-specific and plaintiff-specific issues including, defendants' "design and testing of the subject vehicles, its knowledge of the alleged defect, its interactions with [the manufacturer], and its marketing and communications with consumers.").

The circumstances surrounding each Defendant's internal policies, representations and omissions are different. Defendants in this litigation share only one factual similarity: they sell baby food products with high concentrations of heavy metals, but the similarities end there. There is no common or predominant defendant across all actions. The representations and/or omissions made through the labeling and marketing are different among the seven Defendants and the products at issue. The witnesses, documents and underlying corporate conduct will not be common between any

two (let alone seven) Defendants. Third party discovery, including third-party suppliers, retailers, and testing facilities, will be different among Defendants. Fact and corporate witnesses will also be different among the Defendants.

Further, any perceived efficiency to be gained through creating a baby-food-defendant mélange is not sufficient to justify Section 1407 centralization. Indeed, the centralization of cases against competitor-defendants may hinder efficiency by "unnecessarily complicat[ing] case management" and "prolong[ing] pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (U.S. Jud. Pan. Mult. Lit. 2016); *See also In re: Prescription Drug Co-Pay Subsidy Antitrust Litig.*, 883 F. Supp. 2d 1334, 1335 (U.S. Jud. Pan. Mult. Lit. 2012) (denying consolidation finding no "overlap between actions— *e.g.*, there is no action involving both Merck and Novartis products. Placing multiple different defendants, many of whom are competitors, into the same action will inject additional and unnecessary complexity into this already complex litigation."); *In re: Yellow Brass Plumbing Component Prod. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (U.S. Jud. Pan. Mult. Lit. 2012) (declining centralization and noting "we are typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products").

There are other, better-suited mechanisms, available to coordinate industry-wide litigation outside of a multi-defendant MDL if discovery and motion efficiency is a concern. *See In re ABA L. Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377, 1379 (U.S. Jud. Pan. Mult. Lit. 2018) ("Notices of deposition can be filed in all related actions; the parties can stipulate that any discovery relevant to more than one action can be used in all those actions; and the involved courts may direct the parties to coordinate other pretrial activities."). For example, while unknown at this time, if some or all of the Defendants use a unique supplier for certain ingredients in their baby food products, or if they

use the same testing facilities for their baby food products, the parties can coordinate relevant discovery.

**B.      Consolidation of the Nurture, Inc. Lawsuits is Necessary Under Section 1407**

To date there are 19 Lawsuits pending against Nurture Inc. in six different Federal District Courts. While Plaintiff Gothot does not agree that all actions against the seven different Defendants at issue in this litigation should be transferred and consolidated into one multi-defendant, industry-wide MDL, Plaintiff Gothot respectfully submits that pending actions against Defendant Nurture, Inc. be consolidated in a single forum.

Pursuant to Section 1407, the Panel may consolidate actions that "involv[e] one or more common questions of fact" and "are pending in different districts." The Panel is authorized to transfer actions "upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C.A. § 1407. Here, the volume and location requirements of Section 1407 are easily satisfied. Nurture, Inc. manufactures, markets and sells numerous baby food products across the United States that allegedly contain dangerous levels of heavy metals.

In the 19 filed lawsuits, the common legal and factual question is whether Nurture, Inc. misrepresented the presence and concentration of heavy metals in the baby foods that it manufactured, marketed and sold. The Nurture Inc. lawsuits rest upon proof of virtually identical underlying allegations and questions of fact against the same defendant, making them appropriate for consolidation. *See, e.g.*, *In re Circular Thermostat Antitrust Litig.*, 370 F. Supp. 2d 1355 (U.S. Jud. Pan. Mult. Lit. 2005) (transfer ordered because two actions involved common questions of fact); *In re Pfizer Inc.*, 374 F. Supp. 2d 1348 (U.S. Jud. Pan. Mult. Lit. 2005) (transfer ordered where actions involved common questions of fact and all actions shared factual questions arising from allegations that the manufacturer misrepresented and/or omitted material information to plaintiffs).

