**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: BABY FOOD MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2997 |

**BEECH-NUT NUTRITION COMPANY, CAMPBELL SOUP COMPANY, GERBER PRODUCTS COMPANY, THE HAIN CELESTIAL GROUP, INC., NURTURE, INC., PLUM, PBC, AND SPROUT FOODS, INC.'S RESPONSE TO MOTION TO TRANSFER**

This proposed multidistrict litigation seeks to consolidate putative class actions filed against many of America's leading baby food companies (the "Underlying Actions"). The plaintiffs in these actions allege that the products at issue are mislabeled because their labels do not inform consumers that their ingredients — including common vegetables, fruits, and grains — contain purportedly "unsafe" levels of naturally-occurring heavy metals. The manufacturers expressly dispute these allegations. They maintain that their products are both safe and properly labeled and that there is no applicable scientific or regulatory basis for the plaintiffs' claims.

The manufacturers' position is consistent with that of the U.S. Food & Drug Administration ("FDA"), which on April 8, 2021 set out its proposed Action Plan for addressing naturally-occurring heavy metals in agricultural products, including baby and toddler foods. The FDA stated that its own testing shows "children are not at an immediate health risk from exposure to toxic elements at the levels found in foods." *See* Ex. A. It also explained that these elements are naturally found in the environment and "enter our food supply through our air, water, and soil" such that there are "limits as to how low these levels can be." *Id.* The FDA explained that the presence of varying levels of heavy metals is unavoidable, and thus to be expected, whether one is eating baby food, consuming fruits or vegetables purchased from a supermarket or farmers' market, or preparing one's own food from produce grown in one's own garden. *Id.* But given the

nutritional value of these products, the safest option — for babies and adults alike — is a varied and balanced diet, not avoiding fruits, vegetables, and grains.  *Id.*; *see also* FDA, "The Key To A Well-Balanced Diet Is Eating A Variety Of Healthy Foods," *available at* https://www.fda.gov/media/146439/download (last accessed Apr. 13, 2021).

In the last two months, the Underlying Actions have clustered in a handful of jurisdictions ("home jurisdictions" or "home districts") corresponding to the locations where the respective manufacturers are headquartered — or, in the case of Gerber Products Company ("Gerber"), where it was headquartered until recently.  In most cases, the plaintiffs in the Underlying Actions have filed single-defendant cases in one or more manufacturers' home districts.  In most jurisdictions, the bulk (if not all) of the Underlying Actions against any given at-home defendant have been consolidated before a single judge.  And the defendants are in the process of moving the rest of the Underlying Actions into their home jurisdictions — whether by voluntary agreement with the plaintiffs or via motions to transfer (and to sever claims against multiple defendants, if needed).

There is no need for this Panel to centralize all of the Underlying Actions into a single multidistrict litigation.  The actions against each of the respective manufacturers can be litigated far more efficiently in a single court before a single judge in that defendant's home district, which is preferable to establishing an industry-wide multidistrict litigation cluttered with different claims against various combinations of named defendants.  And there are obvious "alternatives to centralization," such as intra-district consolidation and transfer of cases under Section 1404, that obviate the need for a multidistrict litigation — just as this Panel suspected.  *See* Docket No. 3.

Centralization is particularly inappropriate here because the defendants are competitors who have sourced, manufactured, marketed, packaged, labeled, advertised, and sold hundreds of different products under different brands and product lines.  These products contain different

ingredients from different growers, are manufactured in different facilities, and are labeled and advertised differently.  Centralizing all of the Underlying Actions before a single judge would have the opposite result envisioned by Section 1407: it would lead to substantial inefficiencies as a single court attempts to grapple with the unique, unrelated facts for each defendant, thereby delaying adjudication of the central merits issues.  This Panel routinely declines similar requests for industry-wide consolidation, and it should do so here.

In addition to the putative class actions identified by the proponents of this multidistrict litigation (the "*Albano* Plaintiffs"), there are two individual (non-class action) personal injury claims that have been filed in federal courts.  Notably, the *Albano* Plaintiffs have not proposed to include any individual, non-class, personal injury actions in the proposed MDL, and for good reason.[1]  Personal injury claims involve a host of complex and medical scientific issues that go well beyond, and are not implicated by, the false advertising class actions.  Moreover, by their nature, these personal injury lawsuits will hinge on questions of causation and injury that will vary from product to product and from plaintiff to plaintiff.  These lawsuits can be adjudicated separately, and there is no need to include them in any potential MDL of putative class actions asserting false advertising claims.  The defendants stand ready to coordinate discovery across all the cases and share discovery that is generated by the individual defendants in their home-court consolidated actions (or any false advertising MDL), eliminating any potential rationale for joining these personal injury cases in a multidistrict litigation.