The actions against Nurture, Inc. also involve overlapping legal claims and putative classes, which if decided by different courts, could lead to inconsistent results. The Nurture, Inc. lawsuits allege claims under numerous state consumer protection laws, the common law torts of negligent misrepresentation and fraudulent omission, unjust enrichment, and state warranty laws. And they include putative classes, both on a nationwide basis and for numerous states, including state subclasses for at least five states: Ohio, Montana, Minnesota, Georgia, and Florida. Left decentralized, courts would face overlapping class actions pending in jurisdictions across the country, each separately considering overlapping nationwide and state class certification motions arising out of the same operative facts. Centralization in a single district would avoid the risk of inconsistent rulings.

Centralization also minimizes inconvenience to the parties and witnesses by enabling a single judge to formulate a pretrial discovery program that would minimize witness inconvenience and overall expense, and to eliminate potential duplicative discovery. The Nurture, Inc. cases contain essentially identical factual questions—whether Nurture, Inc. misrepresented the presence of harmful levels of heavy metals in baby foods and whether consumers are entitled to compensation—and seek overlapping relief. Each Nurture, Inc. lawsuit will necessarily require the same or very similar discovery, such as discovery regarding the sourcing of ingredients, and the formulation, manufacturing, marketing, distribution, and sale of the products. Centralization would eliminate the need for duplicative document requests, interrogatories, and depositions. The Panel has consistently held that centralization under Section 1407 is necessary in order to eliminate duplicative discovery and conflicting pretrial rulings. *See In re Sierra Wireless, Inc*., 387 F. Supp. 2d 1363, 1364 (U.S. Jud. Pan. Mult. Lit. 2005); *In re Circular Thermostat Antitrust Litig*., 370 F. Supp. 2d at 1357; *In re Cotton Yarn Antitrust Litig*., 336 F. Supp. 2d 1383, 1384 (U.S. Jud. Pan. Mult. Lit. 2004); *In re Pfizer Inc*., 374 F. Supp. 2d at 1349; *In re Parmalat Sec. Litig.*, 350 F. Supp. 2d 1356, 1357 (U.S. Jud. Pan.

Mult. Lit. 2004); *In re Elevator & Escalator Antitrust Litig.*, 350 F. Supp. 2d 1351, 1352 (U.S. Jud. Pan. Mult. Lit. 2004); *In re Fed. Home Loan Mortg. Corp. Sec. & Derivative Litig.*, 303 F. Supp. 2d 1379, 1380 (U.S. Jud. Pan. Mult. Lit. 2004). Accordingly, given the factual overlap of these cases, extensive discovery will be duplicated, and pretrial rulings will conflict absent consolidation of the actions.

Plaintiff Gothot supports transfer to either the Southern or Eastern Districts of New York. In addition to Nurture, Inc.'s headquarters being located in New York, of the 19 lawsuits pending against Nurture, Inc., at least eight are in New York. *See In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984*, 601 F. Supp. 1035, 1036 (U.S. Jud. Pan. Mult. Lit. 1985) (designating SDNY as the transfer forum in part because the "Southern District of New York has more pending actions than any other district" and was the location of Defendant's headquarters).

## III.   CONCLUSION

WHEREFORE, Plaintiff Alyse Gothot respectfully requests that (1) the Panel deny the Albano Plaintiffs' Motion to consolidate all lawsuits in a single multi-defendant MDL, and (2) transfer the Nurture, Inc. lawsuits to a single forum in the Southern District of New York (where Nurture, Inc. is headquartered) or the Eastern District of New York (where the Albano Plaintiffs seek to transfer and consolidate).

Respectfully submitted,

By: _____ */s/ Melissa S. Weiner* _____
MELISSA S. WEINER

Melissa S. Weiner
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com

*Counsel for Plaintiff Alyse Gothot*