Finally, if the Panel is inclined to consolidate some or all of the Underlying Actions into a single multidistrict proceeding, defendants respectfully suggest that the Panel should assign the

---

[1] Nevertheless, on March 17, 2021, the plaintiffs in *AG, et al. v. Plum, PBC, et al.* (N.D. Cal. Case No. 4:21-cv-01600), a non-class, personal injury action, filed a notice of potential tag-along action.  *See* Docket No. 15.

proceeding to one of the following judges: the Honorable Noel Hillman of the District of New Jersey; the Honorable Mary Kay Vyskocil of the Southern District of New York; or the Honorable Thomas McAvoy of the Northern District of New York.  If the Panel is reluctant to assign the MDL to Judge McAvoy due to his senior status, defendants propose the Honorable Brenda K. Sannes as an alternative to Judge McAvoy.  All four judges are distinguished, capable judges, and three of the four — Judge Hillman, Judge Vyskocil, and Judge McAvoy — currently preside over a critical mass of "baby food" cases within their respective districts.  None of these jurists currently presides over an MDL, and all of these judges are located in geographically central locations that are convenient for the parties and their counsel.  All of these factors weigh heavily in favor of designating one of these judges as the transferee judge.

## **BACKGROUND**

### I.      **Summary of the Underlying Actions.**

On February 4, 2021, the U.S. House Subcommittee on Economic and Consumer Policy issued a report (the "Report") concerning purportedly excessive and undisclosed levels of heavy metals, including arsenic, cadmium, lead, and mercury, in many baby and toddler foods.  The Report selectively cited information provided by many of America's leading manufacturers of baby and toddler foods, including Beech-Nut Nutrition Company ("Beech-Nut"), Gerber Products Company ("Gerber"), The Hain Celestial Group, Inc. ("Hain Celestial"), Nurture, Inc. ("Nurture"), Campbell Soup Company ("Campbell") and its subsidiary Plum, PBC ("Plum"),[2] and Sprout Foods, Inc. ("Sprout").  All of these manufacturers dispute the purported findings of the Report.

---

[2] Since 2013, Plum has operated as an indirect wholly-owned subsidiary of Campbell.  Some of the Underlying Actions involving products sold under the Plum brand identify both Campbell and Plum as defendants, while others only name Plum.  On March 31, 2021, Sun-Maid Growers of California announced it had acquired Plum from Campbell.  Closure of the sale remains pending.

The day after the House Subcommittee issued its Report, plaintiffs began filing lawsuits. To date, the vast majority of these lawsuits are putative class actions that assert false advertising, breach of warranty, and consumer fraud claims on behalf of one or more putative classes of consumers against a single defendant. These lawsuits collectively challenge the labeling of hundreds of baby food products sold under many different product lines and manufactured by over half a dozen different companies.

In some cases, the plaintiffs allege that the manufacturers "misrepresented" their products as healthy in light of the allegedly "dangerous" levels of heavy metals found in these products. In other cases, the plaintiffs allege that the products are mislabeled because they fail to disclose the presence of (naturally occurring) heavy metals or the purported "risks" associated with their consumption. Based on these allegations, the plaintiffs assert various statutory and common-law claims on behalf of putative class members — who collectively encompass all consumers in the United States who bought any baby or toddler food product manufactured by any defendant. The manufacturers dispute these allegations, deny that their labeling and marketing practices are false or misleading in any way, and maintain that their products are accurately and properly labeled.

As explained in more detail below, the Underlying Actions have largely consolidated themselves in a handful of districts corresponding to the manufacturers' home districts. Nineteen of the Underlying Actions are pending in the Eastern District of New York, where Hain Celestial is located; 12 are pending in the District of New Jersey, where both Campbell and Plum are currently headquartered and where Gerber was formerly headquartered; 13 (soon to be 14) are pending in the Northern District of New York, where Beech-Nut is headquartered; and nine of the Underlying Actions are pending in the Southern District of New York, where Nurture is currently headquartered. Moreover, each manufacturer has initiated efforts to transfer cases filed in other

courts to its home jurisdiction, either by way of voluntary agreement with the plaintiffs or by motions to transfer venue (and to sever parties, if necessary).

**B.      The *Albano* Plaintiffs' Request for a Multidistrict Litigation.**

On March 8, 2021, the plaintiffs in one of the Underlying Actions, *Albano v. Hain Celestial Group, Inc. et al.* (the "*Albano* Action") filed a motion before this Panel seeking to consolidate all of the Underlying Actions against any defendant (or combination of defendants) into a single multidistrict proceeding in the Eastern District of New York.  Docket No. 1.  In an effort to highlight the purported similarity of the Underlying Actions, the *Albano* Plaintiffs lump all of the defendants together and contend that the Underlying Actions are all false advertising lawsuits brought on behalf of putative classes of consumers.[3]

In setting a briefing schedule on the *Albano* Plaintiffs' motion, this Panel directed the parties to "address what steps they have taken to pursue alternatives to centralization," such as "informal coordination" and "seeking Section 1404 transfers of one or more of the subject cases." Docket No. 3.  As explained in more detail below, those "alternatives to centralization" obviate the need for a multidistrict litigation here.

## ARGUMENT

**I.      This Panel Should Decline to Consolidate the Underlying Actions, as There Are Alternatives to Centralization That Obviate the Need for a Multidistrict Litigation.**

In their motion, the *Albano* Plaintiffs suggest that the only alternative to a multidistrict litigation is for dozens of cases to proceed individually — resulting in duplicative discovery,

---

[3] For example, they claim that each case "alleges that Defendants' *food labeling* was false and misleading and fails to disclose material facts" and that each case "asserts *economic injuries* arising from Defendants' wrongful conduct."  Docket No. 1-1 ("Mem.") at 1 (emphasis added).  They also claim that "the pending actions all seek class certification" and assert claims for "unfair business practices, violations of state consumer protection statutes, breach of implied warranty of merchantability, unjust enrichment, and fraudulent concealment and omission."  *Id.* at 8.

conflicting rulings, and other purported inefficiencies.  *See* Mem. at 10-12.  But this is a false dichotomy, as it overlooks the fact that the Underlying Actions have already been largely consolidated into a handful of districts, and most assigned to a single judge within each district, without this Panel's intervention.  To the extent that other cases are pending outside the defendants' home districts, those defendants are already in the process of transferring those cases to their respective home jurisdictions — whether through voluntary cooperation with plaintiffs' counsel or through motions to transfer pursuant to the first-to-file doctrine and/or 28 U.S.C. § 1404.  These are the precise "alternatives to centralization" that this Panel directed the parties to address, and they illustrate that a multidistrict litigation is not necessary here.  *See* Docket No. 3

It is well-established that "centralization under Section 1407 should be the last solution after considered review of all other options."  *In re Best Buy Co., Inc. Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).  "In particular, we repeatedly have noted that where a reasonable prospect exists that the resolution of a Section 1404 motion or motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to Section 1407 centralization."  *In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018) (citations and internal quotation marks omitted); *see also In re Gerber Probiotic Prod. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012) ("[T]ransfer under Section 1404 may moot the multidistrict character of a litigation and allow a consolidated proceeding in one court with jurisdiction over the pretrial, trial, and post-trial aspects of the litigation.").

As in *Best Buy*, *Hudson's Bay*, and *Gerber Probiotic*, there is no need for multidistrict consolidation because the Underlying Actions have *already* substantially consolidated

themselves.[4]  There is a critical mass of cases against each defendant in the jurisdiction where it is (or, in Gerber's case, recently was) headquartered, and each defendant has taken, and will continue to take, measures to move the remaining claims against it into its home district:

_Beech-Nut_.  Thirteen of the 24 Underlying Actions against Beech-Nut are pending in the Northern District of New York, where Beech-Nut is headquartered, before Judge McAvoy, and a recently-filed fourteenth case (_Loggins_) will be transferred there from the Middle District of Florida pursuant to the stipulation of the parties.  Judge McAvoy consolidated all then-pending cases and ordered that any future cases asserting similar claims be assigned to him.  _See_ Ex. B. Beech-Nut is taking steps, including by stipulation and/or motion (whether contested or unopposed), to have the remaining cases pending in other federal district courts either dismissed or transferred to the Northern District of New York.  Of the ten remaining cases, Beech-Nut has: (1) moved to dismiss one (_A.G._); (2) is submitting pre-motion letters in two in advance of motions to sever and transfer (_Albano_ and _Lawrence_); (3) has moved to sever and transfer one (_Garces_) and will shortly move to sever and transfer another two (_Baker_ and _Walls_); and (4) has not yet been served in four (_Andrews_, _Ibert, Johnson_, and _Smith_).  Beech-Nut anticipates using these same informal processes and/or procedural rules to transfer and consolidate future-filed cases, if any.

_Campbell/Plum_.  There are 13 Underlying Actions pending against Campbell and/or Plum, ten of which do not name any other manufacturer defendants.  Five of the Campbell/Plum-only

---

[4] Defendants are aware of two cases filed in the Northern District of California in which the plaintiffs assert that their children experienced developmental abnormalities as a result of consuming the baby foods manufactured by multiple defendants.  _AG et al. v. Plum, PBC et al._, Case No. 4:21-cv-1600; _IM et al. v. Plum, PBC et al_, Case No. 4:21-cv-2066.  These two cases — and any additional yet-to-be filed similar individual personal injury cases — are poor candidates for consolidation because they allege different claims that hinge on highly individualized issues of causation and injury.  _See infra_ § III.  Defendants maintain that any such cases would be particularly ill-suited for centralization.

cases are pending in the Northern District of California (where a consolidated complaint is expected to be filed); one is pending in the Southern District of California; and the remaining four are pending in the District of New Jersey (where a consolidated complaint is also expected to be filed).  Campbell/Plum has begun the process of transferring the cases against it, including the cases filed in California, to the District of New Jersey.  Campbell/Plum reasonably anticipates that, absent a multidistrict litigation, all of the Underlying Actions solely against Campbell/Plum can be successfully consolidated in the District of New Jersey and will proceed as a single case with common pleadings, motion practice, and discovery.

Gerber.  Fourteen of the 25 Underlying Actions against Gerber (two of which have been consolidated), including all but one of the actions in which Gerber is the sole defendant, are pending before the Honorable Claire C. Cecchi in the District of New Jersey,[5] where Gerber was formerly headquartered until 2019 (eight actions), or the Honorable Liam O'Grady in the Eastern District of Virginia, where Gerber is currently headquartered (six actions).  The first-filed cases against Gerber were filed in the District of New Jersey, where a motion to consolidate all of the cases against Gerber there — which Gerber has not opposed — is pending, and to which the U.S. District Court for the District of Minnesota recently transferred one of the Underlying Actions against Gerber (*McNealy*) pursuant to the parties' stipulation.  Similarly, two of the cases against Gerber pending in the Eastern District of Virginia have been consolidated.  Another was originally filed in the Middle District of Florida, and subsequently voluntarily dismissed and re-filed in the Eastern District of Virginia.  Gerber has initiated the process of transferring actions/claims pending against Gerber outside of Gerber's home jurisdictions to the District of New Jersey, including actions currently pending in the Central District of California (*Robbins*), Northern District of

---

[5] One action is awaiting assignment, but Gerber expects it to be assigned to Judge Cecchi.

Illinois (*Garces*), Southern District of Florida (*Kelly*), and Northern District of New York (*Eldridge*).[6]

Hain Celestial.  Nineteen of the 26 Underlying Actions against Hain Celestial (including *Stewart*, the first-filed federal lawsuit against Hain Celestial) are pending in the Eastern District of New York.  The plaintiffs in the *Stewart* action have filed a motion to consolidate all 19 cases into a single intra-district proceeding before the Honorable Joanna Seybert, and Hain Celestial did not oppose that motion.  *See* Exs. C-D.  Hain Celestial accordingly anticipates that, absent a multidistrict litigation, all of the Underlying Actions pending in the Eastern District of New York will proceed as a single case with common pleadings, motion practice, and discovery.

Furthermore, Hain Celestial anticipates that the majority of the claims asserted against it in the Underlying Actions pending outside the Eastern District of New York will ultimately be transferred into that district.  At least three plaintiffs, Alyssa Mays, Marla Micks, and Kendra Anderson, voluntarily dismissed their claims against Hain Celestial — which they originally brought in the Southern District of New York, the Northern District of Illinois, and the District of Colorado, respectively — and re-filed them in the Eastern District of New York.  In other cases, Hain Celestial has filed motions to transfer cases pending in other districts — including the *Smith* action in the Western District of Missouri and the claims asserted against it in the *Garces* action in the Northern District of Illinois.  And to the extent other plaintiffs file new cases, Hain Celestial anticipates that they will also be filed in, or transferred to, the Eastern District of New York.

Nurture. All but one of the cases filed only against Nurture are pending in the Southern District of New York.  The only other Nurture-only case (*Gothot*) was filed days ago in the

---

[6] Gerber anticipates moving to transfer venue of the Eastern District of Virginia actions to the District of New Jersey, and regardless expects the Eastern District of Virginia and District of New Jersey cases to be consolidated in one of those districts without the need for an MDL proceeding.

Northern District of Ohio. Nurture has not been served in that action and will seek to transfer it to the Southern District of New York, either by party agreement or motion. Six of the nine Nurture-only cases are consolidated before Judge Mary Kay Vyskocil. Nurture anticipates that Judge Vyskocil will soon be assigned all of the Nurture actions pending in the Southern District of New York, as well as the recently-filed Ohio action, because the plaintiffs in the first-filed federal lawsuit, *Stewart v. Nurture Inc.*, have moved to consolidate before Judge Vyskocil the actions against Nurture currently pending in the Southern District of New York "as well as any subsequently filed or transferred related actions." *See* Ex. E. Nurture did not oppose that motion.

Nurture further anticipates that the majority of the Underlying Actions pending elsewhere against Nurture will be severed and transferred to the Southern District of New York. The plaintiffs in one action (*Wallace*), which was pending in the District of New Jersey, voluntarily dismissed their lawsuit and have indicated that they may re-file against Nurture in the Southern District of New York. And Nurture has already filed two motions to sever and transfer in the *Robbins* action, which is pending in the Central District of California, and in the *Garces* action, which is pending in the Northern District of Illinois. Nurture anticipates filing similar motions as necessary.

<u>Sprout</u>. Sprout has been named in two of the Underlying Actions asserting false advertising claims.[7] One has been filed in the Eastern District of New York, and the other has been filed in the District of Connecticut. Sprout anticipates that these Underlying Actions will ultimately be transferred into the same district by party agreement or motion to transfer.

---

[7] In addition to the individual personal injury cases noted above in footnote 4, Sprout is also aware of one additional class action filed against it in the Northern District of California. *Key v. Sprout Foods*, Case No. 3:21-cv-2391.

In short, there is no risk that the Underlying Actions will be scattered throughout the country and proceed on different schedules if they are not consolidated by the Panel into a multidistrict litigation.  Rather, the vast majority (if not all) of these cases will go forward as consolidated proceedings in the defendants' home districts, and the defendants can transfer — and have begun transferring — any subsequently-filed cases there as well.  These "alternatives to centralization" are far superior to a single multidistrict litigation, particularly since establishing such a proceeding would require most defendants to litigate outside their home districts.

## II.   This Panel Should Decline to Consolidate the Underlying Actions Against Competing Defendants into a Single Industry-Wide Multidistrict Litigation.

This Panel has repeatedly emphasized that it is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured, and sold similar products."  *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012); *see also, e.g.*, *In re Credit Card Payment Prot. Plan Mktg. & Sales Practices Litig.*, 753 F. Supp. 2d 1375, 1375-76 (J.P.M.L. 2010) (declining to centralize "industry-wide litigation" involving competing defendants who "offered several different products, which were marketed in different ways"); *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, 867 F. Supp. 2d 1341, 1342 (J.P.M.L. 2012) (similar).  Indeed, this Panel has recognized that "creating an industry-wide MDL" against competing defendants typically generates "few efficiencies," particularly where the "factual commonality across the actions appears to be superficial at best." *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (noting that, under these circumstances, "[c]reating an industry-wide MDL for . . . all defendants would seem to complicate pretrial proceedings more than it would streamline them").

The *Albano* Plaintiffs' motion is a textbook example of why industry-wide consolidation is disfavored.  The defendants in the Underlying Actions each manufacture dozens of infant and

toddler foods, often under distinct product lines. Each defendant sources ingredients from different suppliers; manufactures its products using its own proprietary ingredient specifications and formulations; has distinct packaging, quality control, and supply chain processes; and labels, markets, and advertises its products differently. As a result, "the individual issues that result from the differences among each defendant's [products] with respect to product design, development, testing, . . . and marketing will predominate over the common issues." *In re Power Morcellator Prod. Liab. Litig.*, 140 F. Supp. 3d 1351, 1353-54 (J.P.M.L. 2015); *see also In re Watson Fentanyl Patch Prod. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) ("Each group of cases against each manufacturer will involve unique product- and defendant-specific issues (such as the different product designs, manufacturing processes, regulatory histories, and company documents and witnesses) that will overwhelm the few common issues . . . .").

There are accordingly no meaningful efficiencies to be gained from consolidating the claims against each defendant — which will necessitate different discovery, motion practice, and pretrial proceedings — into a single MDL. If anything, an industry-wide MDL will simply inject additional case management hurdles, such as the need to protect the confidential trade secret information of each defendant and the need to establish separate tracks for each defendant, that would be unnecessary if the cases were to proceed separately in each defendant's home jurisdiction. *See, e.g.*, *In re CP4 Fuel Pump Mktg., Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (emphasizing that "centralizing competing defendants in the same MDL . . . would complicate case management" due to "the need to protect trade secret and confidential information" and "the possible need for separate discovery and motion tracks").

Moreover, the fact that the Underlying Actions overwhelmingly consist of false advertising lawsuits makes a multi-defendant MDL even more inappropriate, as false advertising claims — by

their nature — are inherently unsuited to multi-defendant proceedings.  It is not just the defendants who realize this fact.  To the contrary, dozens of plaintiffs in the Underlying Actions have recognized that their claims are most appropriately brought as single-defendant lawsuits.  To that end, those plaintiffs have filed separate lawsuits against different manufacturers in each defendant's home jurisdiction.  *See* Ex. F (chart of single-defendant lawsuits filed by the same plaintiff against multiple defendants).  There is no reason for this Panel to lump those single-defendant lawsuits into an unwieldy industry-wide proceeding.

### III.   The Panel Should Not Centralize the Smattering of Individual Personal Injury and Products Liability Complaints with Any False Advertising MDL.

Leaving aside that there is no need for *any* multidistrict consolidation, this Panel should decline to centralize the small number of individual product liability complaints alleging personal injury from ingestion of some of the defendants' products.  Apart from the limited and manageable number of such claims currently pending, these lawsuits by their nature are uniquely ill-suited for a multidistrict litigation, as "the injuries alleged in each case appear to be highly plaintiff-specific." *In re Linear Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, 341 F. Supp. 3d 1381, 1382 (J.P.M.L. 2018); *see also, e.g.*, *In re Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013) (denying centralization where "individualized facts . . . will predominate over the common factual issues alleged by plaintiffs");  *In re Spray Polyurethane Foam Insulation Prods. Liab. Litig.*, 949 F. Supp. 2d 1364, 1364 (J.P.M.L. 2013) (similar).

The Panel's rejection of invitations to consolidate includes similar "tainted product" cases. *See In re NE Contaminated Beef Prods. Liab. Litig.*, 856 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012). Indeed, the Panel has specifically declined to consolidate a similar set of cases involving allegedly tainted infant formula, finding that "individual facts contained in these actions" — such as "the particular product each plaintiff purchased" and "any injuries that consumption of the product

caused" — "will predominate over any alleged common fact questions." *In re Abbott Labs., Inc. Similac Prods. Liab. Litig.*, 763 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011).

Here, it should be clear that any attempt to characterize the personal injury claims as primarily driven by "common facts" is not well-taken. The fact that these lawsuits generally allege that each child consumed *some* amount of *some* type of baby or toddler food containing *some* ingredient or combination of ingredients with *some* alleged (and inevitably varying) level of heavy metals for *some* period of time does not make them appropriate candidates for consolidation. Indeed, the plaintiffs in these cases do not — and cannot — claim that all of the products are the same or sourced from the same ingredients, that they were consumed in similar quantities, or that children of developmentally similar ages were exposed to similar levels of any (let alone all) of the different heavy metals allegedly present in the products at issue.

Even more significantly, the plaintiffs in the personal injury actions do not agree on any reasonably limited universe of harms allegedly caused by the consumption of each defendant's baby foods; to the contrary, they assert that these products caused a host of alleged injuries, ranging from autism to ADHD to reduced IQ to other vague and undefined neurological effects. Even without considering each plaintiff's medical history, genetics, and other environmental exposure to heavy metals, their core allegations are so varied that there is no universe of common issues that would benefit from a coordinated proceeding. As a result, any purported "efficiencies from centralization" would not "outweigh the multiple individualized issues, including ones of liability and causation, that these actions appear to present." *In re American-Manufactured Drywall Prods. Liab. Litig.*, 716 F. Supp. 2d 1367, 1368 (J.P.M.L. 2010).

Finally, the scope of plaintiff-focused fact and expert discovery (and motion practice) would be on a different scale from, and focus on different issues than, the discovery in the putative

class actions.  Coordination between these two very different sets of claims would not create any meaningful efficiencies.  To the extent that there is common company-focused discovery, that discovery can be coordinated across the actions.  Under the system of coordination organically occurring now, there will be a single judge overseeing all or substantially all of the discovery involving each defendant.  Each of the defendants will commit to making any resulting common set of discovery available for any of the personal injury cases in which that defendant is named, which will allow the courts in those personal injury cases to focus on the individualized discovery issues surrounding the plaintiffs' specific asserted injuries and alternative causes.

## IV.    If the Panel Grants the Motion, It Should Assign the Proceeding to the Honorable Noel Hillman, the Honorable Mary Kay Vyskocil, or the Honorable Thomas McAvoy.

If this Panel is inclined to centralize the Underlying Actions, defendants submit that the Panel should assign the proceeding to one of the following judges: the Honorable Noel Hillman in the District of New Jersey; the Honorable Mary Kay Vyskocil in the Southern District of New York; or the Honorable Thomas McAvoy in the Northern District of New York (or the Honorable Brenda Sannes of the Northern District of New York, to the extent the Panel is concerned that Judge McAvoy is on senior status).  All of these judges are capable, distinguished jurists, and three of the four — Judge Hillman, Judge Vyskocil, and Judge McAvoy — are currently presiding over a critical mass of the Underlying Actions in their respective districts.  And because Judge Hillman, Judge Vyskocil, Judge McAvoy, and Judge Sannes do not currently preside over a multidistrict litigation, they are ideal transferee judges.

### A.    The Honorable Noel Hillman (D.N.J.)

Judge Hillman currently presides over all of the Underlying Actions filed against Campbell and Plum in the District of New Jersey — which is also the same district in which the greatest number of cases against Gerber are pending and in which Sprout is headquartered.  Judge Hillman

16

has served on the bench for nearly fifteen years, and he has experience presiding over another multidistrict litigation involving allegedly "tainted" products.  *See In re Pet Food Prods. Liab. Litig.*, 499 F. Supp. 2d 1346 (J.P.M.L. 2007).  That experience makes him well-suited to preside over this multidistrict litigation if the Panel is inclined to create one.

Moreover, Judge Hillman's chambers are located in Camden, New Jersey, which is less than ten miles from Philadelphia, is easily accessible by airplane or train, and is relatively close to the majority of the defendants' headquarters.[8]  This Panel has repeatedly described both the District of New Jersey and the Eastern District of Pennsylvania — located on opposite sides of the Delaware River — as "accessible" and "geographically convenient" locations.[9]  Judge Hillman's relative centrality and accessibility to the parties and witnesses weighs further in favor of designating him as the transferee judge.

B.      The Honorable Mary Kay Vyskocil (S.D.N.Y.)

The Honorable Mary Kay Vyskocil, who presides over six of the nine Underlying Actions currently pending against Nurture in the Southern District of New York, is an equally logical choice.  Judge Vyskocil is a "skilled jurist who has not yet had the opportunity to preside over an MDL" — a factor this Panel regularly considers in assigning multidistrict litigations.  *In re Rail*

---

[8] Plum and Campbell are headquartered in Camden, New Jersey; Sprout is headquartered in Montvale, New Jersey; Gerber was formerly headquartered in Florham Park, New Jersey and recently relocated to Arlington, Virginia; Hain Celestial is headquartered in Lake Success, a village in the northwestern portion of Long Island, New York; Nurture is headquartered in White Plains, a suburb of New York City; and Beech-Nut is headquartered in Amsterdam, New York.  The District of New Jersey, and specifically the Philadelphia metropolitan area (which encompasses Camden), is relatively central to all of these manufacturers.

[9] *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 220 F. Supp. 3d 1356, 1359 (J.P.M.L. 2016) (District of New Jersey); *In re Hypodermic Prods. Antitrust Litig.*, 408 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (same); *In re Generic Drug Pricing Antitrust Litig.*, 227 F. Supp. 3d 1402, 1404 (J.P.M.L. 2016) (Eastern District of Pennsylvania); *In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353, 1355 (J.P.M.L. 2005) (same).

*Freight Fuel Surcharge Antitrust Litig. (No. II)*, 437 F. Supp. 3d 1365, 1366 (J.P.M.L. 2020); *see also, e.g., In re Zantac (Ranitidine) Prods. Liab. Litig.*, 437 F. Supp. 3d 1368, 1370 (J.P.M.L. 2020); *In re Ermi LLC (`289) Patent Litig.*, 396 F. Supp. 3d 1358, 1360 (J.P.M.L. 2019).

Moreover, Judge Vyskocil's chambers are located in Manhattan, which — like Camden — is a central, easily accessible location with direct flights and/or train routes to virtually every city in which the parties, the employees, and their counsel reside.   This Panel has repeatedly acknowledged that the Southern District of New York is an "accessible, metropolitan location" well suited to an MDL.  *In re Rhodia S.A. Sec. Litig.*, 398 F. Supp. 2d 1359, 1360 (J.P.M.L. 2005); *see also, e.g., In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014); *In re Tribune Co. Fraudulent Conveyance Litig.*, 831 F. Supp. 2d 1371, 1372 (J.P.M.L. 2011).  Judge Vyskocil's location makes her ideally suited to serve as a transferee judge — particularly given that three of the defendants (Hain Celestial, Beech-Nut, and Nuture) are located in New York and three other defendants are located in New Jersey or Virginia.

C.      The Honorable Thomas McAvoy or the Honorable Brenda Sannes (N.D.N.Y.)

Finally, Judge Thomas McAvoy of the Northern District of New York, whose chambers are located in Binghamton and who currently presides over all 13 (soon to be 14) of the Underlying Actions pending in that District, is an equally capable transferee judge.  If the Panel has any reluctance to assign an MDL to Judge McAvoy due to his senior status, then defendants propose Judge Brenda Sannes, who maintains her chambers in Syracuse, as an alternative to Judge McAvoy.  Because neither Judge McAvoy nor Judge Sannes has presided over a multidistrict litigation, and because both judges have affirmance rates on appeal that equal or exceed 82%, both are ideal transferee judges.  *See In re Rail Freight*, 437 F. Supp. 3d at 1366; *In re Zantac*, 437 F. Supp. 3d at 1370; *In re Ermi*, 396 F. Supp. 2d at 1360.

18

Moreover, the Northern District of New York has significantly fewer vacant judgeship months (12) than the Eastern District of New York (34), the *Albano* Plaintiffs' proposed venue. Moreover, the Northern District of New York is significantly less busy than the Eastern District of New York, which encompasses three of the five boroughs of New York City and the entirety of Long Island.  Both the Syracuse and Binghamton courthouses are easily accessible from the Syracuse Hancock International Airport; in fact, the travel time between the Syracuse airport and these courthouses is likely less than the travel time from JFK or LaGuardia airport to the Central Islip courthouse in the Eastern District of New York.  The Northern District of New York already has a critical mass of baby food cases, has a significantly less busy docket than many other courts, and has nearly three times fewer vacant judgeship months than the Eastern District of New York. It would be an excellent venue for a consolidated proceeding.

## CONCLUSION

For the foregoing reasons, this Panel should deny the *Albano* Plaintiffs' motion.  If the Panel is inclined to grant the motion, it should decline to consolidate any products liability or personal injury cases, and it should assign the putative class actions to the Honorable Noel Hillman, the Honorable Mary Kay Vyskocil, the Honorable Thomas McAvoy, or the Honorable Brenda Sannes.

Respectfully submitted,


Dated: April 13, 2021                    BEECH-NUT NUTRITION COMPANY

                                         /s/ *Livia M. Kiser* (with permission)

                                         Livia M. Kiser
                                         KING & SPALDING LLP
                                         110 North Wacker Drive, Suite 3800
                                         Chicago, IL 60606
                                         T: 312-995-6333
                                         F: 312-995-6330
                                         lkiser@kslaw.com

                                         *Attorneys for Defendant*
                                         *Beech-Nut Nutrition Company*


Dated: April 13, 2021                    CAMPBELL SOUP COMPANY and
                                         PLUM, PBC

                                         /s/ *Mark S. Cheffo* (with permission)

                                         Mark S. Cheffo
                                         DECHERT LLP
                                         1095 Avenue of the Americas
                                         New York, NY 10036
                                         T: 212-698-3500
                                         F: 212-698-3599
                                         mark.cheffo@dechert.com

                                         *Attorneys for Defendants*
                                         *Campbell Soup Company and Plum, PBC*

Dated: April 13, 2021                     GERBER PRODUCTS COMPANY

                                          /s/ *Bryan A. Merryman* (with permission)

                                          Bryan A. Merryman
                                          WHITE & CASE LLP
                                          555 South Flower Street, Suite 2700
                                          Los Angeles, CA 90071
                                          T: 213-670-7700
                                          F: 213-452-2329
                                          bmerryman@whitecase.com

                                          *Attorneys for Defendant*
                                          *Gerber Products Company*

Dated: April 13, 2021                     THE HAIN CELESTIAL GROUP, INC.

                                          /s/ *Dean N. Panos*

                                          Dean N. Panos
                                          JENNER & BLOCK LLP
                                          353 North Clark Street
                                          Chicago, IL 60654
                                          T: 312-222-9350
                                          F: 312-527-0484
                                          dpanos@jenner.com

                                          *Attorneys for Defendant*
                                          *The Hain Celestial Group, Inc.*

Dated: April 13, 2021                     NURTURE, INC.

                                          /s/ *Angela C. Agrusa* (with permission)

                                          Angela C. Agrusa
                                          DLA PIPER LLP
                                          2000 Avenue of the Stars
                                          Suite 400, North Tower
                                          Los Angeles, CA 90067
                                          T: 310-595-3000
                                          F: 310-595-3300
                                          angela.agrusa@dlapiper.com

                                          *Attorneys for Defendant*
                                          *Nurture, Inc.*

Dated: April 13, 2021                    SPROUT FOODS, INC.

                                         /s/ *Adam R. Fox* (with permission)

                                         Adam R. Fox
                                         SQUIRE PATTON BOGGS (US) LLP
                                         555 South Flower Street, Suite 3100
                                         Los Angeles, CA 90071
                                         T: 213-624-2500
                                         F: 213-623-4581
                                         adam.fox@squirepb.com

                                         *Attorneys for Defendant*
                                         *Sprout Foods, Inc.*